**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **VERIS HOME TECHNOLOGY d/b/a AXISS AUDIO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 3:26-cv-00918** |
| **v.** | ) | |
| | ) | **District Judge Waverly D. Crenshaw, Jr.** |
| **MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, CLARISYS AUDIO GLOBAL DISTRIBUTION, LLC, and BESPOKE AUDIO SHOP,** | ) | **Magistrate Judge Luke A. Evans** |
| | ) | **JURY DEMAND** |
| **Defendant(s).** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MICHAEL BOVAIRD, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, AND CLARYSIS AUDIO GLOBAL DISTRIBUTION, LLC'S MOTION TO DISMISS**

---

Defendants Michael Bovaird ("Mr. Bovaird"), Suncoast Audio LLC ("Suncoast"), Luxury Hi-Fi Distribution LLC ("Luxury"), and Clarisys Audio Global Distribution, LLC ("Clarisys") (collectively "Defendants" or the "Bovaird Defendants") hereby file this Memorandum of Law in support of their Motion to Dismiss all claims filed against them by Plaintiff Veris Home Technology d/b/a AXISS ("Veris" or "Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).[1]

[1] In the event that the Court were to determine that both jurisdiction and venue in the Middle District of Tennessee are proper, these Defendants reserve the right to challenge the sufficiency of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)-(h). *See Orange Theatre Corp., v. Rayherstz Amusement Corp., et al*, 139 F. 2d 871, 874 (3rd Cir. 1944); *Blank v. Bitker*, 135 F.2d 962 (7th Cir. 1943); *Kaufman v. United States*, 35 F. Supp. 900 (D.C. Dist. Col. 1940); *Brunson v. Capitol CMG, Inc.*, 2021 U.S. Dist. LEXIS 135857 (M.D. Tenn. Jul. 21, 2021).

FACTS AND PROCEDURAL HISTORY

Plaintiff Veris is allegedly the holding company that owns the assets for AXISS Audio, an importer of high-end audio equipment, and also AXISS Distribution Inc. ("ADI"). This lawsuit arises from the unsuccessful debut of the Soulution 717 power amplifier manufactured by a company called Soulution Audio and distributed by ADI and/or AXISS Audio. Complaint, *supra*; *see also* Complaint Exhibit 9.

On or about April 28, 2023, Defendant Suncoast, a Florida limited liability company, entered into an Authorized Dealer Agreement with ADI, a California corporation. Complaint ¶ 58; Complaint Exhibit 2. Also in 2023, Plaintiff allegedly became "the successor company to ADI," although Plaintiff has not identified or attached any instrument or document to support that status. Complaint ¶ 28. Plaintiff does not warrant the products it imports and resells. *Id*. at ¶ 68.

In October 2024, Suncoast submitted a pre-order on behalf of a customer in Malibu, California (identified in the Complaint only as "PK-LA") for "one Soulution 727 preamplifier and two Soulution 717 power amplifiers," which "were in the final stages of development." *Id*. at ¶¶ 104-105. The Soulution 727 preamplifier was shipped and installed in PK-LA's home in late 2024 without trouble, but the Soulution 717 amplifiers were not available until June 2025. *Id*. at ¶¶ 106-107. Plaintiff shipped the Soulution 717 amplifiers directly to PK-LA. *Id*. at ¶¶ 108-109. Plaintiff alleges that "Suncoast told [Plaintiff] that it had agreed to coordinate with PK-LA and to assist him with installing the 717 amplifiers, once they arrived." *Id.* at ¶ 109. The customer PK-LA undertook to set up the Soulution 717 amplifiers himself, and in the process a speaker binding post was broken, which was "a standard issue covered by warranty" that Plaintiff committed to have repaired. *Id*. at ¶¶ 112-113.

Thereafter, an undetermined issue arose with the Soulution 717 amplifiers purchased by customer PK-LA, which resulted in an unsatisfactory purchasing experience. Complaint ¶¶ 106; 223; Complaint Exhibit 9. In the process, customer PK-LA's speakers were damaged, although Plaintiff

disputes that they were damaged by the Soulution products it imported for sale to PK-LA. *Id. at* ¶¶ 126, 133. During the refund process, customer PK-LA stated that "he values his personal privacy and wished for this to remain confidential." *Id.* at ¶ 141. According to Plaintiff, "[a]ll parties agreed to keep the details of PK-LA's purchase, experience, and transaction confidential," and that Plaintiff "agreed to consider a refund to Suncoast so as to help Suncoast and PK-LA and began negotiations." *Id.* at ¶¶ 142-43.

In its Complaint, Plaintiff filed suit against two sets of defendants, the Bovaird Defendants who are the movants before the Court, and Michael Gefteas and his company, Bespoke Audio Shop (collectively "Gefteas Defendants"). As it relates to these Bovaird Defendants, Plaintiff has alleged a count of breach of contract against Suncoast based on a contract between Suncoast and ADI (Count I), defamation/slander against Mr. Bovaird, Luxury, Clarisys, and Mr. Wiegand (Count III), intentional interference with business relationships against all defendants (Count VI), and civil conspiracy against all defendants (Count VII).[2]

## LEGAL STANDARD

In support of its contention that this Court has personal jurisdiction over Suncoast and Bovaird, Plaintiff relies on 28 United States Code § 1391(b)(2). Plaintiff Veris's principal place of business is in this district, which is undisputed. However, Plaintiff further avers in its Complaint that "a substantial part of the events or omissions giving rise to the claims in the lawsuit occurred in this district." Complaint ¶ 17. As argued more fully below, the factual allegations in the Complaint refute that legal assertion. Plaintiff further alleges that "Defendant Suncoast contracted with AXISS, in this district." *Id.* This, too, is refuted by Plaintiff's factual allegations. Finally, Plaintiff alleges that "Defendants' torts were all directed at AXISS in this district, including their intentional interference with AXISS's

2 The Complaint refers to the "Bovaird Defendants" as including the defendant Florian Wiegand, who allegedly resides in Switzerland and has yet to be served. As used herein, the "Bovaird Defendants" does not include Mr. Wiegand, but the same arguments raised in this Memorandum of Law presumably apply to him as well.

business relationships." *Id.* As argued more fully below, even if such allegations are assumed to be true, they fail to establish proper venue in the Middle District of Tennessee.

Plaintiff further contends that Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-223, provides for personal jurisdiction in this Court based on Plaintiff's averments that the Defendants transacted business in this state; the Defendants caused tortious injury to Plaintiff by act or omissions in this state; and the Defendants caused tortious injury outside of this state while regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving a substantial revenue from goods used or consumed or services rendered in this state.

As to venue, 28 U.S.C. § 1391 provides, in relevant part:

> **"(b) Venue in general.** A civil action may be brought in—
>
> > **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > **(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or**
> >
> > **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Accordingly, if none of the defendants reside in Tennessee, and a substantial part of the events or omissions does not occur in Tennessee, then such action must be brought in a judicial district in which one of the defendants is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1)-(3).

As to personal jurisdiction, Tenn. Code Ann. § 20-2-223 provides:

> **(a)** A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:
>
> > **(1)** Transacting any business in this state;
> >
> > **(2)** Contracting to supply services or things in this state;
> >
> > **(3)** Causing tortious injury by an act or omission in this state;
> >
> > **(4)** Causing tortious injury in this state by an act or omission outside this state of the person who regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

> **(5)** Having an interest in, using or possessing real property in this state;
> **(6)** Contracting to insure any person, property or risk located within this state at the time of contracting; or
> **(7)** Conduct as a director or officer of a domestic corporation or the conduct of a domestic corporation while the person held office as a director or officer.
>
> **(b)** When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against that person.

There are two theories under which a federal court may normally exercise personal jurisdiction over out-of-state residents in diversity cases: general jurisdiction and specific jurisdiction. If the claim is connected to a defendant's non-forum related activities, a defendant may be subject to the "general jurisdiction" of the court so long as it has "continuous and substantial" attachments with the forum state. If the plaintiff's cause of action arises from a defendant's forum-related activities, that defendant may be subject to the state's jurisdiction under "specific jurisdiction" so long as jurisdiction is authorized by a long-arm statute and the defendant has sufficient minimum contacts with the state as defined by *International Shoe v. Washington*, 326 U.S. 310 (1945). The Due Process Clause must also allow for jurisdiction under the facts of the case. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If neither theory applies, the analysis ends, and the Court may not exercise personal jurisdiction over the defendant. *Id*. at 710. As the Complaint in the case at bar does not attempt to allege sufficient contacts by these Defendants to support general jurisdiction, it is presumed that Plaintiff is traveling under a theory of specific jurisdiction.

"Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (*quoting Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). Tennessee's long-arm statute is "coterminous with the limits on personal jurisdiction imposed by the due process clause," so the Court need only consider whether exercising jurisdiction over Defendants is consistent with federal due process requirements. *Bridgeport*, 327 F.3d at 477 (*quoting Payne v. Motorists' Mut. Ins.*

*Cos.* 4 F. 3d 452, 454 (6th Cir. 1993)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (*quoting Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The Sixth Circuit considers three criteria to determine whether specific jurisdiction exists: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* (*quoting Southern Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 374 (6th Cir. 1968). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Int'l Tech. Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386, 395-96 (6th Cir. 1997) (*quoting Burger King Corp.*, 471 U.S. at 475).

A determination regarding personal jurisdiction is claim-specific. *Canaday v. Anthem Cos.*, 9 F.4th 392, 400 (6th Cir. 2021). While a court accepts a plaintiff's averments as true, the burden is on the plaintiff to establish sufficient facts to sustain an exercise of personal jurisdiction to adjudicate a claim once a defendant challenges the existence of such jurisdiction. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020); *see also Mellon Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992).

In the Complaint before the Court, the Plaintiff has asserted (1) breach of contract claims against Suncoast, (2) defamation claims against the Gefteas Defendants, (3) defamation and slander

claims against the Bovaird Defendants and Florian Wiegand, (4) intentional inference with business relationships claims against all Defendants, and (5) civil conspiracy claims against all Defendants.

**1. Breach of contract claims**

Plaintiff alleges that Suncoast (company owned by Bovaird) entered into an Authorized Dealer Agreement with ADI, a California corporation. Reading the Complaint in a light most favorable to Plaintiff, the Complaint may also allege the existence of a contract between ADI and Suncoast regarding the resolution of the unsatisfactory product experienced by a customer identified as PK-LA. PK-LA lives in Malibu, CA. Complaint ¶ 106. Bovaird resides in Florida, and Suncoast is a Florida entity with its principal place of business in Sarasota, Florida. *Id.* at ¶ 16. The only party with ties to Tennessee is Plaintiff Veris, which was not a party to the contract between Suncoast and ADI. Plaintiff has alleged that it is "a holding company of AXISS Audio USA, LLC and AXISS Distribution Incorporated ('ADI')", but does not allege that it is a party to the contract with Suncoast, or that it was assigned the contract. Complaint ¶ 1, *supra*. Indeed, because Plaintiff has alleged that the contract between ADI and Suncoast was terminated effective January 2026, such assignment would now be impossible. *Id.* at ¶ 72.

(a) <u>The Authorized Dealer Agreement</u>

The Authorized Dealer Agreement ("Agreement"), attached to the Complaint as Exhibit 2, was allegedly entered into by ADI and Suncoast. ADI is identified as having principal place of business in Gardena, CA, and Suncoast (the "Dealer" in the Agreement) is a Florida entity. Plaintiff Veris is not a party to that Agreement. Moreover, the Agreement attached to Plaintiff's Complaint as Exhibit 2 is only signed by Bovaird. Plaintiff alleges that Suncoast breached Articles 3.7 and 3.8 of this Agreement by engaging in activities that reflect adversely on AXISS, failing to promote AXISS brand equally with

other brands, and demanding a refund despite having agreed that it was not entitled to warranty or damages. *See* Complaint at ¶ 278.

Notably, Article 14 of the Agreement only identifies the parties to the agreement as "buyer" and "seller" and specifically disqualifies their relationship as employer/employee; franchiser/franchisee; master/servant; principal/agent; partnership; or joint venture. Suncoast, as Dealer, is considered an "independent contractor" at all times. Moreover, Article 17 of the Agreement specifically designates the Governing Law to be that of the State of California.

Reading the Complaint in a light most favorable to Plaintiff, none of the alleged breaches to the Agreement have any connection to Tennessee. Suncoast is located in the State of Florida. ADI is based in California, as is the customer PK-LA. None of the subject business transactions occurred in the state of Tennessee. The only entity involved in this case that has any tie to Tennessee is Plaintiff Veris. However, the Agreement does not name Veris as a party. Plaintiff's Complaint identifies Veris as the holding company of ADI and AXISS Audio, but that does not automatically subject every person or entity that did business with ADI to the jurisdiction of Tennessee.

The United States Supreme Court has expressly rejected a Circuit Court's holding that the finding of an "agency" relationship between a foreign parent entity and a local subsidiary was sufficient to impute personal jurisdiction to the parent. *Daimler AG v. Bauman*, 571 U.S. 117, 134-135 (2014). While it recognized a theory of alter ego personal jurisdiction in which "a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego," it concluded that the alter ego theory provides personal jurisdiction only if the parent company "exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Leadford v. Bull Moose Tube Co.*, No. 15-cv-13565, 2016 U.S. Dist. LEXIS 100600 (E.D. Mich. Aug. 2, 2016) (quoting *Indah. v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011)). Merely doing business as a parent entity does not make a subsidiary

an alter-ego of the parent company. *Id*. The Plaintiff has not alleged or even alluded to any conduct, actions, or any other type of involvement by Veris in relation to AXISS's dealings with the Bovaird Defendants.

Moreover, under Tennessee law, "[t]here is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors *or affiliated corporations*." *MSS, Inc., v. Maser Corp.*, No. 3:09-cv-00601, 2011 U.S. Dist. LEXIS 79261, at *11-13 (M.D. Tenn. July 18, 2011) (emphasis in the original) (*quoting Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005)). "'[T]he proper party to bring a claim on behalf of a corporation is the corporation itself.'" *Id*. (*quoting House v. Estate of Edmondson,* 245 S.W.3d 372, 381 (Tenn. 2008) (*citing Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 531-32, 104 S. Ct. 831, 78 L. Ed. 2d 645 (1984)). Even when a corporation has one sole shareholder, the shareholder may not bring suit on behalf of the corporation. *Id*. (citing *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 213 S.W.3d 855, 863 (Tenn. Ct. App. 2006)).

This principle has been explicitly extended in this Circuit to parent corporations. *Id*. For example, in *Media Gen., Inc., v. Tanner*, it was held that a parent corporation could not bring suit for diminution in the value of its capital stock because of injury that was actually incurred by its subsidiary. *Id*. (*citing Tanner*, 625 F. Supp. 237, 244 (W.D. Tenn. 1985) (*citing Warren v. Mfrs. Nat'l Bank of Detroit,* 759 F.2d 542, 544 (6th Cir. 1985)). Another district court has stated that "injury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as a real party in interest on a parent corporation." *Id*. (*quoting Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.,* 956 F. Supp. 910, 916 (D. Kan. 1997) (*citing K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 (10th Cir. 1985)).

Allegedly, Plaintiff Veris's members are citizens of Tennessee. Plaintiff asserts that it is owned by Cliff Duffy, who lives in Tennessee, but neither Mr. Duffy nor any other Veris members are named

parties to this litigation or identified in the Agreement. Notwithstanding the filing of this lawsuit, neither Suncoast nor Bovaird would have any knowledge that Veris even existed, much less where it operated its principal place of business, thereby extinguishing any reasonable expectation that these Defendants could or should have known that Tennessee could be an applicable venue for any disputes that may arise. More importantly, the Agreement specifically designates that it shall be governed and construed in all respects in accordance with the laws of the state of California.

The U.S. District Court for the Eastern District of Tennessee was presented with a similar scenario in the recent case of *Blue Sky Marine.* In that case, the Eastern District Court analyzed a motion to dismiss premised on a lack of personal jurisdiction argument by the defendant. It noted that on the record before the court, the defendants did not purposefully direct their actions into Tennessee, advertise in Tennessee, attempt to exploit Tennessee's market for its products, produce anything in Tennessee, ship anything to Tennessee, or maintain a substantive, ongoing relationship with the State. *Blue Sky Marine, LLC v. Axial Drive Sys., LLC*, 2026 U.S. Dist. LEXIS 103582 at *16-17 (E.D. Tenn. May 11, 2026). It reasoned, "[i]n short, 'plaintiff cannot be the only link between the defendant and the forum.'" *Id*. (*citing Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018)). In *Bulso*, the Sixth Circuit affirmed the district court's finding that there was no basis for personal jurisdiction where a non-resident defendant engaged a Tennessee plaintiff to be his attorney, each of the defendants met with the plaintiff in Tennessee at least once, defendants communicated with the Tennessee plaintiff by phone and email, and later served summons and a complaint on the plaintiff in Tennessee. 730 F. App'x at 350. Likewise, in *Blue Sky Marine*, the plaintiff claimed these contacts ultimately harmed him in Tennessee, and after *Walden v. Fiore*, the Sixth Circuit found this was not enough: "[t]he defendants' contacts with Tennessee came from Bulso's law firm being located in Tennessee, not because the defendants sought to invoke the benefits and protections of Tennessee law." *Id.* (*citing Bulso* at 350).

The *Blue Sky Marine* court further reasoned, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 17-18 (*quoting Walden*, 571 U.S. at 290). The defendants' contacts in Tennessee in *Blue Sky Marine* were found to have little to do with the state and everything to do with the fact that plaintiff was based there. *Id*. Moreover, their contacts with Tennessee were too random and fortuitous to support a finding of purposeful availment, a necessary component to establish specific jurisdiction. *Id*. The district court, therefore, granted the Defendant's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2). *Id*.

A district court case out of Pennsylvania analyzed similar claims. In *W.G. Nichols v. CSK Auto, Inc*., the district court stated "[t]hat a defendant entered into a contract with a forum resident and directed communications related to the contract to the resident is not alone sufficient to establish personal jurisdiction over a breach of contract claim." 2001 U.S. Dist. LEXIS 19121 (*citing Vetrotex*, 75 F.3d at 152; *Farino*, 960 F.2d at 1223; *Atlantic Fin. Fed. v. Bruno*, 698 F. Supp. 568, 572-73 (E.D. Pa. 1988)). In determining personal jurisdiction over a breach of contract claim, a court considers the character and location of the contract negotiations, the terms of the contract, the type of goods being sold, and the parties' course of dealing. *Id*. (*citing Remick*, 238 F.3d at 256; *Allied Leather Corp. v. Altama Delta Corp*., 785 F. Supp. 494, 501 (M.D. Pa. 1992)).

In the *W.G. Nichols* case, the district court determined that the plaintiff had failed to establish sufficient forum contacts to warrant an exercise of personal jurisdiction over the breach of contract claim in finding that: there were no shipments of goods into the forum (even though it acknowledged that payment was to be received by a plaintiff in the forum); the agreement contained both a choice of law provision and a forum selection clause for a state other than the forum state, which "would certainly diminish, if not extinguish, any expectation of being sued in the seller's home state;" the agreement did not require any purchase by defendant; the agreement could be terminated by either

party within a specific period of time; there was no franchise agreement; there was no agency relationship; there was no joint venture; there was no provision requiring an ongoing series of transactions; and there was no showing that the defendant ever sent a representative to the forum or did anything in the forum state to facilitate the performance of the contract or the resolution of any dispute arising from it. *Id*. at 3-6 (c*iting Allied Leather*, 785 F. Supp. at 501).

The factual circumstances in the case at bar are even weaker than those of *Blue Sky Marine* or *W.G. Nichols*. Plaintiff has not alleged any Tennessee contacts by the Bovaird Defendants, much less actions by the Bovaird Defendants purposefully directed into Tennessee. None of the Bovaird Defendants are alleged to have entered into a contract with a party in Tennessee, as the Agreement with ADI was both with a California corporation and contained a California choice of law provision. The transaction with the customer PK-LA took place in California and involved audio equipment delivered to PK-LA's Malibu, California residence. The fact that Plaintiff Veris, the holding company of AXISS Audio and ADI, is based in Tennessee cannot transform these transactions between Florida or California parties into facts that would support personal jurisdiction here in Tennessee.

To the extent that Plaintiff seeks to allege the existence of another contract that would have required Suncoast to deliver and install the audio equipment in the home of PK-LA in California, it would have likewise been with ADI and did not involve any act or omissions in Tennessee. Thus, this Court should dismiss the Complaint due to lacking personal jurisdiction over Suncoast and Bovaird for breach of contract claims.

**2. Defamation and slander claims**

Plaintiff claims that Mr. Wiegand, as manager of Clarisys, traveled to Colorado and made false claims about an AXISS product, and that Mr. Bovaird then repeated the same false statement(s) to (1) the same dealer in Colorado and to Jay Caceres ("Mr. Caceres"), (2) the owner and operator of Jay's

Audio Lab, and (3) members of Audioshark, a members-only online forum for discussion of high-end Hi-Fi products that Plaintiff contends is owned by Mr. Bovaird. *See* Complaint at ¶¶ 295-301. Plaintiff further claims that Bovaird proceeded to make the same false statements in his demonstration room at the Florida Audio Expo. *Id*. at 302. Plaintiff also alleges that Mr. Wiegand and Dave Weintraub, a sales representative of Luxury and Clarisys, told a dealer in Utah "he should drop Soulution products because the 717 was defective and blowing up speakers." *Id*. at ¶¶ 164-68. None of these claims occurred in Tennessee or otherwise have any connection to Tennessee.

According to the Complaint, Jay's Audio Lab is owned and operated by Mr. Caceres, and conducts reviews of high-end Hi-Fi products, provides rate consultation to individual buyers for a fee, directly sells high-end Hi-Fi equipment, and brokers the sales of high-end equipment to third parties for a fee. *See* Complaint at ¶ 177. Plaintiff further contends that Mr. Caceres is one of the largest social media influencers in the high-end Hi-Fi space with thousands of social medial subscribers and does business with Mr. Bovaird and his companies by buying products from them and selling them to his clients, arranging consignment sales of their used products, and brokering new buyers to Suncoast, Luxury, and/or Clarisys. *Id*. at 178-79. Plaintiff claims that Mr. Bovaird made false statements to Mr. Caceres about products imported by Plaintiff or its subsidiaries, that Mr. Caceres later repeated the statements and otherwise caused Plaintiff's sales to diminish, and that Mr. Bovaird made similar false statements on Audioshark and at the Florida Audio Expo, likewise causing Plaintiff's sales to decline. *Id*. at 180-89.

Under the plain language of the Complaint, none of the alleged false statements occurred in Tennessee or are otherwise affiliated with any conduct associated with Tennessee. The alleged statements involved the reliability of equipment manufactured by a Swiss company (Spemot AG) and distributed by a California company (ADI) through a Florida dealer (Suncoast) to a California customer (PK-LA). The alleged fact that Plaintiff acquired ADI and holds ADI assets from its location in

Tennessee does not mean that statements about ADI or the audio equipment it imports and distributed is directed to any party in Tennessee. For the same reasons as described, *supra*, this Court should dismiss the Complaint due to lacking personal jurisdiction over Suncoast, Luxury, Clarisys, or Mr. Bovaird for defamation and slander claims.

**3. Intentional inference with AXISS's business and contract relationships claims**

Plaintiff alleges that all Defendants, including the Bovaird Defendants, each either directly or via their owners, managers, or agents acting on their behalf, used the improper means of defamation slander, and misuse of confidential information for the predominant purpose of causing injury to AXISS and the products it carries for the purpose of enriching themselves. *See* Complaint at ¶ 315. There remains, as analyzed and discussed *supra*, absolutely no connection whatsoever between the alleged conduct of the Defendants in this regard and the state of Tennessee. The allegedly defamatory statements were uttered in Colorado, Florida, Utah, or on online forums operated by parties not located in Tennessee. Complaint ¶¶ 155, 183-85, 186-88. Thus, the Court should dismiss the Complaint for lack of personal jurisdiction over the intentional interference with Plaintiff's business and contract relationships claims.

**4. Civil Conspiracy claims**

Similar to the arguments above, to the extent that any conspiracy to defame or interfere with business relationships allegedly existed between any of the defendants or between the Bovaird Defendants and other parties, the facts in the Complaint show that such alleged actions took place outside of the state of Tennessee. Plaintiff has alleged acts or statements in California, Colorado, and/or Florida, but has not alleged any acts in the state of Tennessee. As analyzed and discussed *supra*, there is no connection between the Bovaird Defendants and the Middle District. Thus, this Court lacks personal jurisdiction over the Bovaird Defendants for the claims of conspiracy.

### 5. Venue in the Middle District of Tennessee is improper

In addition to the lack of personal jurisdiction over the Bovaird Defendants, venue in the Middle District of Tennessee is also improper. "[W]hen a defendant files a 12(b)(3) motion to dismiss for improper venue, the plaintiff must show by a preponderance of the evidence that **venue** is proper." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025). Proper venue can be established where any defendant resides under 28 U.S.C. § 1391(b)(1), or where a substantial part of the events or omissions giving rise to the claim occurred under 28 U.S.C. § 1391(b)(1). Plaintiff's Complaint alleges no facts to support venue in the Middle District of Tennessee under either provision. The Bovaird Defendants are located in Florida, Florian Wiegand is located in Switzerland, and the Gefteas Defendants are located in Texas. The circumstances of the alleged breach of contract between a Florida company (Suncoast) and a California company (ADI) with a California-resident customer (PK-LA) do not support venue in the Middle District of Tennessee under Section 1391(b)(2). Likewise, allegedly defamatory statements made in California, Florida, Colorado, or Utah cannot establish venue in Tennessee.

In the event that no district is available under the above sections, then 28 U.S.C. § 1391(b)(3) allows for suit to be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." As argued more fully above, none of the Bovaird Defendants are subject to the personal jurisdiction of this Court. Similarly, the Gefteas Defendants in Texas and Defendant Florian Wiegand in Switzerland are not subject to the jurisdiction of this Court by Plaintiff's own allegations. Complaint, *supra*. Accordingly, the Middle District of Tennessee is not the

proper venue for Plaintiff's claims, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

## CONCLUSION

Plaintiff's Complaint contains 327 paragraphs and sprawls across 48 pages. Plaintiff had ample opportunity to allege some fact, if it existed, that would tie the Bovaird Defendants to Tennessee. Plaintiff has failed to do so. Accordingly, this Court lacks personal jurisdiction over the Bovaird Defendants in this matter. Similarly, venue in the Middle District of Tennessee for alleged acts or statements in California, Florida, Colorado, or Utah is improper. For these reasons and those described herein above, the Plaintiff's Complaint should be dismissed for lack of jurisdiction and improper venue.

Respectfully submitted,

*/s/ Peter Robison*

Peter C. Robison (BPR # 27498)
LEWIS THOMASON, P.C.
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com

*Counsel for Defendants Michael Bovaird, Suncoast Audio, LLC, Luxury Hi-Fi Distribution LLC, and Clarisys Audio Global Distribution, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2026 , a copy of the foregoing has been delivered to all parties at interest via Court's ECF system and/or U.S. Mail:

Eric G. Osborne
Amy R. Mohan
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Ave., Suite 1750
Nashville, TN 37203
eosborne@srvhlaw.com
amohan@srvhlaw.com
*Counsel for Plaintiff Veris Home Technology LLC d/b/a AXISS Audio*

Michael Gefteas
2359 Briar Ct.,
Frisco, TX 75034

Florian Wiegand
Cross Street Corporate Services, LLC
50 Central Avenue, 8th Floor
Sarasota, FL 34236

Bespoke Audio Shop
2359 Briar Ct.
Frisco, TX 75034

*/s/ Peter Robison*
Peter C. Robison