IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VERIS HOME TECHNOLOGY LLC d/b/a AXISS Audio,<br><br>*Plaintiff*,<br><br>v.<br><br>MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, CLARISYS AUDIO GLOBAL DISTRIBUTION, LLC, and BESPOKE AUDIO SHOP,<br><br>*Defendants*. | ) | Case No. 3:26-cv-00918<br><br>JURY DEMAND<br><br>District Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Luke A. Evans |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL GEFTEAS' AND BESPOKE AUDIO SHOP'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER AND/OR PERSONAL JURISDICTION, OR IMPROPER VENUE, OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

Defendants Michael Gefteas and sole proprietorship Bespoke Audio Shop (collectively, "Gefteas"),[1] by and through undersigned counsel, appearing specially to preserve all defenses under Federal Rule of Civil Procedure 12(b), submit this Memorandum of Law in support of Gefteas' Motion to Dismiss this action for lack of subject-matter jurisdiction and/or personal jurisdiction. In the alternative, if, and only if, the Court concludes that it has jurisdiction, Gefteas moves to dismiss this action for improper venue. In the alternative, if, and only if, this Court determines that Gefteas is not entitled to dismissal or transfer on jurisdictional or venue grounds,

[1] Bespoke Audio Shop is a website operated by Gefteas, not a distinct legal entity. Therefore, Gefteas intends that each reference to movant Gefteas be read as including Bespoke Audio Shop.

and without any waiver of Gefteas' denial that this judicial district has jurisdiction, Gefteas asks that this Court dismiss the Complaint for failure to state a claim upon which relief can be granted.[2]

**BRIEF FACTUAL & PROCEDURAL HISTORY**

Gefteas is a hobbyist audiophile who makes social media content about audio equipment and occasionally sells equipment online under the name Bespoke Audio Shop ("Bespoke"). *Cf.* Doc. No. 1, ¶¶ 26, 84–85. In or around July and August 2025, Gefteas made social media posts opining on a recent dispute between a then-unidentified distributor, dealer, and customer after the customer's recently purchased imported luxury amplifier failed and allegedly damaged his high-end speakers. *Id.*, ¶ 141; *see* Doc. No. 1-4. On February 15, 2026, the customer—who was based in Malibu, California and went by the screenname "pk_LA"—posted about his experience with the Soulution-brand amplifier on an online forum. Doc. No. 1-9. A few days later, on February 17, the distributor, AXISS Audio, made its own update post about the amplifier in the same forum. Doc. No. 1-8. After these public discussions by AXISS and pk_LA, Gefteas began discussing the incident with more explicit references to the relevant players. *Cf.* Doc. Nos. 1-10, 1-11, 1-12.

On July 2, 2026, plaintiff Veris Home Technology LLC d/b/a AXISS Audio ("Veris")—the holding company of AXISS Audio USA, LLC and AXISS Distribution Inc.—sued Gefteas and Bespoke alleging defamation (Count II) and intentional interference with business relationships (Count VI). Veris alleges that Gefteas' posts published a false narrative regarding pk_LA's request for a refund, whether the amplifier "blew up," and whether any physical injuries resulted. Doc. No. 1, ¶ 286. Additionally, Veris further alleges a civil conspiracy between Gefteas, AXISS's

---

[2] To avoid waiver, Gefteas moves for dismissal under Rule 12(b)(6) "only *conditionally*" insofar as Gefteas *only* seeks Rule 12(b)(6) dismissal *if*, *and only if*, this Court finds jurisdiction and proper venue and denies Gefteas' Motions under Rules 12(b)(1), (2), and (3). *Cf. Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *8 n.9 (M.D. Tenn. Jan. 10, 2022) (emphasis original).

alleged competitors—Suncoast Audio LLC, Luxury Hi-Fi Distribution LLC, and Clarisys Audio Global Distribution, LLC—and their owners—Michael Bovaird and Florian Wiegand (Count VII).

## ARGUMENT

### I. The Court Should Dismiss the Complaint for Lack of Subject-Matter Jurisdiction.

Veris is a "holding company" with two subsidiaries: AXISS Audio USA, LLC ("AAU") and AXISS Distribution Inc. ("ADI"). Doc. No. 1, ¶ 1. All three entities—Veris, AAU, and ADI—do business as "AXISS Audio." *Id.* Although the Complaint conflates these three entities, parent company Veris does not have standing to sue for injuries allegedly suffered by its subsidiaries.

#### *A. Standard of Law.*

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Article III standing is a question of subject matter jurisdiction properly decided under [Rule] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Att'ys Pllc*, 702 F. App'x 416, 419 (6th Cir. 2017) (citations omitted). The plaintiff bears the burden of proving subject matter jurisdiction in response to a motion to dismiss. *Giesse v. Sec'y of Dep't of Health & Hum. Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

#### *B. Veris Pleads that the Defendants Injured Veris' Non-Party Subsidiaries.*

Federal jurisdiction "can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury[.]" *Warth*, 422 U.S. at 499 (citations omitted). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (collecting cases). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003). "As a general rule, two separate corporations are regarded as distinct legal entities even if the stock of one is owned wholly or partly by the other." *Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406 (D.D.C.

2014) (citations omitted). "On this basis, the shareholder standing rule generally precludes a parent corporation […] from having standing to bring an action on behalf of its subsidiary[.]" *Id.* (citations omitted). A parent company which "desires the legal benefits" of the parent-subsidiary relationship must also "must accept the legal consequences, including its inability later to treat the subsidiary as its alter ego because of certain advantages that might thereby be gained." *Id.* (citation omitted). This rule "prevent[s] parent corporations from having their cake and eating it too[.]" *Id.*; *see, e.g.*, *Media Gen., Inc. v. Tanner*, 625 F. Supp. 237, 244 (W.D. Tenn. 1985) (dismissing a plaintiff's claims which "actually reflect[ed] injury incurred by the […] plaintiff's subsidiary").

Here, the Complaint uses the term "AXISS" interchangeably to refer both to Veris individually *and* to all three entities (Veris, AAU, and ADI) collectively. Doc. No. 1, ¶¶ 1, 20. Every injury identified in the Complaint is alleged to have been suffered by "AXISS," without clarification or consistency as to precisely which legal entity suffered the harm. *See, e.g.*, Doc. No. 1, ¶¶ 264–74, 281–83, 291–93, 306–09, 314–16, 320–22. The contracts attached to the Complaint demonstrate that Veris itself could not suffer all the harms it alleges.[3] For example, the exhibits show that it was ADI—not Veris—which entered into the authorized dealer agreement with Suncoast Audio LLC ("Suncoast"). *See* Doc. No. 1-2. Likewise, it was ADI—not Veris or AAU—which entered the exclusive North American distributor contract with Soulution's Swiss manufacturer, Spemot AG. *Cf.* Doc. No. 1-1. The corresponding references to the "AXISS" collective necessarily refer to ADI; the exclusive Soulution contract belies any other interpretation.

---

[3] *See, e.g.*, *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (citations omitted) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations" and "if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[.]").

Per the Complaint, Veris is but a mere holding company—*i.e.*, "[a] company formed to control other companies, usu[ally] confining its role to owning stock and supervising management," which "does not participate in making day-to-day business decisions in those companies" *Company*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, ADI—not Veris—would be the proper party to bring *not only* any claims for breach of the Suncoast contract but also any claims for damages flowing from alleged interference with ADI's relationship with manufacturers and any reputational or financial harms suffered by ADI. Veris does not plausibly allege that *it* has relationships with any entities other than its subsidiaries AAU and ADI.

Veris argues it can sue on behalf of ADI because it "owns all stock and controls all property and rights" belonging to ADI. Doc. No. 1, ¶ 20. But "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary[.]" *Dole*, 538 U.S. at 475. Confronted with similar facts, the Sixth Circuit upheld a Rule 12(b)(1) dismissal where a plaintiff holding company attempted to sue on behalf of its subsidiaries. *See Am. BioCare*, 702 F. App'x at 420–21 (6th Cir. 2017) ("[E]ven assuming that [the holding company] retains ownership in the [subsidiaries], it still lacked standing to sue in their names.").

The Court should reach the same result here. The subsidiaries AAU and ADI remain distinct legal entities from their parent Veris. The three legally separate entities do not become one and the same legal entity by doing business under the same brand name of "AXISS." While the Complaint conflates Veris, AAU, and ADI under the collective term "AXISS," AAU and ADI are not plaintiffs in this case. Therefore, on the face of the pleadings, Veris has attempted to "rest [its] claim to relief on the legal rights or interests of third parties." *Cf. Warth*, 422 U.S. at 499. As a parent holding company, Veris does not have Article III standing to vindicate the rights of or recover damages on behalf of its third-party subsidiaries. Therefore, because Veris pleads harm to

"AXISS" and seeks to recover for harms incurred by non-party subsidiaries, this Court should dismiss the Complaint for lack of subject-matter jurisdiction.

## II. The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction.

### *A. Standard of Law.*

Rule 12(b)(2) authorizes dismissal of an action for "lack of personal jurisdiction. "Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). "The plaintiff must first make a prima facie case" of personal jurisdiction. *Id.* (citations omitted). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.' " *Id.* (quoting *Theunissen*, 935 F.2d at 1458). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives": "decide the motion upon the affidavits alone"; "permit discovery in aid of deciding the motion"; or "conduct an evidentiary hearing[.]" *Theunissen*, 935 F.2d at 1458.

### *B. Gefteas is not subject to general personal jurisdiction in Tennessee.*

"Personal jurisdiction falls into two categories: general and specific." *Malone*, 965 F.3d at 501. General personal jurisdiction is sometimes called "all-purpose" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* at 924. Here, Gefteas is domiciled in Texas. *See* Doc. No. 1, ¶ 26. Bespoke is a sole proprietorship and

therefore has no separate legal existence from Gefteas.[4] Therefore, Veris' Complaint does not establish a prima facie case of general personal jurisdiction over either Gefteas or Bespoke.

***C. Gefteas is not subject to <u>specific</u> personal jurisdiction in Tennessee.***

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (citations omitted). Where, as here, the purported subject matter jurisdiction is based on diversity of citizenship, the law of the forum state governs the exercise of personal jurisdiction over nonresident defendants. *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993). Tennessee's long-arm statute "has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," such that "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Id.*

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "For a nonresident defendant to be subject to personal jurisdiction, he must have 'certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549

[4] Even if Bespoke were treated as a corporation, the "paradigm forum for the exercise of general jurisdiction" over a corporation is where "the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Plaintiff avers that Bespoke is "a Texas sole proprietorship with its principal place of business in Frisco, Texas." Doc. No. 1, ¶ 27. Therefore, Bespoke is "fairly regarded as at home" in Frisco, Texas—not the Middle District of Tennessee. *Goodyear*, 564 U.S. at 924.

(6th Cir. 2016) (citations omitted). The Sixth Circuit applies "a three-part test to determine whether the exercise of personal jurisdiction […] comports with constitutional due process":

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 549–50 (citations omitted).

The Sixth Circuit's decision in *Reynolds v. Int'l Amateur Athletic Fed'n* is illustrative. 23 F.3d 1110 (6th Cir. 1994). In *Reynolds*, an England-based athletic federation banned an Olympic athlete residing in Ohio and issued a press release reporting that his lab tests had shown use of a banned substance. *Id.* at 1112. The athlete sued for defamation and tortious interference with business relations in the Southern District of Ohio. *Id.* at 1112–13. The athlete alleged that Ohio had personal jurisdiction over the federation because its statements had been "circulated" in Ohio and caused him to lose work in Ohio. *Id.* at 1120. The Sixth Circuit disagreed: such "superficial" and "fortuitous" contacts were insufficient to satisfy due process because the federation was not based in Ohio and did not own property or transact or solicit business in Ohio. *Id.* at 1119. Rather, the federation's allegedly defamatory statements concerned a drug sample taken in Monaco and tested in France. *Id.* at 1120. The Sixth Circuit found that the federation could not reasonably "foresee being required to defend in every forum where one of its athletes is present." *Id.* at 1118.

Here, Veris does not allege any link between Gefteas and Tennessee other than Veris itself. However, "the plaintiff cannot be the only link between the defendant and the forum." *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018). "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. No matter how "significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the

defendant's due process rights are violated.' " *Id.* at 285 (citations omitted). The inquiry focuses on the *defendant's* contacts with the forum state. Gefteas has no relevant contacts.

Gefteas is an individual who resides in and owns real property in Texas. Doc. No. 1, ¶¶ 16, 26; *see also* Declaration of Michael Gefteas ("Gefteas Decl.") at ¶ 2. Gefteas does not reside in Tennessee or own real property in Tennessee, and he never has. *See* Gefteas Decl. at ¶¶ 3–4. Gefteas did not make any of the social media posts at issue in Tennessee. *Id.*, ¶ 5. Gefteas has not intentionally targeted Tennessee readers or customers with any of his social media posts or equipment sales. *Id.*, ¶¶ 6–7. Moreover, Gefteas' prior dealings with AXISS appear to have been with the California-based ADI, not Veris. *Id.*, ¶ 8. While determinations of personal jurisdiction can be "claim specific," *cf. Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001), all of Veris' claims against Gefteas arise from online statements concerning a customer in California—not Tennessee. Doc. No. 1, ¶ 106. Gefteas' mere use of the internet to express his opinion is not sufficient to permit him to be haled into court in any forum with an internet connection. Gefteas did not "direct[ ] electronic activity into" Tennessee "with the manifested intent of engaging in business or other interactions within" Tennessee. *Cf. Santoni*, 2022 WL 97049, at *7 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)); *see also Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002) (newspapers did not "intentionally direct[ ] website content to a Virginia audience simply because "the newspapers' websites could be accessed anywhere, including Virginia"). Gefteas has never purposefully availed himself of "the privilege of conducting activities in Tennessee," "invok[ed] the benefits and protections of [Tennessee] laws," *Burger King*, 471 U.S. at 475 (citations omitted), or otherwise "reach[ed]" into Tennessee to "deliberately exploi[t]" Tennessee markets. *Walden*, 571 U.S. at 285 (citation omitted). Rather, Gefteas is a Texan with no ostensible connection to Tennessee who would be

financially burdened by being required to travel to this forum for litigation. Accordingly, this Court should dismiss Veris' Complaint without prejudice for lack of personal jurisdiction over Gefteas.

## III. In the Alternative, the Court Should Dismiss the Complaint for Improper Venue.

If, and only if, the Court declines to dismiss for lack of jurisdiction, Gefteas asks that the Court dismiss this action without prejudice for "improper venue" under Rule 12(b)(3).

### *A. Standard of Law.*

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Id.* "[T]he plaintiff bears the burden of proving that venue is proper." *Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (citations omitted). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.* at 537 (citations omitted).

### *B. Venue is Improper in the Middle District of Tennessee.*

The Middle District of Tennessee does not satisfy any of the criteria of 28 U.S.C. §1391(b). First, the Defendants reside in Texas, Florida, and Switzerland; none reside in Tennessee, much less the Middle District. *Cf.* §1391(b)(1). Second, no "substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. *Cf.* §1391(b)(2). Veris does not allege that Gefteas made any social media posts in Tennessee, and Gefteas has confirmed he did not. Gefteas Decl. at ¶ 5. Further, Veris alleges that the other Defendants' conduct occurred in Florida, Colorado, and Utah. Doc. No. 1, ¶¶ 155, 164–68, 173, 186–89, 160–61, 295–96, 302, 305. Therefore, venue is not proper in the Middle District under §1391(b)(1)–(2). Instead, under 28 U.S.C. §1391(b)(3), the proper venue for this action would be some other district in which "any

defendant is subject to the court's personal jurisdiction." For the reasons articulated in Section II, *supra*, Gefteas is domiciled in Texas and not subject to personal jurisdiction in this judicial district. Therefore, the Court should dismiss for improper venue.

The "interest of justice" does not support transfer in lieu of dismissal. *Cf.* 28 U.S.C. § 1406(a). Dismissal is "warranted" instead of transfer where—as here—the dispute "span[s] multiple districts in multiple states, and there are likely multiple jurisdictions where venue is proper." *Bailey v. Lesco Design & Mfg. Co., Inc.*, No. 3:25-CV-00761, 2026 WL 542695, at *2 (M.D. Tenn. Feb. 26, 2026). Under such circumstances, this Court has "decline[d] to make that decision" for the plaintiff and opted to dismiss. *Id.* Gefteas asks the Court to do the same here.

## IV. In the Alternative, the Court Should Dismiss the Complaint for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6).

If, and only if, the Court denies Gefteas' requests for dismissal on the basis of subject-matter jurisdiction, personal jurisdiction, and venue, Gefteas requests that this Court dismiss the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### *A. Standard of Law.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the court must accept the Complaint's well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor, that does not extend to "legal conclusions." Likewise, "bare assertions," threadbare "formulaic recitation[s] of the elements," and "conclusory" or "bald" allegations "are not entitled to the assumption of truth" and do not "count toward the [p]laintiff's goal of reaching plausibility of relief." *Carper v. Nissan N. Am.,*

*Inc.*, 820 F. Supp. 3d 716, 722 (M.D. Tenn. 2025) (quoting *Iqbal*, 556 U.S. at 680). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[F]actual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief." *Carper*, 820 F. Supp. 3d at 721 (citing *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "When faced with a Rule 12(b)(6) motion, the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or incorporated by reference into the complaint." *Hill v. Ardent Health Servs.*, 806 F. Supp. 3d 711, 715 (M.D. Tenn. 2025) (citation omitted. "When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Carper*, 820 F. Supp. 3d at 722.

### *B. Veris Fails to Plausibly State a Defamation Claim Against Gefteas (Count II).*

Tennessee law governs Veris's defamation claim because federal courts sitting in diversity apply the substantive law of the forum state. *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 824 (M.D. Tenn. 2021) (citations omitted). Under Tennessee law, a plaintiff establishes a prima facie case of defamation by showing that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citations omitted). "Publication is a term of art meaning the communication of defamatory matter to a third person."

*Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994). Written defamation is "libel," and spoken defamation is "slander." *Id.* at 820.

"Courts must determine as a question of law whether statements are capable of having a defamatory meaning." *Hudik*, 512 F. Supp. 3d at 825 (citations omitted). "In determining whether the published words are reasonably capable of such a meaning, the courts must look to the words themselves and are not bound by the plaintiff's interpretation[.]" *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983), *abrogated on other grounds as recognized by Zius v. Shelton*, No. E1999-01157-COA-R3-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000)). "If the words do not reasonably have the meaning the plaintiff ascribes to them, the court must disregard the latter interpretation." *Id.* Furthermore, the standard for defamation requires that the statement be both "false and defaming." *Sullivan*, 995 S.W.2d at 571. "[I]t is not enough for the statement in question to be false; the plaintiff must show that the defendant made a false statement that defamed him." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012). Therefore, to be defamatory, a communication "must constitute a serious threat to the plaintiff's reputation." *Id.* (citation omitted). Defamation "does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing." *Id.* "The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule" and "carry […] an element 'of disgrace.' " *Id.* (citation omitted).

**1. Gefteas' statement that AXISS did not refund pk_LA was not false.**

Veris cannot recover against Gefteas for stating that AXISS did not provide a full refund to pk_LA because Veris does not plausibly plead that Gefteas' statement was "factually false." *Cf. Stones River*, 651 S.W.2d at 719 (statements which are "true, or essentially true […] are not actionable). Veris alleges that, in or around May 2026, Gefteas "stat[ed] that AXISS" and its owner, Cliff Duffy, "did not provide a full refund to PK-LA." Doc. No. 1, ¶¶ 227–28, 232, 285;

Doc. No. 1-12. Crucially, no facts in the Complaint contradict Gefteas. Quite the contrary, the Complaint confirms that AXISS not only did not provide a "full" or "100%" refund to pk_LA, but AXISS in fact provided *no refund* to pk_LA whatsoever. *Cf.* Doc. No. 1, ¶¶ 149, 228, 232. Instead, AXISS provided a refund *to Suncoast* "minus a standard industry restocking fee." *Id.*, ¶ 149 Suncoast, in turn, deducted the same "AXISS restocking fee" from its refund to pk_LA. *Id.*, ¶ 151. Therefore, Gefteas statement that "AXISS did not provide a full refund to PK-LA" is factually correct and cannot sustain a defamation claim.[5] *Id.*, ¶ 285.

**2. Gefteas' statements about products manufactured by Soulution and Gauder Akustik were not statements "of and concerning" Veris.**

Veris cannot recover against Gefteas for statements he made about products manufactured by third parties. Under Tennessee law, "[a] plaintiff may not support a claim for defamation based on an alleged defamatory statement made 'of and concerning' a third party." *Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009). This same principle has been recognized by both the U.S. Supreme Court and the Sixth Circuit. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964) (a jury's finding of libel was "constitutionally defective" where the statements were not "of and concerning" the plaintiff); *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 486 (6th Cir. 2023) (citing, *inter alia*, *Sullivan*, 376 U.S. at 288–91) (statements which "express[ ] a general opinion about a topic without a statement 'of and concerning' the plaintiff" are not defamatory).

The Central District of California applied this same principle to analogous facts in *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998). There, a consumer advocacy group published statements discussing an Isuzu vehicle's alleged safety

[5] Counterfactually, even if Gefteas *had* misrepresented AXISS' decision not to refund pk_LA, the claim that a company declined to refund a customer is not so extreme as to expose the company to "public hatred, contempt," "ridicule," or "disgrace." *Brown*, 393 S.W.3d at 708 (citation omitted).

defects. *Id.* at 1040–41. Three separate entities doing business under the Isuzu name—the Japanese manufacturer, its American importer, and its American distributor—each sued the consumer advocacy group for defamation and intentional interference with business relations, among other claims. *Id.* at 1039. The *Isuzu* court recognized that, "the First Amendment requires the plaintiff to establish that the statement on which the [defamation] claim is based is 'of and concerning' the plaintiff." *Id.* at 1044 (citing *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986) and *Sullivan,* 376 U.S. at 288–89). "First Amendment considerations preclude such vicarious liability by anyone other than the manufacturer in a product disparagement suit." *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F. Supp. 742, 751 (S.D.N.Y. 1981) (granting summary judgment on defamation claim because "the only losses sustained by it were the lost sales of a retailer"); *accord Isuzu*, 12 F. Supp. 2d at 1045. Accordingly, the *Isuzu* court dismissed the American importer's and distributor's defamation claims with prejudice because the defendant's statement that the vehicle was "dangerous because of the way it was manufactured" could not be "reasonably understood" to suggest that the distributor or importer were responsible for safety risks resulting from its design and manufacture. *Id.* "None of defendant's statements [were] about the Distributor or the Importer." *Id.* "[T]he fact that the Distributor and Importer share[d] the name Isuzu with the manufacturer [did] nothing to revive their claims." *Id.* Importantly, although *Isuzu* arose under California state law, the district court reached its decision by applying a principle recognized by Tennessee courts (*e.g.*, *Steele*, 2009 WL 4825183, at *3), the Sixth Circuit (*Geomatrix*, 82 F.4th at 486), and the Supreme Court (*Sullivan,* 376 U.S. at 288–89).

This Court should reach the same result as *Isuzu* here. AXISS imports and distributes audio equipment manufactured by Soulution, Gauder Akustik, and other third-parties. Doc. No. 1, ¶¶ 1–2, 20, 28, 43. Veris alleges that Gefteas defamed products which are manufactured by Soulution

and Gauder Akustik and then imported and distributed by AXISS. Specifically, Veris alleges that Gefteas defamed Soulution when he: claimed that a Soulution amplifier "blew up" and "ruined" or "caused damage to" a customer's "expensive speakers" (Doc. No. 1, ¶¶ 193, 198, 238–39); stated a "brand new six-figure Soulution system failed after only an hour and supposedly took out [the owner's] $250,000 speakers" (*id.*, ¶ 226; Doc. No. 1-10); stated that "the amp company [*i.e.*, Soulution] has a 'history of defective products' " and that Soulution products "have a long history of repeatedly failing" (Doc. No. 1, ¶¶ 193, 198; Doc. No. 1-4, PageID # 69); stated that there "may be" "possible physical injuries" caused by the Soulution amplifier "blow up" (Doc. No. 1, ¶¶ 198, 202, 210, 219, 223); stated he had heard about "issues with Soulution gear and incredibly long repair times" (Doc. No. 1-10); and opined that Soulution should be "sue[d] […] out of existence" Doc. No. 1-4, PageID # 74. With respect to Gauder Akustik, Veris alleges that Gefteas "described his Gauder Akustik-brand speakers as the " 'worst speakers' he ever heard, 'absolutely lifeless, [and] emotionally disconnected.' " Doc. No. 1, ¶ 94.

Even assuming for the sake of argument that such statements could support a defamation claim, Soulution and Gauder Akustik are not plaintiffs in this lawsuit. None of these statements defame Veris. None of Gefteas' statements about the Soulution amplifier incident, any resulting damage, or the quality of Soulution's or Gauder Akustik's products are statements "of and concerning" Veris, AXISS, AAU, or ADI. *Cf. Steele*, 2009 WL 4825183. Therefore, none of these statements support a claim entitling Veris to relief. For these reasons, Veris fails to state a plausible claim for relief against Gefteas related to any of his statements about Soulution or Gauder Akustik.

**3. Likewise, Gefteas' statements about Cliff Duffy, AAU, and/or ADI are not statements "of and concerning" Veris.**

For the same reason Veris cannot recover against Gefteas for statements about Soulution or Gauder Akustik, Veris cannot prosecute a claim for any defamation of its member Cliff Duffy,

AAU, or ADI. Veris is presumed to be a "distinct legal entity" from its member and subsidiary. *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005). Therefore, Gefteas' statements about Duffy, AAU, and/or ADI are not statements "of and concerning" Veris.[6]

**4. Gefteas did not defame Veris in his posts which did not name AXISS.**

Veris concedes that the vast majority of Gefteas' posts did not "explicitly name either AXISS or Soulution." Doc. No. 1, ¶ 194. Gefteas' only explicit reference to AXISS identified in the Complaint occurred in or around May 2026 when he stated "Cliff Duffy at Axiss CHOSE to NOT REFUND the owner of the new gear that damaged the Rockports all his money back." Doc. No. 1, ¶ 226–28; Doc. No. 1-12. Prior to this point, Gefteas had referred to an unnamed "distributor," "manufacturer," "[c]ustomer," and "amp company." Doc. No. 1, ¶¶ 192–93. Indeed, in or around August 2025, Gefteas was steadfast in his refusal to name names; Gefteas stated he "won't identify" the parties, that the "full story" would come from someone else, and that he would "let others […] go public with the details." Doc. No. 1-4, PageID # 64, 66, 75. At that time, Gefteas only disclosed that the buyer and distributor were both in the United States and that the manufacturer was European but not British.[7] Doc. No. 1-4, PageID # 69, 74–75. Veris' conclusory allegations that Gefteas' "experienced and specialized subscribers and viewers" could read between the lines of his earlier posts is not plausibly supported by the facts alleged. *Cf.* Doc. No. 1, ¶ 194. Veris does not allege that it is the only American distributor of non-British, European-manufactured luxury audio equipment. Gefteas' only posts explicitly connecting AXISS and Soulution to his prior posts about the refund issue appear to be his three posts in May 2026. Doc. No. 1, ¶¶ 226–28; Doc. Nos. 1-10, 1-11, 1-12. Gefteas did not post the photograph of the Soulution

---

[6] *See, e.g.*, Section I, *supra* (identifying this defect as grounds for dismissal under Rule 12(b)(1)).
[7] One commenter speculated about the parties' identities, and in response, Gefteas thanked him for "keep[ing] [his] mouth shut." Doc. No. 1, PageID # 75.

amplifier until May 2026. Doc. No. 1, ¶ 226; Doc. No. 1-10. Gefteas only made these May 2026 posts months *after* pk_LA and AXISS had made their own posts about the incident on February 15, 2026 and February 17, 2026, respectively. *See* Doc. Nos. 1-9, 1-8.

**5. Gefteas' commentary about the Airtight letter and stylized reproduction of the same did not expose Veris to public ridicule.**

On February 1, 2026, Japanese manufacturer A&M Limited, doing business as "Airtight," posted an open letter stating that it had changed its North American distributor from AXISS to American Sound. Doc. No. 1-5. Over a week later, on February 9, Gefteas posted his appreciation that a "respected tube manufacturer [had] publicly raise[d] the bar for how their products are represented and supported." Doc. No. 1-7. Gefteas further stated that he was "genuinely excited to see tube companies start expecting more from their distributors." *Id.* Gefteas expressed his disappointment that "too many great tube brands ha[d] been held back by poor distribution" and opined that AirTight's new distributor had "more care, more knowledge, more respect for the craft and the listener" than its unnamed predecessor, but Gefteas did not name AXISS. *Id.* Regardless, even if these statements named AXISS or painted it in a negative light, Gefteas' subjective beliefs about how a company 'raised the bar' do not subject its competitors to "public hatred, contempt," "ridicule," or "disgrace." *Brown*, 393 S.W.3d at 708 (citation omitted). Such statements are not "provably false" and thus constitute constitutionally "protected, nonactionable opinion." *Cf. Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (citation omitted).

In addition to the above commentary, Gefteas also posted an image of the AirTight letter on parchment under the words "TUBE INDUSTRY RAISING THE BAR!" *See* Doc. No. 1-6. The stylized, heavily pixelated letter contained numerous obvious typographical errors and nonsense words, by all appearances the result of image compression and/or the use of generative artificial

intelligence.[8] In the stylized image, AirTight's original sentence "AirTight is extremely grateful for [Axiss Audio's] efforts" was garbled as "AirTight's [*illegible*] exemely grateful [*illegible*]"; likewise, the original sentence "We would like to thank to Axiss Audio for all their friendship and accomplishments provided and wish Axiss Audio a great success" became "[*illegible*] wish Axis [*illegible*] great success." *Compare* Doc. No. 1-5 *with* Doc. No. 1-6. Veris alleges that Gefteas "doctored" AirTight's letter to "omit[ ] many positive references to AXISS." Doc. No. 1, ¶¶ 215–16. However, a "person of ordinary intelligence" would not understand Gefteas' stylized, illegible image to be a one-to-one accurate reproduction of AirTight's corporate communication, particularly "in light of the surrounding circumstances"—which include the numerous, blatant typographical errors in the stylized image, the general illegibility of the letter, and the fact that the letter was portrayed as parchment in front of a glowing art deco background. *Cf. Hill v. State*, No. M2022-01749-COA-R3-CV, 2025 WL 1078167, at *6–7 (Tenn. Ct. App. Apr. 10, 2025).

Regardless, Veris' exhibits show that the stylized letter did not "omit[ ] many positive references to AXISS": both letters expressed that AirTight was "grateful" for AXISS and wished AXISS "great success." *Compare* Doc. No. 1-5 *with* Doc. No. 1-6. While the minor omissions of the words "friendship and accomplishments" in the stylized letter may have "annoy[ed]" Veris, the letter did not, as a matter of law, "constitute a serious threat" to Veris' reputation or expose Veris to the level of "public hatred, contempt," "ridicule," or "disgrace" necessary to state a claim

---

[8] For example: "exclusively" became "boclusively"; "branded" became "p-branded"; "worked hard to promote" became "have work wars foverd to phomothe"; "US market" became "Uss Sacrophie"; "have" became "ave"; "accelerated marketing and sales in the US, and in a short period after taking over the business from Arturo and have solidified AirTight's position in the US market" became "accelerated to increase global [*illegible*] Inc. [*illegible*] and a [*illegible*] fewer [*illegible*] business from [*illegible*] and man Ebgansend such ana"; "has been representing AirTight" became "has have representing [*illegible*]"; "promoting our products in the region" became "promoting products in he region"; and the given name of managing director "Yutaka 'Jack' Miura" became "Mura Mura." *Compare* Doc. No. 1-5 *with* Doc. No. 1-6.

for defamation, particularly given that the letter retained references to AirTight's gratefulness and well wishes for AXISS's future success. *Cf. Brown*, 393 S.W.3d at 708 (citation omitted).

### 6. Gefteas' remaining statements were non-falsifiable opinion.

Gefteas' remaining statements about AXISS, its products, and/or its member Cliff Duffy offered Gefteas' "protected, nonactionable opinion" which did not communicate any "provably false factual connotation." *See, e.g.*, *Seaton*, 728 F.3d at 598, 601 (6th Cir. 2013). The First Amendment shields "statements that cannot reasonably be interpreted as stating actual facts" from defamation liability. *Id.* at 597 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem," it must be corrected not by "judges and juries but [by] the competition of other ideas." *Id.* at 339–40. Thus, statements which are "inherently subjective" and "cannot be proven false" are protected and "cannot be the basis of a defamation claim." *Seaton*, 728 F.3d at 600–01 (citation omitted). "Likewise, statements that cannot 'reasonably [be] interpreted as stating actual facts' […] because they are expressed in 'loose, figurative or hyperbolic language,' and/or the content and tenor of the statements 'negate the impression that the author seriously is maintaining an assertion of actual fact' about the plaintiff are not provably false and, as such, will not provide a legal basis for defamation." *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (quoting *Milkovich*, 497 U.S. at 21).

Here, Veris alleges that Gefteas made numerous statements of inherently subjective opinion; *i.e.*, that AXISS: "took extra-stupid pills"; prioritized "being right" over "taking care of a customer"; engaged in "shocking behavior"; " 'stuck it' to the customer"; "refuse[d] to do the right thing"; was "greedy," "stupid," and "arrogant"; offered a "case study" in "everything not to do"; had "poor customer service" and "did not provide acceptable customer service to PK-LA"; made "the dumbest comments" Gefteas had "ever heard"; "chose the path this took"; "chose not to"

"ma[k]e this very easy"; was held back from "doing right by the victim" due to "seemingly a combination of ego and stupidity"; was "being dumb dumb dumb"; and was "absolutely terrible." Doc. No. 1, ¶¶ 192–193, 197, 207, 286; *see also* Doc. Nos. 1-3, 1-4. Gefteas further opined: that he had "reservations about AXISS" (Doc. No. 1, ¶ 217); that "being a bad or good distributor is a conscious and calculated choice each makes on their own" (Doc. No. 1-4, PageID # 67); that "any other reputable company would have refunded immediately" (Doc. No. 1-12); and that "an honest reputable distributor would simply apologize and return 100% of the purchase price." Doc. No. 1-14. With respect to products sold by AXISS, Gefteas made statements such as that he was "glad he did not own Soulution gear" (Doc. No. 1, ¶ 217) and that when he listened to the Gauder Akustik, he "kept waiting for the 'magic' to show up… and it never did." Doc. No. 1-13.

Such non-literal, non-factual statements do not defame anyone because they express inherently subjective, unproveable opinions in "loose, figurative or hyperbolic language." *Hibdon*, 195 S.W.3d at 63; *see, e.g.*, *Seaton*, 728 F.3d at 597–98 (hotel owner failed to state a plausible claim for defamation because TripAdvisor's list of the "2011 Dirtiest Hotels" could not reasonably be interpreted as "seriously maintaining" the hotel was "in fact, the dirtiest hotel in America"); *see also Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284 (1974) ("words like 'traitor' cannot be construed as representations of fact"); *Stones River*, 651 S.W.2d at 722–23 (Tenn. Ct. App. 1983) (references to "pure highway robbery" and "rip-off" were not defamatory). Accordingly, Gefteas' clear expressions of subjective opinion are not capable of defamatory meaning as a question of law. *Cf. Hudik*, 512 F. Supp. 3d at 825.

**7. Veris does not plausibly allege that Gefteas' experienced and specialized audience, or even a person of ordinary intelligence, would interpret his use of the term "blow up" in the context of audio equipment as referring to a literal explosion.**

Veris does not plausibly allege that a person of ordinary intelligence—much less Gefteas' "experienced and specialized" audiophile audience—would understand the terms "blow up," "blows up," or "blew up" in the context of an audio equipment malfunction to mean the equipment literally exploded. *Cf.* Doc. No. 1, ¶¶ 194, 285–86. Veris attached an online forum post from February 2026 to the Complaint in which pk_LA himself referred to the very same equipment malfunction using the terms "blown" and "blow." Doc. No. 1-9, PageID # 95–96. Two other users chimed in and followed suit: one referred to Soulution's inability to "determine the root cause of the blown tweeters issue" (*id.*, PageID # 97), and another user shared his own "terrible experience" and "misfortune" of "*blowing up* 3 Soulution 701 amps within 6 months." *Id.*, PageID # 99 (emphasis added). This broader context supplied by the Complaint's exhibits shows that Gefteas' use of "blow up" was at best in line with commonplace audiophile vernacular, and at the very worst nonactionable "rhetorical hyperbole." *Stones River*, 651 S.W.2d at 722 (citation omitted).

**8. Veris does not plausibly allege reputational damages.**

"Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved." *Cf. Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). "The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto Parts Co.*, 876 S.W.2d at 820. Here, even if Defendants' statements reduced the desire for Soulution products in the marketplace, Veris does not plausibly allege that *it* has directly suffered "impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 51 (Tenn. Ct. App. 2013). Instead, Veris alleges that it lost potential Soulution customers and that "a number" of its "Authorized Soulution Dealers" have chosen to "drop the Soulution brand." Doc. No. 1, ¶¶ 212, 235–36. Veris does not plausibly connect these lost Soulution sales to the statements of Gefteas' as opposed to public statements by

AXISS, pk_LA, and other audiophiles critical of Soulution. *Cf.* Doc. Nos. 1-8, 1-9. If anything, these third-party statements suggest that the Soulution's already sullied reputation may have been effectively libel-proof. *Cf. Davis*, 83 S.W.3d at 126. Further, Veris' reliance on awards AXISS and/or Soulution won in April and July 2026—*i.e.*, immediately before filing the lawsuit—as evidence of the Soulution's failure to achieve expected sales growth illustrate the implausible and speculative nature of Veris' damages claims. Doc. No. 1, ¶ 42. Regardless, Veris' alleged harms to its bottom line ultimately derive from injury to Solution's reputation—not Veris' reputation. *See, e.g.*, *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 134 (1986) ("Courts generally are reluctant to impute a lack of integrity to a corporation merely from a criticism of its product.").

For all of the foregoing reasons, Veris fails to plausibly state a claim of defamation.

### *C. Veris Fails to Plausibly State an Intentional Interference with Business Relationships Claim Against Gefteas (Count VI).*

Veris fails to plausibly allege a cause against Gefteas for intentional interference with business relationships. The requisite elements of this claim under Tennessee law are as follows:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means* […] and finally, (5) damages […]

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citation omitted) (emphasis original). Veris has not plausibly plead each element.

First, Veris has not plausibly alleged improper motive or improper means. *Id.* (element 4). Veris relies upon defamation to satisfy this element. Because Veris has not stated an actionable claim for defamation, Veris has not pleaded facts supporting this element. *See, e.g.*, *Seaton*, 728 F.3d at 602–03 (dismissal of defamation count meant plaintiff who "relied solely on defamation to establish improper means […] failed to state a plausible claim for tortious interference").

Second, Veris does not plausibly allege that Gefteas had sufficient "knowledge" of Veris' business relationship with any "specific third parties" or intent to cause "breach or termination" of these relationships.[9] *Trau-Med*, 71 S.W.3d at 701 (elements 1, 2, and 3). The only "specific third parties" named in Count VI are Soulution and Gauder Akustik. *Cf.* Doc. No. 1, ¶ 313. Veris alleges that "Authorized Soulution Dealers" have "chosen to drop the Soulution brand" but does not specify who. *Id.*, ¶ 212. Veris avers that it "enjoys existing business relationships" with "*dealers*," "product *manufacturers*," and "indirectly" those "*end customers* who buy the products AXISS imports and distributes." *Id.*, ¶ 311 (emphasis added). Veris avers that Gefteas has "general knowledge" about AXISS's dealers and that knows about AXISS's relationships with manufacturers Soulution[10] and Gauder Akustik because "these relationships are exclusive to AXISS, listed on AXISS's website, profiled in media […] and otherwise generally known in the industry." *Id.* ¶¶ 312–13. Such superficial, generic knowledge does not satisfy *Trau-Med*. Veris' averments of such "general knowledge" and "generally known" relationships, *cf. id.*, ¶¶ 312–13, epitomize the "mere awareness of the plaintiff's business dealings with others in general" which is insufficient to state a claim for this tort. *Trau-Med*, 71 S.W.3d at 701. To the extent Veris arguably identifies Soulution and Gauder Akustik, Veris does not plausibly allege breach or termination of the dealer-distributor relationship as opposed to mere decreased consumer demand. *Cf.* Doc. No. 1, ¶ 254. Further, all of Veris' averments regarding interference with its relationships with end customers (*id.*, ¶ 311) or the "thousands" of "potential customers" who read Gefteas' posts (*id.*, ¶ 320) are rendered implausible by Veris' unambiguous allegation that AXISS is a "pure wholesale distributor" which "does not sell direct to customers." *Id.* ¶ 32. The only actual lost

---

[9] Plaintiff does not allege Gefteas interfered with any "prospective relationship with an identifiable class of third persons." *Trau-Med*, 71 S.W.3d at 701 (element 1); *cf.* Doc. No. 1, ¶¶ 310–16.

[10] AXISS's business relationship with Soulution has been reduced to a contract. Doc. No. 1-1.

customers identified in the Complaint are "two interested Soulution buyers" who we re allegedly "convinc[ed]" by non-party Jay Caceres "not to buy" Soulution products on May 10, 2026. *Id.*, ¶¶ 235–36. Gefteas cannot be held liable for someone else's actions.

For the foregoing reasons, Veris fails to plausibly state a claim of tortious interference with business relationships.

***D. Veris Fails to Plausibly Allege a Conspiracy Among Defendants (Count VII).***

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642–43 (M.D. Tenn. 2006) (citation omitted). "The elements of a cause of action for civil conspiracy under Tennessee common law are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury […]" *Id.* at 642 (citation omitted). "In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Id.* (citations omitted).

Here, Veris has not plausibly alleged unlawful purpose, unlawful means, over act, or an underlying predicate tort. *Cf. id.* Veris seeks to satisfy these elements by alleging the Defendants "unlawfully defam[ed] and slander[ed] AXISS" and/or "interfere[d] with AXISS's business relationships." Doc. No. 1, ¶ 320. Therefore, Veris has only plausibly stated a conspiracy implicating Gefteas to the extent it plausibly states claims for defamation or intentional interference.[11] The alleged "overt act[s]" likewise rise or fall with these claims.[12] Having failed to

---

[11] Veris' intentional interference claim, in turn, recursively relies upon the predicate tort of defamation to satisfy the improper means requirement.

[12] Veris alleges that the Defendants' "overt acts" included "sharing (false) confidential information, publishing defamatory statements, slandering AXISS, and otherwise intentionally

plausibly state defamation or interference claims, Veris' conspiracy claim necessarily fails. Veris' threadbare and "formulaic" assertion that Defendants engaged in a "common design" is not entitled to the presumption of truth. *Cf. Carper*, 820 F. Supp. 3d at 722. For the foregoing reasons, Veris fails to plausibly state a claim of conspiracy.

**CONCLUSION**

For the foregoing reasons, Gefteas requests that this action be dismissed in its entirety for lack of subject-matter and/or personal jurisdiction. In the alternative, if, and only if, this Court declines to dismiss on jurisdictional grounds, Mr. Gefteas requests that this action be dismissed for improper venue. Finally, if, and only, if this Court finds jurisdiction and proper venue, Gefteas requests that this action be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*<u>/s/ Eric C. Lyons</u>*

Eric C. Lyons (TN #036105)
Buchalter LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
elyons@buchalter.com
*Counsel for Defendants Michael Gefteas and Bespoke Audio Shop*

---

interfering with AXISS's business relationships." Doc. No. 1, ¶ 321. However, the Complaint lacks any allegations that Gefteas in particular had any contractual or legal obligation to keep any information confidential or that Gefteas slandered (*i.e.*, verbally defamed) AXISS.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all attorneys of record registered on the CM/ECF system. All other parties will be served by electronic mail and/or U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Eric G. Osborne
Amy R. Mohan
Sherrard Roe Voigt & Harbison, PC
1600 West End Ave., Suite 1750
Nashville, TN 37203
eosborne@srvhlaw.com
amohan@srvhlaw.com
*Counsel for Plaintiff Veris Home Technology LLC d/b/a AXISS Audio*

Peter C. Robison
LEWIS THOMASON, P.C.
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com
*Counsel for Defendants Michael Bovaird, Suncoast Audio, LLC, Luxury Hi-Fi Distribution LLC, and Clarisys Audio Global Distribution, LLC*

Florian Wiegand
Cross Street Corporate Services, LLC
50 Central Avenue, 8th Floor
Sarasota, FL 34236

*<u>/s/ Eric C. Lyons</u>*
Eric C. Lyons (TN #036105)