**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **VERIS HOME TECHNOLOGY LLC, by itself and as assignee of SPEMOT AG, AXISS AUDIO USA, LLC, and AXISS DISTRIBUTION INCORPORATED** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No.: 3:26-cv-00918** |
| **v.** | ) | |
| | ) | **District Judge Waverly D. Crenshaw, Jr.** |
| **MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, and CLARISYS AUDIO GLOBAL DISTRIBUTION, LLC,** | ) | **Magistrate Judge Luke A. Evans** |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MICHAEL BOVAIRD, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, AND CLARYSIS AUDIO GLOBAL DISTRIBUTION, LLC'S MOTION TO DISMISS**

---

Defendants Michael Bovaird ("Mr. Bovaird"), Floria Wiegand ("Mr. Wiegand"), Suncoast Audio LLC ("Suncoast"), Luxury Hi-Fi Distribution LLC ("Luxury"), and Clarisys Audio Global Distribution, LLC ("Clarisys") (collectively "Defendants" or the "Bovaird Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3),[1] hereby make a special and limited appearance to file this Memorandum of Law in support of their Motion to Dismiss all claims filed

[1] In the event that the Court were to determine that both jurisdiction and venue in the Middle District of Tennessee are proper, these Defendants reserve the right to challenge the sufficiency of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)-(h). *See Orange Theatre Corp., v. Rayherstz Amusement Corp., et al*, 139 F. 2d 871, 874 (3rd Cir. 1944); *Blank v. Bitker*, 135 F.2d 962 (7th Cir. 1943); *Kaufman v. United States*, 35 F. Supp. 900 (D.C. Dist. Col. 1940); *Brunson v. Capitol CMG, Inc.*, 2021 U.S. Dist. LEXIS 135857 (M.D. Tenn. Jul. 21, 2021).

against them by Plaintiff Veris Home Technology d/b/a AXISS ("Veris" or "Plaintiff") in its Amended Complaint (Docket Entry No. 25).

FACTS AND PROCEDURAL HISTORY

On or about April 28, 2023, Defendant Suncoast, a Florida limited liability company, entered into an Authorized Dealer Agreement (the "Agreement") with Axiss Distribution Inc d/b/a Axiss Audio. ("ADI"), a California corporation. Amended Complaint ¶ 81; Amended Complaint Exhibit 2. The Agreement contained a choice of law provision that stated "[t]his Agreement shall be governed and construed in all respects in accordance with the laws of the State of California." *Id*. at Article 17. Pursuant to Article 13 of the Agreement, ADI could assign the Agreement "to a parent, subsidiary or affiliated firm or to another entity in connection with the sale or other transfer of all or substantially all of its business assets" and, "subject to these restrictions, the provisions of this Agreement shall be binding upon and inure to the benefit of the parties, their successors and their permitted assigns." *Id*. at Article 13. Further, pursuant to Article 16 of the Agreement, all notices of any kind were required to be in writing and had to be served by personal delivery or by mail. *Id*. at Article 16. No notice of any kind was made to Suncoast that ADI had allegedly assigned the Agreement to any other party, and Plaintiff has not attached any such instrument to its Amended Complaint. Under Article 20, the Agreement between Suncoast and ADI could not be modified, supplemented or amended, except by a written instrument executed by both parties." *Id*. at Article 20. The Agreement made no mention or provisions for Suncoast to have any role in the installation of Soulution products sold to customers under the Agreement. *Id., supra*. No other written contract or agreement was ever entered into by any of the Bovaird Defendants or any entity affiliated with Plaintiff; moreover, the Amended Complaint does not allege that any such written

instrument exists. Exhibit A, Declaration of Michael Bovaird ("Bovaird Declaration") ¶¶ 15-16, 18.

Plaintiff Veris alleges in its Amended Complaint that it is the parent company of ADI and another company, Axiss Audio USA, LLC ("AAU"). Amended Complaint ¶ 1. Plaintiff alleges that Veris, ADI, and AAU "together do business as . . . AXISS Audio." *Id*. Plaintiff has not attached or otherwise identified any written Notice provided to Suncoast or any other Bovaird Defendant regarding the relationship between Veris, ADI, and AAU.

Veris alleges that it is the assignee of a Swiss company named Spemot AG ("Spemot") that owns the brand Soulution Audio ("Soulution"). *Id*. at ¶ 4. Plaintiff further alleges that it is the assignee of Soulution, and that it has filed this Amended Complaint "both in its own capacity and as assignee of Spemot[.]" *Id*. at ¶ 32.

While the Bovaird Defendants were aware of the existence of ADI that did business as AXISS Audio, they were unaware of any other entity (such as AAU or Veris) assuming or taking over the Agreement. Bovaird Declaration ¶ 22. The Bovaird Defendants understood ADI to still be operating in California, as indicated in the Agreement. The Bovaird Defendants were aware that ADI was acquired by Cliff Duffey, as described in a April 13, 2023, press release, available on the axissaudio.com.[2]

**AXISS Distribution Inc. (DBA AXISS Audio USA) Acquired by Internet Entrepreneur Cliff Duffey, Adds New VP of Sales and Dealer Relations, and Announces Plans for Future Growth**

APRIL 13, 2023

Cliff Duffey, a serial entrepreneur and former Founder and CEO of Internet security firm Cybera, has acquired the majority ownership of AXISS Distribution Inc., also known as AXISS Audio USA. For the past 30 years, Arturo Manzano has been the majority owner and served as President of AXISS Distribution Inc. As part of this acquisition plan, Manzano will continue on as a part-time advisor for at least the next two years to help ensure a smooth transition.

[2] https://axissaudio.com/axiss-distribution-inc-dba-axiss-audio-usa-acquired-by-internet-entrepreneur-cliff-duffey-adds-new-vp-of-sales-and-dealer-relations-and-announces-plans-for-future-growth/

The press release described ADI as "also known as AXISS Audio USA." Neither the press release nor any other communication received by the Bovaird Defendants mentioned Veris or AAU as separate entities or that ADI had any connection to Tennessee. *Id*; Bovaird Declaration ¶ 25.

Suncoast, Luxury, and Clarisys do not have offices, registered agents, businesses, real property, assets, inventory, or employees in Tennessee. Bovaird Declaration ¶¶ 6-12. Suncoast has never even sold any Soulution products to any customer in Tennessee. *Id*. at ¶ 20. Luxury and Clarisys did retain a marketing company in Tennessee owned by Dave Weintraub to do unrelated marketing work, but contrary to Plaintiff's allegations, he was not an employee or agent of either company, and there was no contract with Mr. Weintraub or his company. *Id*. at ¶ 33; Exhibit B, Declaration of David Weintraub ("Weintrab Declaration") ¶¶ 6-9. Mr. Wiegand, a Swiss citizen, has even less contact, having never set foot in the State of Tennessee, and has no ownership interest in Suncoast, Luxury, or Clarisys. Exhibit C, Declaration of Florian Wiegand ("Wiegand Declaration") ¶¶ 2-5.

This lawsuit arises from the unsuccessful debut of the Soulution 717 power amplifier manufactured by Soulution and distributed by ADI d/b/a AXISS Audio. Amended Complaint, *supra*; *see also* Amended Complaint Exhibit 6. In October 2024, Suncoast submitted a pre-order to ADI on behalf of a customer in Malibu, California (identified in the Amended Complaint only as "PK-LA") for "one Soulution 727 preamplifier and two Soulution 717 power amplifiers," which "were in the final stages of development." Amended Complaint at ¶¶ 157. The Soulution 727 preamplifier was shipped and installed in PK-LA's home in late 2024 without trouble, but the Soulution 717 amplifiers were not available until June 2025. *Id*. at ¶¶ 165-66. ADI and/or AAU shipped the Soulution 717 amplifiers directly to PK-LA. *Id*. at ¶¶ 167.

Plaintiff alleges that that the invoices for PK-LA's purchase of the Soulution 727 preamplifier and two Soulution 717 power amplifiers constitute two separate contracts between Suncoast and "AXISS," though Plaintiff does not specify with which entity this alleged contract was formed – ADI, AAU, or Veris. The invoices contain the name "AXISS Audio" and "AXISS Audio USA" and have email addresses and a website at the domain "axissaidio.com." *See* Amended Complaint Exhibit 5, Exhibit 6. The invoice for the Soulution 727 dated December 1, 2024, states "AXISS Audio USA" and "AXISS Audio" at the top and contains no reference to AAU. The invoice for the two Soulution 717 amplifiers dated June 12, 2025, also states "AXISS Audio USA" and "AXISS Audio" at the top, and then provides wiring instructions with an account name of "AXISS Audio USA, LLC," but it does not specify what that entity is or its relationship to ADI. Neither invoice contains any reference to Veris. Neither invoice contains any contractual terms or signatures by any party. *Id*.

Plaintiff additionally alleges that Suncoast (through Mr. Bovaird) "agreed to coordinate with PK-LA and to assist him with installing the 717 amplifiers, once they arrived." *Id*. at ¶ 169. Plaintiff alleges that this was an additional contract. However, the Amended Complaint does not assert that this alleged separate contract was in writing, and no written agreement for installation was attached to the Amended Complaint. Mr. Bovaird has refuted that any installation contract existed. Bovaird Declaration ¶¶ 19, 30. The customer PK-LA undertook to set up the Soulution 717 amplifiers himself, and in the process, a speaker binding post was broken, which was "a standard issue covered by warranty" that Plaintiff committed to have repaired. *Id*. at ¶¶ 175.

Thereafter, an undetermined issue arose with the Soulution 717 amplifiers purchased by customer PK-LA, which resulted in an unsatisfactory purchasing experience. Amended Complaint ¶¶ 177; 187. It is acknowledged that customer PK-LA's speakers were damaged,

although Plaintiff disputes that they were damaged by the Soulution products it imported for sale to PK-LA. *Id. at* ¶¶ 187, 189. During the refund process, customer PK-LA stated that "his personal privacy is essential because of personal security reasons and wished for this to remain confidential." *Id*. at ¶ 206. According to Plaintiff, "[a]ll parties agreed to keep the details of PK-LA's purchase, experience, and transaction confidential," and that AAU "agreed to consider a refund to Suncoast so as to help Suncoast and PK-LA and began negotiations." *Id*. at ¶¶ 207-08.

In its Amended Complaint, Plaintiff filed suit against two sets of defendants, the Bovaird Defendants who are the movants before the Court, and Michael Gefteas of Bespoke Audio Shop ("Mr. Gefteas"). As it relates to these Bovaird Defendants, Plaintiff has alleged a count of breach of contract against Suncoast based on the Agreement between Suncoast and ADI and alleged contracts with AAU (Count I), defamation/slander by AAU against the Bovaird Defendants (Count IV), intentional interference with business relationships against all defendants (Count V), civil conspiracy against all defendants (Count VI), and injurious falsehood by AAU and Veris as assignee of Spemot against the Bovaird Defendants (Count VIII).

LEGAL STANDARD

In support of its contention that this Court has personal jurisdiction over Suncoast and Bovaird, Plaintiffs rely on 28 United States Code § 1391(b)(2). Plaintiff Veris's principal place of business is in this district, which is undisputed. However, Plaintiffs further aver in the Amended Complaint that "a substantial part of the events or omissions giving rise to the claims in the lawsuit occurred in this district." Amended Complaint ¶ 23. Plaintiffs repeatedly make references to Tennessee in its Amended Complaint but have attached only two unsigned invoices (Exhibits 5, 6) that even mention Tennessee, which they purport to have only provided to Defendants Bovaird and Suncoast.

As argued more fully below, the factual allegations in the Amended Complaint refute that legal assertion. Plaintiff further alleges that "Defendant Suncoast contracted with AXISS, in this district." *Id*. This, too, is refuted by Plaintiff's factual allegations. Finally, Plaintiff alleges that "Defendants' torts were all directed at AXISS in this district, including their intentional interference with AXISS's business relationships." *Id*. As argued more fully below, even if such allegations are assumed to be true, they fail to establish proper venue in the Middle District of Tennessee.

Plaintiff further contends that Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-223, provides for personal jurisdiction in this Court based on Plaintiff's averments that the Defendants transacted business in this state; the Defendants caused tortious injury to Plaintiff by act or omissions in this state; and the Defendants caused tortious injury outside of this state while regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving a substantial revenue from goods used or consumed or services rendered in this state.

As to venue, 28 U.S.C. § 1391 provides, in relevant part:

> "(b) Venue in general. A civil action may be brought in—
>
> (1)a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Accordingly, if none of the defendants reside in Tennessee, and a substantial part of the events or omissions does not occur in Tennessee, then such action must be brought in a judicial district in which one of the defendants is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1)-(3).

As to personal jurisdiction, Tenn. Code Ann. § 20-2-223 provides:

> **(a)** A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:
>
> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state of the person who regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
> (5) Having an interest in, using or possessing real property in this state;
> (6) Contracting to insure any person, property or risk located within this state at the time of contracting; or
> (7) Conduct as a director or officer of a domestic corporation or the conduct of a domestic corporation while the person held office as a director or officer.
>
> **(b)** When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against that person.

There are two theories under which a federal court may normally exercise personal jurisdiction over out-of-state residents in diversity cases: general jurisdiction and specific jurisdiction. If the claim is connected to a defendant's non-forum related activities, a defendant may be subject to the "general jurisdiction" of the court so long as it has "continuous and substantial" attachments with the forum state. If the plaintiff's cause of action arises from a defendant's forum-related activities, that defendant may be subject to the state's jurisdiction under "specific jurisdiction" so long as jurisdiction is authorized by a long-arm statute and the defendant has sufficient minimum contacts with the state as defined by *International Shoe v. Washington*, 326 U.S. 310 (1945). The Due Process Clause must also allow for jurisdiction under the facts of the case. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If neither theory applies, the analysis ends, and the Court may not exercise personal jurisdiction over the defendant. *Id*. at 710. As the Amended Complaint in the case at bar does not attempt to allege sufficient contacts by these

Defendants to support general jurisdiction, it is presumed that Plaintiff is traveling under a theory of specific jurisdiction.

"Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (*quoting Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). Tennessee's long-arm statute is "coterminous with the limits on personal jurisdiction imposed by the due process clause," so the Court need only consider whether exercising jurisdiction over Defendants is consistent with federal due process requirements. *Bridgeport*, 327 F.3d at 477 (*quoting Payne v. Motorists' Mut. Ins. Cos.* 4 F. 3d 452, 454 (6th Cir. 1993)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id*. (*quoting Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The Sixth Circuit considers three criteria to determine whether specific jurisdiction exists: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id*. (*quoting Southern Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 374 (6th Cir. 1968). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Int'l Tech. Consultants,*

*Inc. v. Euroglas, S.A.*, 107 F.3d 386, 395-96 (6th Cir. 1997) (*quoting Burger King Corp.*, 471 U.S. at 475).

A determination regarding personal jurisdiction is claim-specific. *Canaday v. Anthem Cos.*, 9 F.4th 392, 400 (6th Cir. 2021). While a court accepts a plaintiff's averments as true, the burden is on the plaintiff to establish sufficient facts to sustain an exercise of personal jurisdiction to adjudicate a claim once a defendant challenges the existence of such jurisdiction. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020); *see also Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

As they relate to this Motion, in the Amended Complaint before the Court, the Plaintiff has asserted (1) breach of contract claims against Suncoast and Mr. Bovaird, (2) defamation and slander claims against the Bovaird Defendants, (3) intentional inference with business relationships claims against all Defendants, (4) civil conspiracy claims against all Defendants; and (5) injurious falsehood against the Bovaird Defendants.

**1. Breach of contract claims**

Plaintiff alleges that Suncoast (a company owned by Bovaird) entered into an Authorized Dealer Agreement with ADI, a California corporation. The Amended Complaint also alleges the existence of four additional contracts between Suncoast and ADI and/or AAU regarding two purchases, installation, and confidentiality over the resolution of the unsatisfactory product experienced by a customer identified as PK-LA. PK-LA lives in Malibu, California. Amended Complaint ¶ 165. Bovaird resides in Florida, and Suncoast is a Florida entity with its principal place of business in Sarasota, Florida. *Id*. at ¶ 22. Plaintiff alleges that it is the assignee of claims by Spemot but does not allege or provide evidence of any assignment of claims by ADI.

(a) The Authorized Dealer Agreement

The Authorized Dealer Agreement ("Agreement"), attached to the Amended Complaint as Exhibit 2, was allegedly entered into by ADI and Suncoast. ADI is identified as having principal place of business in Gardena, California, and Suncoast (the "Dealer" in the Agreement) is a Florida entity. Plaintiff Veris is not a party to that Agreement. Plaintiff AAU is not a party to that Agreement. Moreover, the Agreement attached to Plaintiff's Complaint as Exhibit 2 is only signed by Mr. Bovaird. Plaintiff alleges that Suncoast breached Articles 3.7 and 3.8 of this Agreement by engaging in activities that reflect adversely on AXISS, failing to promote AXISS brand equally with other brands, and demanding a refund despite having agreed that it was not entitled to warranty or damages. Amended Complaint ¶ 278.

Notably, Article 14 of the Agreement only identifies the parties to the agreement as "buyer" and "seller" and specifically disqualifies their relationship as employer/employee; franchiser/franchisee; master/servant; principal/agent; partnership; or joint venture. Suncoast, as Dealer, is considered an "independent contractor" at all times. Moreover, Article 17 of the Agreement specifically designates the Governing Law to be that of the State of California.

Reading the Amended Complaint in a light most favorable to Plaintiff, none of the alleged breaches to the Agreement have any connection to Tennessee. Suncoast is located in the State of Florida. ADI is based in California, as is the customer PK-LA. None of the subject business transactions occurred in the state of Tennessee. Plaintiff's Complaint identifies Veris as the parent company of both AAU and ADI (all of whom together do business as AXISS Audio) (Amended Complaint ¶¶1, 28, 29), but that contention does not automatically subject every person or entity that did business with ADI to the jurisdiction of Tennessee.

The United States Supreme Court has expressly rejected a Circuit Court's holding that the finding of an "agency" relationship between a foreign parent entity and a local subsidiary was sufficient to impute personal jurisdiction to the parent. *Daimler AG v. Bauman*, 571 U.S. 117, 134-135 (2014). While it recognized a theory of alter ego personal jurisdiction in which "a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego," it concluded that the alter ego theory provides personal jurisdiction only if the parent company "exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Leadford v. Bull Moose Tube Co.*, No. 15-cv-13565, 2016 U.S. Dist. LEXIS 100600 (E.D. Mich. Aug. 2, 2016) (quoting *Indah. v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011)). Merely doing business as a parent entity does not make a subsidiary an alter-ego of the parent company. *Id*. The Plaintiff has not alleged or even alluded to any conduct, actions, or any other type of involvement by Veris in relation to AXISS's dealings with the Bovaird Defendants.

Moreover, under Tennessee law, as applicable to both Veris and AAU, the Tennessee corporate entities, "[t]here is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors *or affiliated corporations*." *MSS, Inc., v. Maser Corp.*, No. 3:09-cv-00601, 2011 U.S. Dist. LEXIS 79261, at *11-13 (M.D. Tenn. July 18, 2011) (emphasis in the original) (*quoting Boles v. Nat'l Dev. Co.,* 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005)). "'[T]he proper party to bring a claim on behalf of a corporation is the corporation itself.'" *Id*. (*quoting House v. Estate of Edmondson,* 245 S.W.3d 372, 381 (Tenn. 2008) (*citing Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 531-32, 104 S. Ct. 831, 78 L. Ed. 2d 645 (1984)). Even when a corporation has one sole shareholder, the shareholder may not bring

suit on behalf of the corporation. *Id*. (citing *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 213 S.W.3d 855, 863 (Tenn. Ct. App. 2006)).

This principle has been explicitly extended in the Sixth Circuit to parent corporations. *Id*. For example, in *Media Gen., Inc., v. Tanner*, it was held that a parent corporation could not bring suit for diminution in the value of its capital stock because of injury that was actually incurred by its subsidiary. *Id*. (*citing Tanner*, 625 F. Supp. 237, 244 (W.D. Tenn. 1985) (*citing Warren v. Mfrs. Nat'l Bank of Detroit,* 759 F.2d 542, 544 (6th Cir. 1985)). Another district court has stated that "injury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as a real party in interest on a parent corporation." *Id*. (*quoting Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.,* 956 F. Supp. 910, 916 (D. Kan. 1997) (*citing K-B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1154 (10th Cir. 1985)).

Allegedly, Plaintiff Veris's members are citizens of Tennessee. Plaintiff asserts that it is owned by Cliff Duffy, who lives in Tennessee, but neither Mr. Duffy nor any other Veris members are named parties to this litigation or identified in the Agreement. Notwithstanding the filing of this lawsuit, none of the Bovaird Defendants would have any knowledge that Veris even existed, much less where it operated its principal place of business, thereby extinguishing any reasonable expectation that these Defendants could or should have known that Tennessee could be an applicable venue for any disputes that may arise. More importantly, the Agreement specifically designates that it shall be governed and construed in all respects in accordance with the laws of the state of California.

The U.S. District Court for the Eastern District of Tennessee was presented with a similar scenario in the recent case of *Blue Sky Marine.* In that case, the Eastern District Court analyzed a motion to dismiss premised on a lack of personal jurisdiction argument by the defendant. It noted

that on the record before the court, the defendants did not purposefully direct their actions into Tennessee, advertise in Tennessee, attempt to exploit Tennessee's market for its products, produce anything in Tennessee, ship anything to Tennessee, or maintain a substantive, ongoing relationship with the State. *Blue Sky Marine, LLC v. Axial Drive Sys., LLC*, 2026 U.S. Dist. LEXIS 103582 at *16-17 (E.D. Tenn. May 11, 2026). It reasoned, "[i]n short, 'plaintiff cannot be the only link between the defendant and the forum.'" *Id*. (*citing Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018)). In *Bulso*, the Sixth Circuit affirmed the district court's finding that there was no basis for personal jurisdiction where a nonresident defendant engaged a Tennessee plaintiff to be his attorney, each of the defendants met with the plaintiff in Tennessee at least once, defendants communicated with the Tennessee plaintiff by phone and email and later served summons and a complaint on the plaintiff in Tennessee. 730 F. App'x at 350. Likewise, in *Blue Sky Marine*, the plaintiff claimed these contacts ultimately harmed him in Tennessee, and after *Walden v. Fiore*, the Sixth Circuit found this was not enough: "[t]he defendants' contacts with Tennessee came from Bulso's law firm being located in Tennessee, not because the defendants sought to invoke the benefits and protections of Tennessee law." *Id.* (*citing Bulso* at 350).

The *Blue Sky Marine* court further reasoned, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 17-18 (*quoting Walden*, 571 U.S. at 290). The defendants' contacts in Tennessee in *Blue Sky Marine* were found to have little to do with the state and everything to do with the fact that plaintiff was based there. *Id*. Moreover, their contacts with Tennessee were too random and fortuitous to support a finding of purposeful availment, a necessary component to establish specific jurisdiction. *Id*. The district court, therefore, granted the defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *Id*.

A district court case out of Pennsylvania analyzed similar claims. In *W.G. Nichols v. CSK Auto, Inc*., the district court stated "[t]hat a defendant entered into a contract with a forum resident and directed communications related to the contract to the resident is not alone sufficient to establish personal jurisdiction over a breach of contract claim." 2001 U.S. Dist. LEXIS 19121 (*citing Vetrotex*, 75 F.3d at 152; *Farino*, 960 F.2d at 1223; *Atlantic Fin. Fed. v. Bruno*, 698 F. Supp. 568, 572-73 (E.D. Pa. 1988)). In determining personal jurisdiction over a breach of contract claim, a court considers the character and location of the contract negotiations, the terms of the contract, the type of goods being sold, and the parties' course of dealing. *Id*. (*citing Remick*, 238 F.3d at 256; *Allied Leather Corp. v. Altama Delta Corp*., 785 F. Supp. 494, 501 (M.D. Pa. 1992)).

In the *W.G. Nichols* case, the district court determined that the plaintiff had failed to establish sufficient forum contacts to warrant an exercise of personal jurisdiction over the breach of contract claim in finding that: there were no shipments of goods into the forum (even though it acknowledged that payment was to be received by a plaintiff in the forum); the agreement contained both a choice of law provision and a forum selection clause for a state other than the forum state, which "would certainly diminish, if not extinguish, any expectation of being sued in the seller's home state;" the agreement did not require any purchase by defendant; the agreement could be terminated by either party within a specific period of time; there was no franchise agreement; there was no agency relationship; there was no joint venture; there was no provision requiring an ongoing series of transactions; and there was no showing that the defendant ever sent a representative to the forum or did anything in the forum state to facilitate the performance of the contract or the resolution of any dispute arising from it. *Id*. at 3-6 (c*iting Allied Leather*, 785 F. Supp. at 501).

Absent the Authorized Dealer Agreement, there is no other written contract with AAU or Veris that could subject the Bovaird Defendants to personal jurisdiction in Tennessee. The affiliation of these entities with ADI is fortuitous and insufficient to establish the necessary criteria to hold otherwise.

(b) Alleged verbal agreements

Not only have the Plaintiffs not alleged that an actual written contract exists between any Bovaird Defendant and AAU or Veris, but they have also not alleged any act evidencing an intent by any Bovaird Defendant to directly engage in business with AAU or Veris. Suncoast contracted with "AXISS DISTRIBUTION INC. DBA AXISS Audio." (*See* Agreement at opening paragraph). At all material times, the Bovaird Defendants believed they were doing business with **AXISS Distribution Inc., *dba AXISS Audio***.

Plaintiff has attempted to tie Suncoast and Mr. Bovaird to Tennessee by asserting that they entered into four separate contracts surrounding the sale of the equipment to PK-LA, which Plaintiff asserts were entered into or governed by the law of the State of Tennessee. The first two allegedly were created by the two invoices (Exhibits 5 and 6 to the Amended Complaint) of the sale of the Soulution 727 and 717 units to customer PK-LA. However, those invoices contain no terms or signatures, and, at face value, do not constitute separate contractual agreements. Rather, they are simply orders made pursuant to the Agreement between ADI and Suncoast, governed by California law. Suncoast and Mr. Bovaird never signed any contract that subjected them to the laws or jurisdiction of Tennessee. Bovaird Declaration ¶ 2.

Plaintiff further alleges that there was some contract for Suncoast to install the equipment ordered through ADI in the Malibu, California home of PK-LA, and that the undefined installation contract was governed by Tennessee law. Once again, Plaintiff has failed to even allege facts that

could support the existence of an installation contract, including any consideration offered by ADI or any related entity that could form an effective legal contract. And any installation contract of equipment in California would likewise have been performed under California law and not the Tennessee law. Finally, once again, such additional agreements are explicitly prohibited by the plain language of the Agreement between ADI and Suncoast. Mr. Bovaird has refuted that he or Suncoast entered into any contracts to install Soulution equipment. Bovaird Declaration ¶¶ 19, 30.

The last alleged contract that Plaintiff alleges Suncoast and Mr. Bovaird entered into was "the August 1, 2025 refund agreement requiring confidentiality." Amended Complaint ¶ 380. Plaintiff's own allegations, however, do not support the existence of such a contract. Plaintiff merely alleges that PK-LA wanted the refund to be confidential, along with a summary allegation that such a confidentiality agreement existed. *Id*. at ¶¶ 206-08. This alleged agreement by parties in California about a California customer and equipment purchased through the Agreement that was governed by California law had no effect to tie Suncoast or Mr. Bovaird to Tennessee. Bovaird Declaration ¶ 31.

Even, *arguendo*, if the alleged oral "contracts" do exist, the allegations are insufficient to establish purposeful availment to the laws of Tennessee. Entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts" but the presence of certain additional factors may constitute purposeful availment. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d, 544, 551 (6th Cir. 2007). Additional factors courts may consider include the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing. *Id*. at 551 (*citing Burger King*, 471 U.S.

at 478-79. Moreover, the "quality rather than the quantity of the contacts" should be the focus in determining availment." *Calphalon*, 228 F.3d at 721.

In *Calphalon*, a Minnesota defendant's motion to dismiss for lack of personal jurisdiction in the State of Ohio was granted upon a finding that its contacts with the Ohio plaintiff, which included the defendant having entered into a contract with the Ohio plaintiff whose principal place of business was in Ohio, physical visits by the defendant to Ohio, and the defendant communicating with the plaintiff in Ohio via email, fax, and telephone, were too "fortuitous" and "attenuated." *Calphalon*, 228 F.3d at 720-21. The Sixth Circuit determined that the defendant's communications and physical visits to Ohio were "solely because Calphalon chose to be headquartered in Ohio, not because [the defendant] sought to further its business and create 'continuous and substantial' consequences there." *Id*. at 723.

The same is true in this case. Even if Mr. Bovaird and Suncoast, in acting in furtherance of the Authorized Dealer Agreement to sell the same audio products they originally contracted with ADI to sell, somehow entered into these alleged new oral "contracts" related to the PK-LA purchases, whatever contacts with Tennessee may have resulted are solely due to ADI's choice to, as it has alleged, cease its operations and become a holding company for Veris and AAU which happen to be located in Tennessee. "Jurisdiction is proper where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Air Prods*, 503 F.3d at 551 (*quoting Burger King*, 471 U.S. at 476).

A similar set of circumstances was recently considered by the Eastern District Court of Tennessee in which the claims by a Tennessee plaintiff were dismissed against Illinois-based defendants for lack of personal jurisdiction because the Illinois defendants' contacts with Tennessee were too fortuitous even though the Illinois defendant signed a contract with the

Tennessee plaintiff by his own choice and performed administrative duties, including the receipt of payments there for his convenience. *Kruglyak v. Unlimited Carrier, Inc.*, No. 2:25-CV-00171-DCLC-CRW, 2026 LX 593022 (E.D. Tenn. Sep. 14, 2026). However, the defendants had no Tennessee offices, employees, or operations and did not target Tennessee specifically. *Id*. at 9-13. The Eastern District Court reasoned, "[a]ny payments [d]efendants submitted to [p]laintiff in Tennessee do not change this analysis" as those compensation payments to a Tennessee bank or home address would have occurred at the plaintiff's direction. *Id*. at 12. "The choice to send [payments] to Tennessee was for the plaintiff's convenience, not for the purpose of permitting [the defendant] to avail itself of the privilege of conducting business in Tennessee." *Id*. at 12-13 (*quoting Moore v. Shanahan Eng'g, Inc.*, No. 3:20-CV-00021, 2020 U.S. Dist. LEXIS 154554, 2020 WL 5039443 at *5 (M.D. Tenn. Aug. 25, 2020) (noting that courts "generally agree" that payments by an out-of-state defendant to the forum state to not constitute purposeful availment) (*also citing Freudensprung v. Offshore Tech Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004)).

Thus, this Court should dismiss the breach of contract claims in the Amended Complaint due to lacking personal jurisdiction over Suncoast and Mr. Bovaird.

**2. Defamation, slander, and injurious falsehood claims**

Plaintiff claims that Mr. Wiegand, allegedly a manager of Clarisys, traveled to Colorado and made false claims about an Soulution products distributed by ADI, and that Mr. Bovaird then repeated the same false statement(s) to (1) the same dealer in Colorado and to Jay Caceres ("Mr. Caceres"), (2) the owner and operator of Jay's Audio Lab, and (3) members of Audioshark, a members-only online forum for discussion of high-end Hi-Fi products that Plaintiff contends is owned by Mr. Bovaird.[3] Amended Complaint at ¶¶ 404-421. Plaintiff further claims that Mr.

[3] The Bovaird Defendants deny making any defamatory statements about ADI or Soulution equipment.

Bovaird proceeded to make the same false statements in his demonstration room at the Florida Audio Expo. *Id*. at 415. Plaintiff also alleges that Mr. Wiegand and Dave Weintraub, "a sales representative of Luxury and Clarisys," told a dealer in Utah "he should drop Soulution products because the 717 was defective and blowing up speakers." *Id*. at ¶¶ 451-52. None of these claims occurred in Tennessee or otherwise have any connection to Tennessee.

According to the Amended Complaint, Jay's Audio Lab is owned and operated by Mr. Caceres, and conducts reviews of high-end Hi-Fi products, provides rate consultation to individual buyers for a fee, directly sells high-end Hi-Fi equipment, and brokers the sales of high-end equipment to third parties for a fee. Amended Complaint at ¶ 253. Plaintiff further contends that Mr. Caceres is one of the largest social media influencers in the high-end Hi-Fi space with thousands of social medial subscribers and does business with Mr. Bovaird and his companies by buying products from them and selling them to his clients, arranging consignment sales of their used products, and brokering new buyers to Suncoast, Luxury, and/or Clarisys. *Id*. at ¶¶ 254-255. Plaintiff claims that Mr. Bovaird made false statements to Mr. Caceres about products imported by Plaintiff or its subsidiaries, that Mr. Caceres later repeated the statements and otherwise caused Plaintiff's sales to diminish, and that Mr. Bovaird made similar false statements on Audioshark and at the Florida Audio Expo, likewise causing Plaintiff's sales to decline. *Id*. at 256-264.

Plaintiff's last attempt to tie the Bovaird Defendants to Tennessee is an allegation that an unrelated party, Dave Weintraub, was a "sales representative" of Luxury and Clarisys and that he made some allegedly defamatory statement. However, as both Mr. Bovaird and Mr. Weintraub have clarified in their respective declarations, Mr. Weintraub was never an employee or sales representative of any of the Bovaird Defendants, and he had nothing to do with the PK-LA

transaction or the efforts to resolve customer complaints. Weintraub Declaration ¶¶ 5-9; Bovaird Declaration ¶¶ 32-33.

Under the plain language of the Amended Complaint, none of the alleged false statements occurred in Tennessee or are otherwise affiliated with any conduct associated with Tennessee. As shown herein, neither Weintraub nor Wiegand are employees, representatives, agents or otherwise have ever held any position commensurate with such roles for or associated with Bovaird, Suncoast, Clarysis, or Luxury. Weintraub Declaration ¶¶ 5 – 8; Bovaird Declaration ¶¶ 32, 33; Wiegand Declaration ¶¶ 3, 6.

Sixth Circuit precedent holds that the "mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods.*, 503 F.3d at 552. In *MLS Nat'l Med. Evaluation Servs. v. Templin*, 812 F. Supp. 2d 788 (East. Dist. Mich. 2011), the motion to dismiss filed by a Kentucky defendant was granted for lack of personal jurisdiction over a Michigan plaintiff's complaint that included defamation and injurious falsehood claims associated with statements to a California publication because plaintiff did not show the defendant purposely availed himself with the forum state so that he would to expect be haled. In considering the Sixth Circuit's three-part due process test, the plaintiff failed to show purposeful availment and substantial connection by the defendant with the forum state. *Id*. (*citing LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989)) The same is true in this case.

The alleged statements involved the reliability of equipment manufactured by a Swiss company (Spemot AG) and distributed by a California company (ADI) through a Florida dealer (Suncoast) to a California customer (PK-LA). The alleged facts that Veris acquired ADI and acts as its parent company and that AAU acts as its operating company from their locations in

Tennessee do not mean that statements about ADI or the audio equipment it imported are directed to any party in Tennessee. For the same reasons as described, *supra*, this Court should dismiss the Complaint due to lacking personal jurisdiction over the Bovaird Defendants for defamation, slander, and injurious falsehood claims.

**3. Intentional inference with AXISS's business and contract relationships claims**

Plaintiff alleges that all Defendants, including the Bovaird Defendants, each either directly or via their owners, managers, or agents acting on their behalf, used the improper means of defamation slander, and misuse of confidential information for the predominant purpose of causing injury to AXISS and the products it carries for the purpose of enriching themselves. *See* Amended Complaint at ¶¶ 423-428. There remains, as analyzed and discussed *supra*, no connection whatsoever between the alleged conduct of the Bovaird Defendants in this regard and the State of Tennessee. The allegedly defamatory statements were uttered in Colorado, Florida, Utah, or on online forums operated by parties not located in Tennessee. Amended Complaint ¶¶ 405, 407, 415. Thus, the Court should dismiss the Amended Complaint for lack of personal jurisdiction over the intentional interference with Plaintiff's business and contract relationships claims.

**4. Civil Conspiracy claims**

Similar to the arguments above, to the extent that any conspiracy to defame or interfere with business relationships allegedly existed between any of the defendants or between the Bovaird Defendants and other parties, the facts in the Amended Complaint show that such alleged actions took place outside of the state of Tennessee. Plaintiff has alleged acts or statements in California, Colorado, and/or Florida, but has not alleged any acts in the state of Tennessee. As analyzed and

discussed *supra*, there is no connection between the Bovaird Defendants and the Middle District. Thus, this Court lacks personal jurisdiction over the Bovaird Defendants for the claims of conspiracy.

**5. Venue in the Middle District of Tennessee is improper**

In addition to the lack of personal jurisdiction over the Bovaird Defendants, venue in the Middle District of Tennessee is also improper. "[W]hen a defendant files a 12(b)(3) motion to dismiss for improper venue, the plaintiff must show by a preponderance of the evidence that venue is proper." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025). Proper venue can be established where any defendant resides under 28 U.S.C. § 1391(b)(1), or where a substantial part of the events or omissions giving rise to the claim occurred under 28 U.S.C. § 1391(b)(1). Plaintiff's Amended Complaint alleges no facts to support venue in the Middle District of Tennessee under either provision. The Bovaird Defendants are located in Florida, Florian Wiegand is located in Switzerland, and the Defendant Gefteas is located in Texas. The circumstances of the alleged breach of contract between a Florida company (Suncoast) and a California company (ADI) with a California-resident customer (PK-LA) do not support venue in the Middle District of Tennessee under Section 1391(b)(2). Likewise, allegedly defamatory statements made in California, Florida, Colorado, or Utah cannot establish venue in Tennessee.

In the event that no district is available under the above sections, then 28 U.S.C. § 1391(b)(3) allows for suit to be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." As argued more fully above, none of the Bovaird Defendants are subject to the personal jurisdiction of this Court. Similarly, Defendant Gefteas in Texas and Defendant Florian Wiegand in Switzerland are not subject to the jurisdiction of this Court by Plaintiff's own allegations. Amended Complaint, *supra*. Accordingly,

the Middle District of Tennessee is not the proper venue for Plaintiff's claims, and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

## CONCLUSION

Plaintiff's Amended Complaint compounded on the excesses of the original Complaint, containing 468 paragraphs and sprawling across 72 pages. In its second effort, Plaintiff had ample opportunity to allege some fact, if it existed, that would tie the Bovaird Defendants to Tennessee. Despite repeating the word Tennessee 136 times in the Amended Complaint,[4] Plaintiff has failed to do so. Accordingly, this Court lacks personal jurisdiction over the Bovaird Defendants in this matter. Similarly, venue in the Middle District of Tennessee for alleged acts or statements in California, Florida, Colorado, or Utah is improper. For these reasons and those described herein above, the Plaintiff's Amended Complaint should be dismissed for lack of jurisdiction and improper venue.

Respectfully submitted,

*/s/ Peter C. Robison*
Peter C. Robison (BPR # 27498)
LEWIS THOMASON, P.C.
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com
*Counsel for Defendants Michael Bovaird, Florian Wiegand, Suncoast Audio, LLC, Luxury Hi-Fi Distribution LLC, and Clarisys Audio Global Distribution, LLC*

[4] In contrast to only 12 times in the original Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2026, a copy of the foregoing has been delivered to all parties at interest via Court's ECF system and/or U.S. Mail:

Eric G. Osborne
Amy R. Mohan
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Ave., Suite 1750
Nashville, TN 37203
eosborne@srvhlaw.com
amohan@srvhlaw.com
*Counsel for Plaintiff Veris Home Technology LLC*

Eric C. Lyons
Buchalter
1 Music Circle South, Suite 300
Nashville, TN 37203
elyons@buckalter.com
*Counsel for Defendant Michael Gefteas*

*/s/ Peter C. Robison*
Peter C. Robison