IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VERIS HOME TECHNOLOGY LLC by itself and as assignee of SPEMOT AG, AXISS AUDIO USA LLC, and AXISS DISTRIBUTION INCORPORATED (together d/b/a AXISS AUDIO),<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, CLARISYS AUDIO and GLOBAL DISTRIBUTION, LLC,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:26-cv-00918<br><br>District Judge Waverly D. Crenshaw, Jr.<br><br>Magistrate Judge Luke A. Evans<br><br>JURY DEMAND |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL GEFTEAS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, FOR IMPROPER VENUE, OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

---

Defendant Michael Gefteas ("Gefteas"), by and through undersigned counsel, appearing specially to preserve all defenses under Federal Rule of Civil Procedure 12(b), submits this Memorandum of Law in support of his Motion to Dismiss the Amended Complaint for lack of personal jurisdiction. Doc. No. 32. In the alternative, if, and only if, the Court concludes that it has jurisdiction, Gefteas moves to dismiss for improper venue. In the alternative, if, and only if, this Court determines that Gefteas is not entitled to dismissal or transfer on jurisdictional or venue grounds, and without any waiver of Gefteas' denial that this judicial district has jurisdiction, Gefteas asks that this Court dismiss for failure to state a claim upon which relief can be granted. Gefteas moves for dismissal under Rule 12(b)(6) "only *conditionally*" insofar as Gefteas *only* seeks Rule 12(b)(6) dismissal if, and only if, this Court finds jurisdiction and proper venue and denies Gefteas' Motions under Rules 12(b)(2) and (3). *Cf. Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *8 n.9 (M.D. Tenn. Jan. 10, 2022) (emphasis in original).

**BRIEF FACTUAL & PROCEDURAL HISTORY**

Gefteas is a hobbyist audiophile who makes social media content about audio equipment, including reviews. *Cf.* Doc. No. 25, ¶ 38. In or around August 2025, Gefteas made social media posts on Facebook weighing in on a dispute between a then-unidentified distributor, dealer, and customer whose recently purchased imported luxury amplifier failed and allegedly damaged his high-end speakers. Doc. Nos. 25-10, 25-11. In February 2026, the customer—based in Malibu, California and going by the screenname "pk_LA"—posted about his experience with a Soulution-brand amplifier on an online forum. Doc. No. 25-16. A few days later, Plaintiffs made a post about the amplifier in the same forum. Doc. No. 25-15. After these public discussions, Gefteas began discussing the incident using the parties' names in May 2026. *Cf.* Doc. Nos. 25-17–25-19.

On July 2, 2026, plaintiff Veris Home Technology LLC d/b/a AXISS Audio ("Veris")—the holding company of AXISS Audio USA, LLC ("AAU") and AXISS Distribution Inc. ("ADI")—sued Gefteas, alleging, among other things, that Gefteas' posts were false and defamatory. Doc. No. 1. Gefteas moved to dismiss under Federal Rule of Civil Procedure 12(b)(1)–(b)(3) and 12(b)(6). Doc. Nos. 20, 21. Veris amended and added AAU and ADI as additional parties. Doc. No. 25. Gefteas now renews his motion to dismiss.

## ARGUMENT

## I. The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction.

### *A. Standard of Law.*

Courts "must have personal jurisdiction over each party." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 435 (6th Cir. 2022). Rule 12(b)(2) governs dismissal of an action for lack of personal jurisdiction. "Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). "The plaintiff must first make a prima facie case" of personal jurisdiction. *Id.* (citations omitted). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing [ . . . ] jurisdiction.' " *Id.* (quoting *Theunissen*, 935 F.2d at 1458). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives": "decide the motion upon the affidavits alone"; "permit discovery in aid of deciding the motion"; or "conduct an evidentiary hearing[.]" *Theunissen*, 935 F.2d at 1458.

### *B. Gefteas is not subject to general personal jurisdiction in Tennessee.*

"Personal jurisdiction falls into two categories: general and specific." *Malone*, 965 F.3d at 501. "For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Gefteas is domiciled in Texas. Doc. No. 25, ¶¶ 22, 38. Therefore, the Middle District of Tennessee does not have *general* personal jurisdiction over Gefteas.

### *C. Nor is Gefteas subject to specific personal jurisdiction in Tennessee.*

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (citations omitted). Where, as here, the purported subject matter jurisdiction is based on diversity of citizenship (Doc. No. 25, ¶ 22), the law of the forum state governs personal jurisdiction over nonresident defendants. *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993).

Tennessee's long-arm statute, T.C.A. § 20-2-214(a)(6), "has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," such that "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Id.* "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citation omitted). Nonresident defendants "must have 'certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (citations omitted). The Sixth Circuit applies "a three-part test to determine whether the exercise of personal jurisdiction […] comports with constitutional due process": (1) "purposeful avail[ment]" by the defendant of the "privilege of acting" or "causing a consequence in the forum state"; (2) the claim having "arise[n]" from the "defendant's activities there"; and (3) a "substantial

enough connection" between the defendant's "acts" or "consequences" in the forum state to "make the exercise of jurisdiction over the defendant reasonable." *Id.* at 549–50 (citations omitted).

### 1. Gefteas' de minimis contacts with Tennessee are random, fortuitous, and attenuated and insufficient to show purposeful availment.

Gefteas is an individual who resides in and owns real property in Texas. Doc. No. 25, ¶¶ 22, 38; *see also* Doc. No. 21-1 at ¶ 2.[1] Gefteas does not reside in Tennessee or own real property in Tennessee. Doc. No. 21-1 at ¶¶ 3–4. He never has. *Id.* In fact, Gefteas does not have any specific recollection of ever visiting Tennessee. Doc. No. 33-1 at ¶ 4. Plaintiffs allege Gefteas contracted with Tennessee-based businesses. However, "the mere fact that a defendant has a contract with a resident of the forum state is insufficient in itself to demonstrate purposeful availment." *Oaks v. Largo Bioscience, Inc.*, No. 3:21-CV-00541, 2022 WL 765506, at *7 (M.D. Tenn. Mar. 11, 2022) (citation omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("an individual's contract with an out-of-state party *alone*" "clearly" cannot "automatically establish sufficient minimum contacts in the other party's home forum"). Plaintiffs contend that AAU's alleged contracts with Gefteas were "performed in large part" or "primarily" in Tennessee. Doc. No. 25, ¶¶ 109, 112. However, AXISS shipped products *to Texas* for Gefteas to use and/or test the products *in Texas* and then publish online reviews about the products to a nationwide and international audience. All of Gefteas' performance under the alleged contracts took place outside of Tennessee. Gefteas never performed services for the Plaintiffs in Tennessee. Doc. No. 33-1 at ¶ 2. Plaintiffs identify two invoices for shipments to Gefteas which listed AAU's Tennessee address as the sender, one of which required Gefteas to return the products to Tennessee. Doc. No. 25, ¶¶ 112, 135–36. However, Gefteas *also* received invoices from ADI's Gardena, California address which required

[1] Gefteas incorporates herein his September 11, 2026 Declaration in support of his original Motion to Dismiss (Doc. No. 21-1) and submits a Supplemental Declaration dated October 23, 2026. *See* Doc. No. 33-1.

return or payment. Doc. No. 33-1 at ¶ 5; Doc. No. 21-1 at ¶ 8. Gefteas transacted with a business which just happened to move its base of operations from California to Tennessee after a change of ownership in 2023. *Cf.* Doc. No. 25, ¶¶ 25, 44. No factual averments in the Complaint show that Gefteas derived revenue from, solicited business in, rendered services in, or otherwise reached out to Tennessee markets. *Cf. id.* In essence, the Amended Complaint argues that Gefteas should be subject to personal jurisdiction in Tennessee because he purchased items from Tennessee businesses, which necessarily entailed communicating with Tennessee-based employees (Doc. No. 25, ¶¶ 122–23, 141), paying money to a Tennessee business (*id.*, ¶ 116), and receiving shipments from Tennessee to Texas. *Id.*, ¶ 136. If that were sufficient, any customer who bought any product could be haled into court in the home state of the seller. That is not the law. *See Kerry Steel Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 151 (6th Cir.1997) (out-of-state defendant-buyer did not purposefully avail itself of the benefits and protections of the forum state's laws where "no facts connect[ed] either the subject matter of the contract or its performance" to the forum state). Gefteas "had contact with the state [of Tennessee] only because the plaintiff[s] chose to reside there," which is insufficient to establish purposeful availment. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). Gefteas' purchases from Tennessee to Texas do not subject him to Tennessee jurisdiction when nothing else in the alleged transactions concerned Tennessee.

**2. Gefteas' online statements do not subject him to Tennessee jurisdiction.**

Plaintiffs allege that Gefteas "directed" his online "comments at AXISS customers **across the country**, including in Tennessee[.]" Doc. No. 25, ¶ 279 (emphasis added). However, Gefteas did not make any of the social media posts at issue in Tennessee and did not intentionally target a Tennessee audience. Doc. No. 21-1 at ¶¶ 5–7; Doc. No. 33-1 at ¶ 3. The happenstance inclusion of Tennessee in Gefteas' internet audience is "random" and "fortuitous." *Walden*, 571 U.S. at 286; *see also Oaks v. Largo Bioscience, Inc.*, No. 3:21-CV-00541, 2022 WL 765506, at *7 (M.D. Tenn.

Mar. 11, 2022) (no personal jurisdiction where defendant's website was "accessible from, but d[id] not target, Tennessee"). The only specific link between Gefteas and Tennessee is the Plaintiffs themselves. However, "the plaintiff cannot be the only link between the defendant and the forum." *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (citations omitted). "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. No matter how "significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.' " *Id.* at 285 (citations omitted). The inquiry focuses on the *defendant's* contacts with the forum state.

Plaintiffs' allegation that AXISS suffered harm in Tennessee does not extend personal jurisdiction over Gefteas. The Sixth Circuit's decision in *Reynolds v. Int'l Amateur Athletic Fed'n* is illustrative. 23 F.3d 1110 (6th Cir. 1994). In *Reynolds*, an England-based athletic federation banned an Olympic athlete who resided in Ohio and issued a press release reporting that his lab tests had shown use of a banned substance. *Id.* at 1112. The athlete sued for defamation and tortious interference with business relations in the Southern District of Ohio. *Id.* at 1112–13. The athlete alleged that Ohio had personal jurisdiction over the federation because its statements had been "circulated" in Ohio and caused him to lose work in Ohio. *Id.* at 1120. The Sixth Circuit disagreed: such "superficial" and "fortuitous" contacts were insufficient to satisfy due process because the federation was not based in Ohio and did not own property or transact or solicit business in Ohio. *Id.* at 1119. The federation's allegedly defamatory statements concerned a drug sample taken in Monaco and tested in France. *Id.* at 1120. The federation could not reasonably "foresee being required to defend in every forum where one of its athletes is present." *Id.* at 1118.

Here, all of Plaintiffs' claims against Gefteas arise from online statements he most likely made in Texas and certainly made outside of Tennessee (Doc. No. 33-1 at ¶ 3) which concerned a

customer located in California. Gefteas' mere use of the internet to express his opinions is not sufficient for him to be haled into court in any forum with an internet connection. Gefteas did not "direct[ ] electronic activity into" Tennessee "with the manifested intent of engaging in business or other interactions within" Tennessee. Doc. No. 21-1 at ¶¶ 6–7; *cf. Santoni*, 2022 WL 97049, at *7 (citation omitted); *see also Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002) (newspapers did not "intentionally direct[ ] website content to a Virginia audience simply because "the newspapers' websites could be accessed anywhere, including Virginia"). Gefteas has never purposefully availed himself of "the privilege of conducting activities in Tennessee," "invok[ed] the benefits and protections of [Tennessee] laws," *Burger King*, 471 U.S. at 475 (citations omitted), or otherwise "reach[ed]" into Tennessee to "deliberately exploi[t]" Tennessee markets. *Walden*, 571 U.S. at 285 (citation omitted). Gefteas is a Texan with no ostensible connection to Tennessee who would be financially burdened by being forced to travel to this forum for litigation.

**3. Exercising long arm jurisdiction over Gefteas is not reasonable.**

The facts developed herein do not give rise to personal jurisdiction under Tennessee's long arm statutes. While AXISS contracted to ship items to Texas, Gefteas did not "transact[ ] any business" in Tennessee or "[c]ontract[ ] to supply services or things" in Tennessee. *Cf.* T.C.A. § 20-2-223(a)(1)–(2). Gefteas' alleged tortious acts or omissions occurred in Texas and outside of Tennessee. *Cf.* § 20-2-223(a)(3). Gefteas does not "do[ ] or solicit[ ] business" in Tennessee, "engage[ ] in any other persistent course of conduct" in Tennessee, or "derive[ ] substantial revenue from" Tennessee. *Cf.* § 20-2-223(a)(4); Doc. No. 33-1 at ¶ 6. Gefteas has no real property interest or other "enduring relationship" with Tennessee. *Cf.* §§ 20-2-222, 20-2-223(a)(5). No insured Tennessee property is at issue. § 20-2-223(a)(6). Lastly, Gefteas is not a director or officer of a corporation conducting business in Tennessee. § 20-2-223(a)(7); Doc. No. 33-1 at ¶ 7. Gefteas simply has never purposefully availed himself of Tennessee's protection or laws. Doc. No. 33-1 at

¶ 2. Any connection between Gefteas and Tennessee is precisely the kind of " 'random, fortuitous, or attenuated' contacts" which do not suffice. *Walden*, 571 U.S. at 286. Accordingly, this Court should dismiss the Amended Complaint without prejudice for lack of personal jurisdiction.

## **II. In the Alternative, the Court Should Dismiss the Complaint for Improper Venue.**

If, and only if, the Court finds personal jurisdiction, Gefteas asks that the Court dismiss without prejudice for "improper venue" under Rule 12(b)(3). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "[I]f it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Id.* Plaintiffs bear the burden of proving proper venue. *Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (citations omitted). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.* at 537 (citations omitted).

Here, the Middle District of Tennessee does not satisfy any of the three criteria. First, Gefteas resides in Texas, and no defendants reside in Tennessee. *Cf.* §1391(b)(1). Second, no "substantial part of the events or omissions giving rise to the claim[s]" against Gefteas "occurred" in this judicial district. *Cf.* §1391(b)(2). Plaintiffs do not allege that Gefteas made any posts in Tennessee, and Gefteas has confirmed he did not. Doc. No. 21-1 at ¶ 5; Doc. No. 33-1 at ¶ 3.

Plaintiffs allege that venue is proper in the Middle District under § 1391(b)(3) because "no other judicial district is likely able to assert personal jurisdiction over every defendant." Doc. No. 25, ¶ 24. However, § 1391(b)(3) "can only establish proper venue when neither (b)(1) nor (b)(2) can." *Kelley v. Johnson*, No. 1:26-CV-77, 2026 WL 2936257, at *2 (E.D. Tenn. Sept. 30, 2026). Plaintiffs cannot rely upon § 1391(b)(3) because venue against the Defendants would be proper where those respective Defendants reside or where the alleged torts occurred. *Cf.* §1391(b)(1)–(2).

"In cases with multiple defendants, venue must be proper with respect to *all* defendants." *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). Plaintiffs do not have a guaranteed right to sue all the Defendants—including residents of two different states and a foreign country—in a single omnibus lawsuit. Therefore, the Court should dismiss for improper venue.

The "interest of justice" does not support transfer in lieu of dismissal. *Cf.* 28 U.S.C. § 1406(a). Dismissal is "warranted" instead of transfer where the dispute "span[s] multiple districts in multiple states, and there are likely multiple jurisdictions where venue is proper." *Bailey v. Lesco Design & Mfg. Co., Inc.*, No. 3:25-CV-00761, 2026 WL 542695, at *2 (M.D. Tenn. Feb. 26, 2026). Under such circumstances, this Court has "decline[d] to make that decision" for the plaintiff and opted for dismissal. *Id.* Gefteas asks the Court to do the same here.

## **III. In the Alternative, the Court Should Dismiss the Complaint for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6).**

If, and only if, the Court denies Gefteas' requests for dismissal on the basis of personal jurisdiction and venue, Gefteas requests dismissal for failure to state a claim under Rule 12(b)(6).

### ***A. Standard of Law.***

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the court must accept the Complaint's well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor, that does not extend to "legal conclusions." *Id.* Likewise, "bare assertions," threadbare "formulaic recitation[s] of the elements," and "conclusory" or "bald" allegations "are not entitled to the assumption of truth" and do not "count toward the [p]laintiff's goal of reaching plausibility of relief." *Carper v. Nissan N. Am.,*

*Inc.*, 820 F. Supp. 3d 716, 722 (M.D. Tenn. 2025) (quoting *Iqbal*, 556 U.S. at 680). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[F]actual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief." *Carper*, 820 F. Supp. 3d at 721 (citing *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "When faced with a Rule 12(b)(6) motion, the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or incorporated by reference into the complaint." *Hill v. Ardent Health Servs.*, 806 F. Supp. 3d 711, 715 (M.D. Tenn. 2025) (citation omitted).

### ***B. AAU Fails to Plausibly State a Breach of Contract Claim (Count II).***

Plaintiff AAU does not allege a plausible claim of breach of contract against Gefteas. The Amended Complaint alleges that "AAU entered into a valid contract with Gefteas" under which Gefteas would "continue to review AXISS products and not disparage AXISS or its products." Doc. No. 25, ¶¶ 388–89. AAU alleges that Gefteas "breached the contract by failing to review AXISS products and repeatedly disparaging AXISS and its products." *Id.*, ¶ 390.

For purposes of this Motion, Gefteas assumes Tennessee law applies. *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 824 (M.D. Tenn. 2021) ("[A] federal court sitting in diversity applies the substantive law of the state in which it sits."). "Under Tennessee law, the elements of a breach of contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach of the contract; and (3) damages caused by the breach of contract."

*Dell'Aquila v. Natl Rifle Ass'n of Am.*, No. 3:19-CV-00679, 2025 WL 920275, at *3 (M.D. Tenn. Mar. 26, 2025) (citation omitted). "In Tennessee and generally, two essential elements in the formation of a valid contract are (1) consideration and (2) mutual assent." *Id.* (citation omitted). Contracts "must result from a meeting of the minds" with "mutual assent to the terms," "be based upon a sufficient consideration," be "free from fraud or undue influence," not be "against public policy," and be "sufficiently definite to be enforced.' " *Id.* (citation omitted).

Here, AAU's breach of contract claim lacks facial plausibility. The consideration supporting the contract is unclear because AAU alleges that the contract arose from an employee "personally" making "two cash payments" to Gefteas to "not disparage AXISS," as opposed to AXISS paying the funds. Doc. No. 25, ¶ 141. AAU does not provide any copy of the alleged contract, and the invoice exhibits contain no non-disparagement clause. *Cf.* Doc. No. 25-3, 25-4. Nor does AAU allege what mutually agreed-upon language Gefteas agreed to and violated. AAU does not allege sufficient facts regarding the terms and conditions of this purported non-disparagement contract to plausibly show mutual assent, *i.e.*, that the contract terms were "sufficiently definite to be enforced" or that Gefteas and AAU ever had a "meeting of the minds." *Dell'Aquila*, 2025 WL 920275, at *3. AAU does not allege the date on which the contract was entered or whether the contract was written or verbal. If the purported contract was an indefinite verbal promise to never disparage AXISS, the contract violated Tennessee's statute of frauds, which requires that any "contract which is not to be performed within the space of one (1) year from the making [. . . ] be in writing." T.C.A. § 29-2-101(a)(5). If the purported contract was verbal but limited to less than one year, Plaintiffs do not plead sufficient facts to show that the contract was in effect as of Gefteas' first posts on August 1, 2025 because no date of agreement is alleged. In the absence of such key information regarding consideration, mutual assent, terms, the date of

execution, and even whether the contract was in writing, AAU has not plausibly alleged the existence or breach of an enforceable contract. *Dell'Aquila*, 2025 WL 920275, at *3.

***C. AAU Fails to Plausibly State a Defamation Claim Against Gefteas (Count III).***

To plead a prima facie case of defamation, AAU must plausibly allege that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citations omitted). "Courts must determine as a question of law whether statements are capable of having a defamatory meaning." *Hudik*, 512 F. Supp. 3d at 825 (citations omitted). "In determining whether the published words are reasonably capable of such a meaning, the courts must look to the words themselves and are not bound by the plaintiff's interpretation[.]" *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983), *abrogated on other grounds as recognized by Zius v. Shelton*, No. E1999-01157-COA-R3-CV, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000)). "If the words do not reasonably have the meaning the plaintiff ascribes to them, the court must disregard the latter interpretation." *Id.* Furthermore, "it is not enough for the statement in question to be false; the plaintiff must show that the defendant made a false statement that defamed him." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012). Therefore, to be defamatory, a communication "must constitute a serious threat to the plaintiff's reputation." *Id.* (citation omitted). Defamation "does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing." *Id.* "The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule" and "carry […] an element 'of disgrace.' " *Id.* (citation omitted).

**1. AAU's defamation claims arising from statements made before October 1, 2026 are barred by the statute of limitations.**

Veris brought this lawsuit on July 2, 2026. Doc. No. 1. Veris amended to add AAU as a plaintiff on October 1, 2026. Doc. No. 25. AAU is Veris' subsidiary and a distinct legal entity. *Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406 (D.D.C. 2014). Therefore, AAU cannot rely upon Veris's filing of the original Complaint for the relation-back of AAU's claims against Gefteas. *See, e.g.*, *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010). That is, AAU does not enter this lawsuit to correct a misnomer, to change Veris' capacity, or to substitute AAU for Veris as the "real party in interest." *Cf. id.*; *see* Fed. R. Civ. P. 17(a)(1)–(3). Rather, AAU is a new and distinct party from Veris, and Veris remains a plaintiff hereto. AAU's cause of action is for libel—written defamation—which has a one-year statute of limitations. T.C.A. § 28-3-104(a)(1)(A). Therefore, AAU's claims against Gefteas should be dismissed with prejudice to the extent they rely upon statements made before October 1, 2025.

**2. Gefteas' statement that AXISS did not fully refund pk_LA is true.**

Gefteas did not defame AAU by stating that AXISS did not provide a full refund to pk_LA because Gefteas' statement was "true, or essentially true" and therefore "not actionable." *Cf. Stones River*, 651 S.W.2d at 719. AAU alleges that Gefteas stated that AXISS "did not provide a full refund" of "100% of the purchase price" to pk_LA. Doc. No. 25, ¶¶ 330, 395; Doc. No. 25-20. The Amended Complaint confirms that AXISS not only did not provide a "full" or "100%" refund to pk_LA, but AXISS in fact provided *no refund* to pk_LA whatsoever; rather, AXISS provided a refund *to Suncoast* "minus a standard industry restocking fee." Doc. No. 25, ¶¶ 214, 330, 395. Suncoast, in turn, deducted the same "AXISS restocking fee" from its refund to pk_LA. *Id.*, ¶ 216. The pleadings make clear that this restocking fee was the subject of the parties' dispute because this restocking fee allegedly "enraged" Suncoast's owner. *Id.*, ¶ 215.Therefore, because

AXISS did not issue *any* refund to pk_LA, and because AXISS's refund to Suncoast was only partial—*i.e.*, reduced by the restocking fee—Gefteas' statement that "AXISS did not provide a full refund to PK-LA" is factually correct and cannot sustain a defamation claim.[2] *Cf. id.*, ¶ 395.

**3. Gefteas' references to an anonymous "distributor" could not plausibly defame AAU or AXISS.**

Plaintiffs concede that the vast majority of Gefteas' posts did not "explicitly name either AXISS or Soulution." Doc. No. 25, ¶ 275. Prior to May 2026, Gefteas had referred to an unnamed "distributor," "manufacturer," "[c]ustomer," and "amp company." *Id.*, ¶¶ 268, 272. Indeed, in or around August 2025, Gefteas had steadfastly refused to name names; Gefteas stated he "won't identify" the parties, that the "full story" would come from someone else, and that he would "let others […] go public[.]" Doc. No. 25-11. At that time, Gefteas only disclosed that the buyer and distributor were both in the U.S. and that the manufacturer was European but not British.[3] *Id.*, PageID # 367, 372–73. Plaintiffs' conclusory allegations that Gefteas' "experienced and specialized subscribers and viewers" could read between the lines is not plausible because Plaintiffs do not allege that AXISS is the only American distributor of non-British, European-manufactured luxury audio equipment. *Cf.* Doc. No. 25, ¶ 275. Gefteas only made the May 2026 posts naming AXISS and Soulution (Doc. Nos. 25-17–25-19) *after* pk_LA and AXISS had each made their own posts about the incident in February 2026. *See* Doc. Nos. 25-15, 25-16. Therefore, Gefteas' posts prior to May 2026, which did not name AAU, AXISS, Spemot, or Soulution, cannot be the basis for a claim for defamation. Gefteas' generic Facebook posts which left the identities

---

[2] Counterfactually, *even if* Gefteas *had* misrepresented AXISS' decision not to refund pk_LA, the claim that a company declined to refund a customer is not so extreme as to expose the company to "public hatred, contempt," "ridicule," or "disgrace." *Brown*, 393 S.W.3d at 708 (citation omitted).

[3] When one commenter speculated about the parties' identities, Gefteas thanked him for not identifying them and "keep[ing] [his] mouth shut." Doc. No. 25-11, PageID # 373.

of the subjects anonymous were not defamatory when made and should not retroactively *become* defamatory because the subjects of the posts decided to broadcast their identities to the world.

**4. Spemot cannot assign its claims for reputational harm to Veris.**

Tennessee law does not recognize or permit assignment of defamation claims. "[T]ort actions involving personal injuries and wrongs done to [ . . . ] reputation, [ . . . ] are unassignable. *Garland v. BellSouth Advert. & Pub. Co.*, No. 3:06-CV-14, 2006 WL 2850117, at *2 (E.D. Tenn. Oct. 3, 2006) (citing *Can Do, Inc. Pension & Profit Sharing Plan & Successor Plans v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 867 (Tenn. 1996)). The party that is the subject of the defamation "is the exclusive party with a justiciable interest in redressing any alleged defamation claim" and may "not legally assign the defamation claim" to another. *Id.*

Here, the Amended Complaint alleges that non-party Swiss manufacturer Spemot AG ("Spemot") assigned to Veris "all assignable claims Spemot has against the Defendants for damages and other relief related to Soulution-branded products within the United States and Canada[.]" Doc. No. 25 at ¶ 32. Only AAU brings Count III against Gefteas, but neither Veris nor AAU can bring defamation claims for harms suffered by Spemot.

**5. Gefteas' statements about third parties' products do not defame AAU.**

As Tennessee law does not permit the assignment of defamation claims, Plaintiffs cannot recover against Gefteas for statements about third-party products. Under Tennessee law, "[a] plaintiff may not support a claim for defamation based on an alleged defamatory statement made 'of and concerning' a third party." *Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964) (jury's finding of libel was "constitutionally defective" where the statements were not "of and concerning" the plaintiff); *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 486 (6th Cir. 2023) (citing,

*inter alia*, *Sullivan*, 376 U.S. at 288–91) (statements which "express[ ] a general opinion about a topic without a statement 'of and concerning' the plaintiff" are not defamatory).

The Central District of California applied this same principle to analogous facts in *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998). There, three separate entities doing business under the Isuzu name—the Japanese manufacturer and its American importer and distributor—sued a consumer advocacy group for defamation over statements concerning an Isuzu vehicle's alleged safety defects. *Id.* at 1039–41. The court recognized that, "the First Amendment requires the plaintiff to establish that the statement on which the [defamation] claim is based is 'of and concerning' the plaintiff." *Id.* at 1044 (citation omitted). "First Amendment considerations preclude such vicarious liability by anyone other than the manufacturer in a product disparagement suit." *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F. Supp. 742, 751 (S.D.N.Y. 1981) (granting summary judgment on defamation claim because "the only losses sustained by it were the lost sales of a retailer"). The *Isuzu* court dismissed the American importer's and distributor's defamation claims with prejudice because the defendant's statement that the vehicle was "dangerous because of the way it was manufactured" could not be "reasonably understood" to suggest that the distributor or importer were responsible for safety risks resulting from its design and manufacture. *Id.* "None of defendant's statements [were] about the Distributor or the Importer," even though all shared the Isuzu name. *Id.* Although *Isuzu* arose under California state law, the district court reached its decision by applying a principle recognized by Tennessee courts (*e.g.*, *Steele*, 2009 WL 4825183, at *3), the Sixth Circuit (*Geomatrix*, 82 F.4th at 486), and the Supreme Court (*Sullivan,* 376 U.S. at 288–89).

This Court should reach the same result here. AXISS imports and distributes audio equipment manufactured by Spemot, Gauder Akustik, and other third parties. Doc. No. 25, ¶¶ 1–

40, 58. AAU alleges that Gefteas defamed products manufactured by Spemot and Gauder Akustik. *Id.*, ¶¶ 145, 272, 282–83, 321, 338. Even assuming for the sake of argument that such statements were defamatory, Spemot and Gauder Akustik are not plaintiffs and cannot validly assign their defamation claims to AAU. Gefteas' comments only related to AAU to the extent he offered opinions on AXISS's business practices; none of Gefteas' statements about the amplifier incident, any resulting damage, or the quality of Spemot's or Gauder Akustik's products are statements "of and concerning" AAU. *Cf. Steele*, 2009 WL 4825183. Therefore, Gefteas' statements "of and concerning" the Spemot-manufactured amplifier—including the alleged defects, blowing up, and/or resulting injuries—fail to give AAU a plausible claim for relief against Gefteas. *Id.*

**6. AAU cannot sue for alleged injury to Veris' member, Cliffy Duffy.**

Likewise, AAU cannot prosecute any claim for defamation on behalf of Veris' member Cliff Duffy, who is presumed to be a "distinct legal entity" from Veris and its subsidiary, AAU. *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005).

**7. Plaintiffs do not plausibly allege that Gefteas' experienced and specialized audience, or even a person of ordinary intelligence, would interpret his use of the term "blow up" in the context of audio equipment as referring to a literal explosion.**

Moreover, Plaintiffs do not plausibly allege that a person of ordinary intelligence—much less Gefteas' "experienced and specialized" audiophile audience—would understand "blow up," "blows up," or "blew up" in the context of an audio equipment malfunction to mean the equipment exploded. Doc. No. 25, ¶¶ 272, 282, 395. The Amended Complaint incorporates an online forum post from February 2026 in which pk_LA himself referred to the very same equipment malfunction using the terms "blown" and "blow." Doc. No. 25-16, PageID # 393–94. Two other users chimed in and followed suit: one referring to Soulution's inability to "determine the root cause of the blown tweeters issue" (*id.*, PageID # 395), and another user sharing his own "terrible experience"

and "misfortune" of "**<u>blowing up</u>** 3 Soulution 701 amps within 6 months." *Id.*, PageID # 397 (emphasis added). This broader context supplied by Plaintiffs' own exhibits shows that Gefteas' use of "blew up" was at best in line with commonplace audiophile vernacular, and at the very worst nonactionable "rhetorical hyperbole." *Stones River*, 651 S.W.2d at 722 (citation omitted).

#### 8. Gefteas' commentary about the Airtight letter and stylized reproduction of the same did not expose Veris to public ridicule.

On February 1, 2026, Japanese manufacturer A&M Limited d/b/a "Airtight," posted an open letter stating that it had changed its North American distributor from AXISS to a competitor. Doc. No. 25-12. On February 9, Gefteas posted praise for Airtight for "rais[ing] the bar" and "expecting more from [its] distributors," and he opined that Airtight's new distributor had "more care, more knowledge, more respect for the craft and the listener." Doc. No. 25-14. This post expressed subjective beliefs which were not "provably false" and constitute constitutionally "protected, nonactionable opinion," *cf. Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (citation omitted), and which did not by any means subject Plaintiffs to "public hatred, contempt," "ridicule," or "disgrace." *Brown*, 393 S.W.3d at 708 (citation omitted).

In addition to the above commentary, Gefteas also posted an image of the AirTight letter on parchment under the words "TUBE INDUSTRY RAISING THE BAR!" Doc. No. 25-13. The stylized, heavily pixelated letter contained numerous obvious typographical errors and illegible nonsense words, by all appearances the result of image compression and/or the use of generative artificial intelligence in creating the image. Among other things, the stylized image garbled the sentence "AirTight is extremely grateful for [Axiss Audio's] efforts" as "AirTight's [*illegible*] exemely grateful [*illegible*]"; likewise, the sentence "We would like to thank to Axiss Audio for all their friendship and accomplishments provided and wish Axiss Audio a great success" became "[*illegible*] wish Axis [*illegible*] great success." *Compare* Doc. No. 25-13 *with* Doc. No. 25-12.

Veris alleges that Gefteas "doctored" AirTight's letter to "omit[ ] many positive references to AXISS." Doc. No. 25, ¶ 308. However, a "person of ordinary intelligence" would not understand Gefteas' stylized, illegible image to be a one-to-one accurate reproduction of AirTight's corporate communication, particularly "in light of the surrounding circumstances"—*e.g.*, the numerous, blatant typographical errors, the general illegibility of the letter, and the fact that the letter was parchment in front of a glowing art deco background. *Cf. Hill v. State*, No. M2022-01749-COA-R3-CV, 2025 WL 1078167, at *6–7 (Tenn. Ct. App. Apr. 10, 2025). "[C]ommon sense" suggests that Gefteas assumed familiarity with the original press release and did not expect his audience to zoom in to try to parse the pixelated text of the stylized representation of the letter. *Cf. Iqbal*, 556 U.S. at 679. Regardless, Gefteas did not "omit[ ] many positive references to AXISS": both versions expressed that AirTight was "grateful" and wished AXISS "great success." *Compare* Doc. No. 25-12 *with* Doc. No. 25-13. While the minor omissions of the words "friendship and accomplishments" in the image may "annoy[ ]" Plaintiffs, the letter did not "constitute a serious threat" to their reputation or expose them to "public hatred, contempt," "ridicule," or "disgrace" as required to state a claim for defamation, particularly given that the letter retained AirTight's gratefulness and well wishes for future success. *Cf. Brown*, 393 S.W.3d at 708 (citation omitted).

**9. Gefteas' remaining statements were non-falsifiable opinion.**

Gefteas' remaining statements about AXISS offered his "protected, nonactionable opinion" which did not communicate any "provably false factual connotation." *See, e.g.*, *Seaton*, 728 F.3d at 598, 601. The First Amendment shields "statements that cannot reasonably be interpreted as stating actual facts" from defamation liability. *Id.* at 597 (citation omitted). "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem," it must be corrected not by "judges

and juries but [by] the competition of other ideas." *Id.* at 339–40. Thus, statements which are "inherently subjective" and "cannot be proven false" are protected and "cannot be the basis of a defamation claim." *Seaton*, 728 F.3d at 600–01 (citation omitted). "Likewise, statements that cannot 'reasonably [be] interpreted as stating actual facts' […] because they are expressed in 'loose, figurative or hyperbolic language,' and/or the content and tenor of the statements 'negate the impression that the author seriously is maintaining an assertion of actual fact' about the plaintiff are not provably false and, as such, will not provide a legal basis for defamation." *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (citation omitted). Here, Gefteas made numerous statements of inherently subjective opinion—*e.g.*, calling AXISS's actions "extra-stupid," "shocking," "greedy," "stupid," "arrogant," "dumb dumb dumb," and "terrible"; opining that AXISS "stuck it" to pk_LA and had "poor" or "[un]acceptable" customer service; expressing "reservations about AXISS"; and suggesting that an "honest reputable distributor" would have apologized and provided a full refund. Doc. No. 25, ¶¶ 268, 272, 279, 285, 295, 311, 330; Doc. No. 25-10, 25-11. Gefteas stated he was "glad he did not own Soulution gear," Doc. No. 25, ¶ 311, that he considered Gauder Akustik to have the "worst speakers" which were "[a]bsolutely lifeless," and that he "kept waiting for the 'magic' to show up… and it never did." Doc. No. 25-20. Such non-literal, non-factual, non-falsifiable statements do not defame anyone because they express inherently subjective, unprovable opinions in "loose, figurative or hyperbolic language." *Hibdon*, 195 S.W.3d at 63; *see, e.g.*, *Seaton*, 728 F.3d at 597–98 (TripAdvisor's list of the "2011 Dirtiest Hotels" could not reasonably be interpreted as "seriously maintaining" the hotel was "in fact, the dirtiest hotel in America"); *Stones River*, 651 S.W.2d at 722–23 (Tenn. Ct. App. 1983) (references to "pure highway robbery" and "rip-off" were not defamatory). Accordingly, Gefteas' expressions of his personal, subjective opinions are not capable of defamatory meaning as a question of law.

### 10. AAU does not plausibly allege reputational damages.

"Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved." *Cf. Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). AAU does not plausibly allege that *it* has directly suffered "impairment of reputation and standing in the community[.]" *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 51 (Tenn. Ct. App. 2013). Instead, AAU alleges that it lost potential Soulution sales and that "a number" of its "Authorized Soulution Dealers" chose to "drop the Soulution brand." Doc. No. 25, ¶¶ 303–04. AAU does not plead facts plausibly connecting these lost Soulution sales to Gefteas' statements as opposed to Soulution being rendered effectively libel-proof by negative public sentiment resulting from statements by AXISS, pk_LA, and others. *Cf. Davis*, 83 S.W.3d at 126. Regardless, AAU's alleged harms to its bottom line ultimately derive from injury to Soulution's reputation—*not* AAU's. *See, e.g.*, *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 134 (1986) ("Courts generally are reluctant to impute a lack of integrity to a corporation merely from a criticism of its product.").

For all of the foregoing reasons, AAU fails to plausibly state a claim of defamation.

### *D. Plaintiffs Fail to Plausibly State an Intentional Interference with Business Relationships Claim Against Gefteas (Count V).*

Plaintiffs fail to plausibly allege that Gefteas intentionally interfered with their business relationships. The requisite elements of this claim under Tennessee law are as follows:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means* […] and finally, (5) damages […]

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citation omitted) (emphasis original). Plaintiffs cannot establish improper motive or improper means because Plaintiffs rely on AAU's implausible defamation claim to satisfy this element. *See, e.g.*,

*Seaton*, 728 F.3d at 602–03 (dismissal of defamation count meant that plaintiff who "relied solely on defamation to establish improper means […] failed to state a plausible claim for tortious interference"). The only "specific third parties" known to Gefteas named in Count V are Soulution and Gauder Akustik. *Cf.* Doc. No. 25, ¶ 425; *Trau-Med*, 71 S.W.3d at 701 (element 1). Plaintiffs do not allege that either Spemot/Soulution or Gauder Akustik breached or terminated their business relationship with Plaintiffs. *Trau-Med*, 71 S.W.3d at 701 (element 3). Plaintiffs allege that Gefteas has a general "aware[ness]" of its dealers (Doc. No. 25, ¶ 424), but Plaintiffs only allege that its dealers ceased carrying Soulution brand products after a drop in sales, *not* that the dealers breached or terminated a business relationship with Plaintiffs. Doc. No. 25, ¶¶ 303–04. For the foregoing reasons, Plaintiffs fail to plausibly state a claim of tortious interference with business relationships.

### *E. Plaintiffs Fail to Plausibly Allege a Claim for Injurious Falsehood (Count VII).*

Tennessee law does not specifically recognize a distinct claim for injurious falsehood or trade libel. *See, e.g.*, *Pictsweet Co. v. R.D. Offutt Farms Co.*, No. 3:19-CV-00722, 2021 WL 4034222, at *15 (M.D. Tenn. Sept. 3, 2021). This District has noted that, "[a]ssuming Tennessee courts would recognize a claim for trade libel in the first place, such a claim, 'like a claim for defamation, ... must be based on a false statement.' " *Id.* (citation omitted); *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 602 (6th Cir. 2013) (internal quotation marks omitted) ("[t]o the extent that Tennessee common law recognizes trade libel and injurious falsehood as causes of action, such claims require proof of the publication of a false statement of fact"); *Moore Const. Co. v. Story Eng'g Co.*, No. 01A01-9606-CV-00267, 1998 WL 382198, at *4 (Tenn. Ct. App. July 10, 1998) ("Tennessee courts have not specifically recognized" disparagement as distinct from defamation). A hypothetical claim of injurious falsehood would require a plausible showing of "falsity" and that the statements were not "protected opinion." *Seaton*, 728 F.3d at 602 (affirming denial of motion to amend to add claim of trade libel/injurious falsehood as futile). Therefore, Plaintiffs' Count VII

for injurious falsehood fails to state a claim for the same reason as AAU's Count III for defamation. Plaintiffs cannot rely on an assignment of Spemot's claims because such a tort would also be an unassignable injury to reputation, like defamation. *Cf. Garland*, 2006 WL 2850117, at *2.

### ***F. Plaintiffs Fail to Plausibly Allege a Tennessee Consumer Protection Act Violation Claim Against Gefteas (Count IX).***

Plaintiffs allege that Gefteas "[d]isparag[ed] the goods, services or business of" Spemot and AXISS by making "false or misleading representations of fact" in violation of the Tennessee Consumer Protection Act ("TCPA"). Doc. No. 25, ¶ 459 (citing T.C.A. § 47-18-104(b)(8)).

The Sixth Circuit has "described the TCPA's statutory-disparagement provision" at § 47-18-104(b)(8) "as a 'state law analog' to the false-advertising provision" in the federal Lanham Act. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 459 (6th Cir. 2024). On a Rule 12(b)(6) Motion, the Sixth Circuit "analyze[s] TCPA statutory-disparagement claims the same way [it] analyze[s] Lanham Act false-advertising claims." *Id.* "In a false-advertising claim, only statements of fact are actionable." *Id.* at 453. "[T]he statement must assert a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact[,]' " and must be susceptible to "'empirical verification.' " *Id.* (citation omitted). "Statements of opinion will not support a false-advertising claim." *Id.* (citation omitted). Nor will " 'rhetorical hyperbole' " or "puffery," *i.e.*, " 'unverifiable exaggeration[s] to prove a point,' " " '[b]ald assertions of superiority,' " and/or " '[p]redictions of future events[.]' " *Id.* (citations omitted). "A false-advertising claimant who seeks to recover damages by establishing that the defendant made a 'false' statement of fact must **plead** and prove that the defendant communicated a 'literally false' statement," which "conveys 'an unambiguously deceptive' meaning." *Id.* (citation omitted) (emphasis added). A "literally false statement" must be " 'bald-faced, egregious, undeniable, over the top.' " *Id.* If a plaintiff cannot show that the offending statement was "literally

false," the plaintiff must allege that the statement was "misleading" *and* "demonstrate that a ' "significant portion" of reasonable consumers were *actually* deceived by the defendant's messaging.' " *Id.* at 453–54 (citation omitted) (emphasis in original). "[O]n a motion to dismiss," courts "ask whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers," which "requires courts to consider how the statement would impact the reasonable consumer in the […] intended audience." *Id.* (citation omitted). Importantly, "a complaint may not baldly assert that a challenged statement is false or misleading" but "must explain *why* and *how* it is so." *Id.* (citation omitted).

Gefteas' statements at issue fall into two categories: statements about the Spemot products—*i.e.*, that "amps were defective, blew up, and injured people" —and statements about AXISS—*i.e.* "that AXISS 'stuck it to the customer,' engaged in unethical business practices, and did not refund" customer pk_LA. Doc. No. 25, ¶ 458. Plaintiffs cannot recover for the statements about Spemot/Soulution products. Tennessee law does not permit Spemot to assign its claims under the TCPA. *Elec. Ins. Co. v. Nationwide Mut. Ins. Co.*, 384 F. Supp. 2d 1190, 1194 (W.D. Tenn. 2005) ("[T]he Court has found [ . . . ] no authority supporting Plaintiff's contention that claims under the Tennessee Consumer Protection Act are assignable."). Therefore, Plaintiffs' TCPA claims should be dismissed to the extent that Plaintiffs rely upon assignment by Spemot. Furthermore, Plaintiffs do not plausibly allege that Gefteas' description of the Soulution amps as "defective" was literally false, because Plaintiffs acknowledged that "some but not all" of the "first 25 amplifiers shipped" contained "circuit board defects." Doc. No. 25-15, PageID # 382. Plaintiffs do not plausibly allege that Gefteas' statement that the amplifier "blew up" was literally false as opposed to rhetorical hyperbole. *See* Section III.C.7, *supra*. Gefteas' statements about physical injuries caused by the Soulution amps were hedged by qualifying language—"may be" and

"possible"—and therefore would not be reasonably interpreted as undeniable objective fact.

Nor do Gefteas' statements about Plaintiffs give rise to a TCPA claim. Gefteas' opinion that AXISS "stuck it to" pk_LA and was "unethical" are non-falsifiable. Likewise, Gefteas' statements that AXISS did not fully refund pk_LA were not false. *See* Section III.C.2, *supra*.

Lastly, Plaintiffs do not allege that Gefteas' statements about Plaintiffs "in fact misled a significant number of reasonable customers." *Cf. FedEx*, 97 F.4th at 454. Rather, Plaintiffs allege that a customer chose not to buy Soulution products because of Wiegand (Doc. No. 25, ¶¶ 232–35) and that non-party Jay Caceres "talked two customers out of buying Soulution products" when he repeated a story he heard from Bovaird and Wiegand. Doc. No. 25, ¶¶ 256–58. Plaintiffs do not allege facts tying Gefteas' statements to any specific customers, much less a "significant portion" of its customer base. *Cf. FedEx*, 97 F.4th at 454. Therefore, the Court should dismiss Plaintiffs' claim under the TCPA, find that Plaintiffs' TCPA claim is "without legal or factual merit," and award Gefteas his "damages incurred, including reasonable attorney's fees and costs," arising from defending against Plaintiffs' TCPA claim. *Cf.* T.C.A. § 47-18-109(e)(2).

### *G. Plaintiffs Fail to Plausibly Allege a Conspiracy Among Defendants (Count VI).*

"Conspiracy is not a cause of action," but rather a "legal doctrine" which imposes joint liability upon tortfeasors who "share" a "common plan or design" to perpetrate a tort. *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 642–43 (M.D. Tenn. 2006) (citation omitted). Civil conspiracy requires, *inter alia*, an "overt act" and "underlying predicate tort[.]" *Id.* at 642 (citations omitted). Plaintiffs rely on their other counts to supply these elements. Doc. No. 25, ¶ 434. Therefore, because this Court should dismiss the predicate Counts III, V, VII, and IX, this Court should likewise dismiss Count VI against Gefteas for civil conspiracy.

## CONCLUSION

Gefteas respectfully requests that this action be dismissed for the reasons set forth herein.

Respectfully submitted,

*/s/ Eric C. Lyons*
Eric C. Lyons (TN #036105)
BUCHALTER LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
elyons@buchalter.com
*Counsel for Defendant Michael Gefteas*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all attorneys of record registered on the CM/ECF system. All other parties will be served by electronic mail and/or U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Eric G. Osborne
Amy R. Mohan
SHERRARD ROE VOIGT & HARBISON, PC
1600 West End Ave., Suite 1750
Nashville, TN 37203
eosborne@srvhlaw.com
amohan@srvhlaw.com
*Counsel for Plaintiff Veris Home Technology LLC d/b/a AXISS Audio*

Peter C. Robison
LEWIS THOMASON, P.C.
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com
*Counsel for Defendants Michael Bovaird, Florian Wiegand, Suncoast Audio, LLC, Luxury Hi-Fi Distribution LLC, and Clarisys Audio Global Distribution, LLC*

*/s/ Eric C. Lyons*
Eric C. Lyons (TN #036105)