IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VERIS HOME TECHNOLOGY LLC, et al. D/B/A AXISS AUDIO<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, CLARISYS AUDIO GLOBAL DISTRIBUTION, LLC, and BESPOKE AUDIO SHOP,<br><br>Defendants. | ) | Case No. 3:26-cv-00918<br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans |

**PLAINTIFFS' RESPONSE TO BOVAIRD DEFENDANTS' MOTION TO DISMISS**

Plaintiffs respond in opposition to the Bovaird Defendants' Motion to Dismiss for lack of personal jurisdiction and venue. This Court should deny the motion because the Defendants purposefully availed themselves of Tennessee via multiple contracts they entered into in Tennessee and subsequently breached, multiple intentional torts they directed toward Tennessee that caused harm in Tennessee, and a conspiracy they engaged in, including conduct both directed at and emanating from Tennessee. Tennessee is the hub where all of the spokes of this case connect. Venue, too, is proper in this district because a substantial part of the events giving rise to this case occurred in Tennessee and a substantial part of the property injured in this case is in Tennessee.

Certain defendants have provided sworn declarations that attempt to refute personal jurisdiction, but Plaintiffs directly rebut this evidence via testimony of Plaintiff representatives and third parties. Michael Bovaird denies the existence of certain contracts, but Cliff Duffey and TJ Goldsby swear to the contrary and provide documentary evidence to rebut him. Florian Wiegand insists he is not an owner or employee of Clarisys, but just ten days before his sworn testimony to this Court, Clarisys Audio posted a YouTube video of Wiegand identifying him as a founder and owner of the company. Moreover, Wiegand has identified himself in writing as the owner and founder of Clarisys. Dave Weintraub insists that he has no position with Clarisys, a point Bovaird also swears to, yet Weintraub acted as the agent of Clarisys when he terminated a California Clarisys dealer and identified himself as the Brand Manager of Clarisys. Plaintiffs show these points and rebut the Bovaird Defendants via sworn testimony and documents.[1]

---

[1] [1] Plaintiffs submit six sworn declarations to rebut the testimony of the Bovaird Defendants, Dave Weintraub, and their co-conspirator Gefteas. These include the Declaration of T.J. Goldsby (<u>Exhibit 1</u>), the Declaration of Cliff Duffey (<u>Exhibit 2</u>), the Declaration of Steve Huntley (<u>Exhibit 3</u>), the Declaration of Ron Resnick (<u>Exhibit 4</u>), the Declaration of Lee Stromatt (<u>Exhibit 5</u>), and the Declaration of Pat Kelly (<u>Exhibit 6</u>).

This case is about lies and deceit. Plaintiffs' submissions show that what the Bovaird Defendants have sworn to is incomplete, incorrect, or misleading. This Court should deny the Motion. Alternatively, given the nature of Defendants' conspiracy and their superior knowledge of their activities relating to and directed toward Tennessee, the Court should permit Plaintiffs to seek jurisdictional discovery to better define the scope of Defendants' conduct and establish personal jurisdiction, rather than dismiss the case against them at this early stage.[2]

## I. THE PARTIES

Before stating the applicable law and explaining why this Court can exercise personal jurisdiction and has venue, Plaintiffs briefly summarize the parties and their roles to help guide the Court's understanding of this matter.

### A. Plaintiffs (who together d/b/a AXISS Audio)

- Veris Home Technology, LLC ("Veris") is a Tennessee limited liability company. Veris has been assigned the claims of Spemot AG, a Swiss company that manufactures the Soulution products at the center of this case.

- AXISS Audio USA, LLC ("AAU") is a Tennessee limited liability company owned by Veris that engages in the import into Tennessee and sale from Tennessee as the exclusive North American distributor of high-end audio products, including Soulution products. Of the three AXISS entities, AAU is the operating company that conducts business.

- AXISS Distribution, Inc. ("ADI") is a California corporation with its principal place of business in Tennessee[3] that has no employees or operations but retains certain contracts that allow companies to be authorized dealers to sell AXISS products which the authorized dealers then buy via separate sales contracts with AAU.

### B. Bovaird Defendants

- Suncoast Audio, LLC ("Suncoast") is a Florida limited liability company that sells high-end audio products, including products it bought from AAU in Tennessee and contracted

[2] *See, e.g.*, *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) ("The court's solicitude for defendants who object to its personal jurisdiction is always tempered [] by its concern that the door to a federal courtroom not be slammed in the face of a plaintiff seeking to invoke its powers where there is, in fact, no defect in personal jurisdiction.").

[3] In this sense, ADI can be analogized to HCA Healthcare and Tractor Supply Company which are both incorporated in Delaware but have their principal place of business in Tennessee.

about with AAU in Tennessee. Plaintiffs allege Suncoast breached multiple Tennessee contracts.

- Luxury HiFi Distribution LLC ("Luxury") is a Florida limited liability company owned by Bovaird that competes with AAU as a distributor of high-end audio products, including Clarisys.

- Clarisys Audio Global Distribution, LLC ("Clarisys") is a Florida limited liability company that sells Clarisys brand products. The Florida Secretary of State lists Bovaird and Wiegand as the Managers of Clarisys, and Dave Weintraub holds himself out as the Brand Manager.

- Michael Bovaird is a Florida resident who owns Suncoast, Luxury, and Clarisys. Plaintiffs allege Bovaird slandered and defamed Plaintiffs and shared false information with Gefteas about a confidential transaction as part of a conspiracy to harm Plaintiffs and benefit Suncoast, Luxury, and Clarisys.

- Florian Wiegand is a Swiss resident who co-founded and owns Clarisys, slandered Plaintiffs, and instructed Dave Weintraub as an agent of Clarisys operating out of Tennessee to spread false information about Plaintiffs.

### C. Defendant Michael Gefteas

- Michael Gefteas is a Texas resident who reviews and promotes high-end audio products under the name The Greek Audio Geek. Gefteas publicly posted false information about a confidential transaction only Bovaird could have told him about then, upon being told that what he was saying was false, persisted in repeating and elaborating upon the false statements, again and again, for months. Plaintiffs allege Gefteas is compensated by the Bovaird Defendants in the form of free or discounted high-end audio products.

## II. LEGAL STANDARDS FOR PERSONAL JURISDICTION

In diversity, the court "look[s] to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Id.* Because "Tennessee['s] long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," the Court need "address only whether exercising personal jurisdiction over [the defendants] is consistent with federal due process requirements." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (internal quotation marks and citation omitted). Maintenance of the

suit must not offend "traditional notions of fair play and substantial justice." *Watkins v. Kajima Intern. Corp.*, No. 3:08–0426, 2010 U.S. Dist. LEXIS 91432, at *5 (M.D. Tenn. Sept. 1, 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003)).[4] "Jurisdiction is allowed as long as due process itself is not violated." *Inter-City Prods. Corp. v. Willey*, 149 F.R.D. 563, 571 (M.D. Tenn. 1993) (citing *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123 (6th Cir. 1982)).

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bridgeport Music*, 327 F.3d at 477 (quoting *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)). Plaintiffs, at this juncture, do not allege that this Court has general jurisdiction over Defendants. Specific jurisdiction exists where a three-part test is satisfied.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 477-78 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "If any of the three requirements is not met, personal jurisdiction may not be invoked." *Global Force Entm't, Inc. v. Anthem Sports & Entm't Corp.*, 385 F. Supp. 3d 576, 586 (M.D. Tenn. 2019) (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012)).

---

[4] "The Supreme Court has noted, on more than one occasion, the confluence of the 'increasing nationalization of commerce' and 'modern transportation and communication,' and the resulting relaxation of the limits that the Due Process Clause imposes on courts' jurisdiction. . . . Simply stated, there is less perceived need today for the federal constitution to protect defendants from 'inconvenient litigation,' because all but the most remote forums are easily accessible for the pursuit of both business and litigation." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

When considering a personal jurisdiction motion to dismiss, a court "may [1] determine the motion on the basis of written submissions and affidavits alone; (2) . . . permit discovery in aid of the motion; or (3) . . . conduct an evidentiary hearing on the merits of the motion." *Roundtree-Chism v. Dunn*, No. 1:16-cv-387, 2017 U.S. Dist. LEXIS 80920, at *4-5 (E.D. Tenn. May 26, 2017) (quoting *Destination Designs, LLC v. Glick*, No. 3:08-CV-197, 2008 U.S. Dist. LEXIS 80101, at *5 (E.D. Tenn. Oct. 9, 2008)). When the court rules without an evidentiary hearing, "the plaintiff's burden of proof is relatively slight." *Ever-Seal, Inc. v. DuraSeal, Inc.*, No. 3:22-cv-00365, 2022 U.S. Dist. LEXIS 151025, at *15 (M.D. Tenn. Aug. 23, 2022) (citation and quotation marks omitted). "'[T]he plaintiff need only make a "prima facie" case that the court has personal jurisdiction,' . . . and 'the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.'" *Roundtree-Chism*, 2017 U.S. Dist. LEXIS 80920, at *4 (quoting *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)); *CompuServe*, 89 F.3d at 1262 (6th Cir. 1996)); *see also Ever-Seal, Inc.*, 2022 U.S. Dist. LEXIS 151025, at *15 ("uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor") (quoting *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016)).

### A. Purposeful Availment

Purposeful availment is the "*sine qua non* for *in personam* jurisdiction." *CompuServe*, 89 F.3d at 1263. In *Bridgeport Music*, the Sixth Circuit gave a thorough summary of purposeful availment:

> "'[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (internal citation and quotation omitted). "The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state

> ‘proximately result from actions by the defendant himself that create a ‘substantial connection’ with the forum State,’ and when the defendant’s conduct and connection with the forum are such that he ‘should reasonably anticipate being haled into court there.’” *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474–75, 105 S. Ct. 2174 (1985)). The “‘purposeful availment’ requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts, or of the ‘unilateral activity of another party or a third person.’” *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174 (internal citation omitted); *see also LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989). The emphasis in the purposeful availment inquiry is whether the defendant has engaged in “some overt actions connecting the defendant with the forum state.” *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998). If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant. *See Burger King*, 471 U.S. at 476, 105 S. Ct. 2174; *CompuServe*, 89 F.3d at 1265.

327 F.3d at 478-79.

By definition, the minimum contacts required for specific jurisdiction need not be “pervasive,” or “continuous and systematic,” like those required for general jurisdiction. *See, e.g.*, *Krauss-Maffei Corp. v. Donovan*, No. 07–99, 2008 U.S. Dist. LEXIS, at *7 (E.D. Ky. Jan. 9, 2008) (comparing general and specific jurisdiction). “[E]ven a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process.” *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (Merritt, J.) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

> The factors used in weighing minimum contacts are their quantity, quality and nature, the source and connection of the cause of action with those contacts, interest of the forum state and last, convenience. However, for minimum contacts to be found to exist, each and every factor is not required to be present. Instead, a weighing of these factors must lead the Court to a conclusion that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

*Hi Fi Corner, Inc. v. Inflight Cinema Intern., Inc.*, 505 F. Supp. 12, 14 (M.D. Tenn. 1980) (internal citation omitted); *see also Nick Kostecki Excavating, Inc. v. Integrated Mach., Inc.*, 1:23 CV 2370, 2024 U.S. Dist. LEXIS, at *9 (N.D. Ohio June 18, 2024) (“The ‘quality’ of the contacts, as opposed

to their number, is essential to determining whether minimum contacts exist sufficient to establish personal jurisdiction.") (quotation omitted). "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Inter-City Prods. Corp.*, 149 F.R.D. at 572.

"Purposeful availment does not require [a party's] physical presence in Tennessee, *Burger King*, 471 U.S. at 476, that it initiated the business relationship, *Southern Machine*, 401 F.2d at 382, or that the contracts were legally formed in Tennessee. *Lanier v. American Board of Endodontics*, 843 F.2d 901, 907 (6th Cir. 1988). These are only factors to be considered in determining minimum contacts." *Inter-City Prods. Corp.*, 149 F.R.D. at 572. In considering personal jurisdiction based on contract, "a court must dig deeper . . ., for business transactions ordinarily 'neither begin nor end with the contract.'" *Crouch Ry. Consulting, LLC v. LS Energy Fabrication*, LLC, 610 S.W. 3d 460, 476 (Tenn. 2020) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 318 (1943)). "Accordingly, in a contract case, the court must examine the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether a nonresident defendant purposefully established minimum contacts in the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 479). Apart from the contract itself, "a defendant's knowledge of a plaintiff's forum connections [] can be a relevant consideration." *Id.* at 484. (citing *Burger King*, 471 U.S. at 480; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, (1984)).

Specific jurisdiction is more easily found when a defendant commits an intentional tort directed at the forum state. *See, e.g.*, *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005) (noting that "a defendant's contacts with the forum may be enhanced if the defendant

expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises"); *see also Johnson v. Griffin*, 85 F.4th 429, 434 (6th Cir. 2023) ("Due process provides no refuge for lies or reckless conduct directly sent to a decisionmaker in a forum and *it does not shield someone who intentionally incites third parties against that decisionmaker*") (internal citations omitted)(emphasis added). Moreover, the fact that communications may be sent more widely than just the forum state "does not inoculate [the speaker] from personal jurisdiction in a targeted state." *Johnson*, 85 F.4th at 435.

**B. Cause of Action Must Arise from Forum State Actions**

The second prong of the specific jurisdiction test is "subject to a 'lenient standard.'" *Nick Kostecki Excavating, Inc.*, No. 1:23 CV 2370, 2024 U.S. Dist. LEXIS 107583, at *12 (N.D. Ohio June 18, 2024) (quoting *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012)). "An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149); *see also CompuServe, Inc.*, 89 F.3d at 1267 ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."); *Roundtree-Chism*, 2017 U.S. Dist. LEXIS 80920, at *6 ("specific personal jurisdiction may be found when a defendant purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities"). "Physical presence is not the touchstone of personal jurisdiction." *Neal*, 270 F.3d at 331.

**C. Exercise of Jurisdiction Would Be Reasonable**

If the Court finds "the first two elements of a prima facie case—purposeful availment and a cause of action arising from the defendant's contacts with the forum state—then an inference arises that this third factor is also present." *CompuServe, Inc.*, 89 F.3d at 1268. "A court must

consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

## III. ARGUMENT

### A. Personal Jurisdiction

#### 1. <u>This Court has personal jurisdiction over Suncoast and Bovaird for ADI and AAU's Breach of Contract claims (Count One).</u>

##### *a. Purposeful Availment*

The facts set forth in the Amended Complaint and the declarations accompanying this Response are sufficient to satisfy Plaintiffs' "relatively slight" burden to establish personal jurisdiction over Suncoast and Bovaird for the contract claims at this stage of the litigation. *Ever-Seal, Inc*, 2022 U.S. Dist. LEXIS 151025, at *15.[5] On or around April 23, 2023, over four months after AXISS's current ownership acquired ADI and as it was in the process of moving all of its operations to Tennessee, Suncoast, which is owned by Bovaird, entered into an Authorized Dealer Agreement ("Dealer Agreement") with AXISS. Am. Compl. ¶ 81-82, Ex. 2. The Dealer Agreement was signed by Bovaird, and provides, *inter alia*, that (1) the governing terms for the sale of products from AXISS to Suncoast include the company's invoices and other acknowledgements for orders (Agreement, § 4.4); and (2) each order is subject to the company's rejection, and thus is a new contract. *Id.*, § 6.1.

---

[5] The Sixth Circuit has rejected the Fiduciary Shield Doctrine, meaning that acts taken by Bovaird in his work for Suncoast may support personal jurisdiction over him individually, as well as Suncoast. *Hyc Logistics, Inc. v. Ojcommerce*, LLC, No. 2:23-cv-02050-TLP-tmp, 2024 U.S. Dist. LEXIS 187736, at *7-9 (W.D. Tenn. Aug. 5, 2024) (citing *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 731-32 (M.D. Tenn. 2011) (quoting *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000)).

To contest jurisdiction, Bovaird has sworn to this Court that Suncoast never entered into a contract with AAU in Tennessee, Dkt. 31 at 16, Bovaird Decl. ¶¶ 2, 14-16, but that is rebutted by exhibits to the Amended Complaint, the testimony of TJ Goldsby and Cliff Duffey, and the exhibits attached to their declarations. Bovaird knew that AAU was AXISS's operating entity and located in Tennessee. He repeatedly spoke with TJ Goldsby, who was in Tennessee, and repeatedly spoke with Goldsby about Tennessee. Goldsby Decl., ¶¶ 4-6; *see also* Duffey Decl., ¶3 (testifying that Duffey discussed how AXISS had moved to Tennessee and told Bovaird that he was contracting with AAU when he bought products, asked for special shipping, and sought refunds). Goldsby specifically told Bovaird that he was doing business with AAU, a Tennessee-based company, *id.* ¶ 12, and on February 22, 2024, Margaret Carson specifically informed Bovaird of this fact and instructed him to pay AAU in Tennessee. *Id.* ¶ 13, Ex. 1. Bovaird repeatedly contracted with AAU on behalf of Suncoast and made payments to AAU in Tennessee. *Id.* ¶¶ 14-18, Exs. 2-18.

The Goldsby Declaration confirms Plaintiffs' pleading that, subsequent to the Dealer Agreement, Suncoast entered into numerous transactions with AAU for purchases of specialty audio equipment from Tennessee. These agreements began with a purchase order that Suncoast would send to AAU in Tennessee. AAU would then issue invoices from Tennessee addressed to Bovaird at Suncoast containing pricing details and other terms,[6] which Bovaird would then

[6] Defendants argue the invoices "contain no terms or signatures, and, at face value, do not constitute separate contractual agreements." Dkt. 31 at 16. But as the cases below show, invoices do not need signatures or other formalities to be contractual. Moreover, the invoices contain terms that describe, *inter alia*, the product, pricing and payment terms, and shipping arrangements. Exhibit 6 to the Amended Complaint states it is "for purchase of Soulution 717 power amplifiers. AXISS acknowledges that Customer has an aggressive delivery date and AXISS commits to reserve 2x 717 units from the first delivery batch . . . . To lock in this first batch commitment, Customer will provide a deposit of $20,000 per amplifier, $40,000 total . . . . The remaining balance will then become due once the amplifiers are ready to ship to Customer or their end user client. Because this is a straight Customer sale at standard pricing, AXISS will cover the costs of drop shipping . . . ." As such, the invoices fill in agreement terms specific to each purchase.

confirm on behalf of Suncoast through payment and the acceptance of the equipment. Am. Compl ¶ 83, 160-161, Exs. 5-6; Goldsby Decl., ¶¶ 7-18, Exs. 1-18; *see also Coria v. Sport Pontoons, LLC*, No. 1:22-CV-199-KAC-CHS, 2024 U.S. Dist. LEXIS 95379, at *7 (W.D. Tenn. Mar. 15, 2024) (acceptance of payment pursuant to terms of invoice rendered invoice a binding contract); *Guardsmark (P.R.), LLC v. Miramar Real Estate Mgmt.*, No. 2:08-CV-2317, 2008 U.S. Dist. LEXIS 129987, at *13-14, *16 (W.D. Tenn. July 30, 2008) (finding language included in invoices to constitute enforceable contract); *Thomas v. Ken Smith Auto Parts*, No. E2022-00591-COA-R3-CV, 2023 Tenn. App. LEXIS 110, at *31-33 (Tenn. Ct. App. Mar. 21, 2023) (affirming trial court enforcement of invoice terms pursuant to party agreement); *Aqua-Chem, Inc. v. D&H Mach. Serv.*, No. E2015-01818-COA-R3-CV, 2016 Tenn. App. LEXIS 769, at *11-15 (Tenn. Ct. App. Oct. 17, 2016) (affirming trial court ruling that terms of purchase orders were part of parties' agreement). Even if these invoices somehow were not contractual, the terms of the Dealer Agreement alone, such as choice of law provision on which the Bovaird Defendants rely, Dkt. 31 at 2, 11, are not determinative to the personal jurisdiction analysis. A court must consider "'the parties' actual course of dealing' to determine whether a nonresident defendant purposefully established minimum contacts in the forum state." *Crouch Ry. Consulting, LLC*, 610 S.W. 3d at 476 (quoting *Burger King*, 471 U.S. at 479). Here, the parties course of dealing establishes Suncoast and Bovaird's repeated contacts with Tennessee.

AAU's invoices stated its address as 624 Grassmere Park Suite 18, Nashville, TN 37211. Am. Compl. Exs. 5-6; Goldsby Decl., ¶ 17, Exs. 2-12. Over the course of the relationship between the AXISS companies and Suncoast, Suncoast entered into at least eleven different transactions with AAU, purchasing specialized audio equipment worth over $275,000. Am. Compl. ¶ 84; Goldsby Decl., Exs. 2-12. Suncoast would pay AAU's invoices via wire transfer to an account at

First Horizon Bank in Tennessee in the name of AAU, d/b/a AXISS Distribution, with an address of 5261 Granny White Trce., Nashville, TN 37220. Am. Compl. Exs. 7-9; Goldsby Decl., Exs. 13-18. The products were shipped from AAU's facility in Tennessee to locations requested by Suncoast. Am. Compl. ¶ 84.

Accordingly, even before the PK_LA transaction that is the primary subject of Count One, Suncoast and Bovaird purposely availed themselves "of the privilege of acting in the forum state or causing a consequence in the forum state." *Bridgeport Music*, 327 F.3d at 477. Suncoast and Bovaird repeatedly entered into transactions with a Tennessee-based company, knowing that they were dealing with a company in Tennessee, knowing that its personnel were in Tennessee, and knowing that it was invoicing its transactions from Tennessee, thereby "create[ing] a 'substantial connection' with the forum State,'" such that they "'should reasonably anticipate being haled into court there.'" *CompuServe*, 89 F.3d at 1263 (quoting *Burger King*, 471 U.S. at 474–75). This is far more than the "single act" needed to convey personal jurisdiction, *Neal*, 270 F.3d at 331, and could be considered "pervasive," or "continuous and systemic," like those required for general jurisdiction, even though they need not be to establish specific jurisdiction. *See, e.g.*, *Krauss-Maffei Corp.*, 2008 U.S. Dist. LEXIS 2024, at *7. Moreover, these are transactions involving specialized equipment, not standardized parts or other products that Suncoast and Bovaird could have gotten anywhere. *See, e.g.*, *Crouch Ry. Consulting, LLC*, 610 S.W. 3d at 481 (noting that the contract at issue involved "specialized, custom services that entailed significant development activities in Tennessee"). *Cf. W.G. Nichols v. CSK Auto, Inc.*, No. 01-3789, 2001 U.S. Dist. LEXIS 19121, at *5 (E.D. Pa. Nov. 21, 2001) (no personal jurisdiction where the "goods being sold were preprinted books and related business materials [] not sophisticated highly priced equipment").

The PK_LA transaction that is the primary subject of Count One continued this course of contacts with Tennessee. In October 2024, Suncoast submitted a purchase order and made deposits to AAU for one Soulution 727 preamplifier and two Soulution 717 power amplifiers. Am. Compl. ¶ 157. Suncoast purchased the products, per the parties' usual course of dealing, via purchase orders send to Tennessee that AAU then accepted in Tennessee by invoices that were billed to Bovaird at Suncoast. *Id.* ¶ 160, Ex. 5, 6. Suncoast paid the invoices to AAU at First Horizon (formerly First Tennessee) bank in Tennessee, and the 727 preamplifier shipped from Tennessee. *Id.* ¶ 162, 165, Ex. 7-9.

Bovaird telephoned and sent text messages to Goldsby in Tennessee and assured Goldsby that Suncoast would assist the Malibu customer with installing the Soulution 717 power amplifiers when they arrived. Am Compl. ¶ 169. In reliance on Bovaird's promise, AAU agreed to ship the amplifiers directly to the customer. Am. Compl. ¶ 170. Though Bovaird now contests this contract to avoid jurisdiction, Goldsby specifically refutes Bovaird's denial. Goldsby Decl., ¶¶ 20-28.

Bovaird did not keep his promise and Suncoast did not assist PK_LA, the customer, with the installation. Am. Compl. ¶ 171. Such installation was not only promised by Bovaird, but is a common service in the audio industry for any retail sale of a high-end product costing above $100,000. Am. Compl. ¶ 172; Goldsby Decl., ¶¶ 21, 25. Instead, the customer tried to install the equipment, which resulted in breakage and other problems with the products. Am. Compl. ¶¶ 175, 177-178. Bovaird then demanded that AAU take back the products and provide a refund to Suncoast. Am. Compl. ¶ 185. The applicable factory warranty and agreements did not entitle Suncoast or the customer to a refund. Am. Compl., ¶¶ 97-99, 197-200, Ex. 2.

Nevertheless, AAU eventually agreed to wire a refund to Suncoast. Am. Compl., ¶214, 216-18. Bovaird personally agreed to keep the refund contract between Suncoast and AAU

confidential. Am. Compl. ¶ 217. To contest jurisdiction, Bovaird now denies that he promised to maintain confidentiality in exchange for the refund, Bovaird Decl., ¶ 31, but that not only runs directly contrary to Plaintiff's pleadings but is also rebutted by Cliff Duffey. Am. Compl., ¶¶ 208, 216-20; *see* Duffey Decl., ¶¶ 8, 11-14, 16-17. Moreover, there is no question that AAU paid Suncoast the refund and that AAU did not owe the refund, so the payments confirm the existence of the contract and that AAU performed in full. *See* Am. Compl., ¶¶97-99, 197-201; 220; Duffey Decl., ¶ 17, Ex. 2. These actions by Bovaird and Suncoast, directed toward Tennessee and Plaintiffs, with whom they had a longstanding business relationship, establish the purposeful availment required for specific jurisdiction.

The cases cited by the Bovaird Defendants are distinguishable. For example, in *Daimler AG v. Bauman* the Supreme Court declined to attribute the conduct of a domestic subsidiary to its foreign entity. 571 U.S. 117, 134 (2014). Here, by contrast, the Bovaird Defendants' contacts with Tennessee are not dependent on the location of the parent company, Veris. As reflected through the invoices for their purchases and the other facts set forth in the attached declarations, Bovaird and Suncoast were strongly connected to Tennessee through their dealings with the other AXISS entities, regardless of the fact that the Dealer Agreement describes ADI as a California company and contains a California choice-of-law provision. *Cf. Calphalon Corp.*, 228 F.3d at 722-23 (rejecting contractual choice-of-law provision as establishing jurisdiction in favor of examining the "the actual course of dealings between the parties").[7]

*Blue Sky Marine, LLC v. Axial Drive Sys., LLC*, 2026 U.S. Dist. LEXIS 103582 at *16-17 (E.D. Tenn. May 11, 2026), and *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018), are also

[7] These facts also render *Leadford v. Bull Moose Tube Co.*, No. 15-cv-13565, 2016 U.S. Dist. LEXIS 100600, at *5 (E.D. Mich. Aug. 2, 2016), irrelevant because Plaintiffs need not rely on the "alter ego personal jurisdiction" theory to establish minimum contacts and purposeful availment.

distinguishable. In *Blue Sky*, the court addressed a tortious interference claim, not a breach of contract claim, and the only contact the defendants had with Tennessee was "visiting Plaintiff a few times" here before allegedly inducing the breach." 2026 U.S. Dist. LEXIS 103582 at *16. That is far from the regular contacts Bovaird and Suncoast cultivated with a company based in Tennessee to secure specialty Hi-Fi equipment only available from Tennessee. In *Bulso*, a Tennessee lawyer who had represented out-of-state clients in out-of-state cases sought personal jurisdiction over those clients in Tennessee. 730 F. App'x at 350. The court rejected his argument because, *inter alia*, the contacts he had with those clients "relate[d] to litigation in other states" and *Bulso* just happened to be in Tennessee at the time. *Id.*. Again, that is not the situation here.

Certain cases cited by the Bovaird Defendants actually highlight why there *is* personal jurisdiction here. For example, in *W.G. Nichols*, the defendant entered a contract with the forum plaintiff, but the contract was for preprinted books and related business materials, "not sophisticated highly priced equipment" exclusive to one distributor. 2001 U.S. Dist. LEXIS 19121, at *5. Moreover, the relationship between the parties involved "merely the periodic purchase as needed of merchandise," as opposed to the ongoing Dealer Agreement and subsequent specialty purchases presented here. *See id.* at *5-6.

A fulsome analysis of *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007), also demonstrates why the purposeful availment requirement is satisfied here. The *Air Prods.* court affirmed a finding of purposeful availment where (1) the defendants had a multi-year relationship with the plaintiffs during which they "purchased goods cumulatively worth hundreds of thousands of dollars;" (2) the defendants sent purchase orders and other communications to the plaintiffs in the forum state; (3) the defendants contacted the plaintiff in the forum state on many occasions via means like telephone, email, and regular mail; and (4) the defendants knew the

plaintiffs were located in the forum state and, therefore, knew that "the focal point of its actions and the brunt of the harm would be in [the forum state]." *Id.* at 551-53. This case presents a similar business relationship. Accordingly, the Amended Complaint and supporting declarations satisfy the purposeful availment prong of the personal jurisdiction test.

*b. Cause of Action Arose from Forum State Actions*

Plaintiffs also satisfy the second prong of the specific jurisdiction test, which is "subject to a 'lenient standard.'" *Nick Kostecki Excavating, Inc.*, 2024 U.S. Dist. LEXIS 107583, at *12. The breach of contract claim in this case "arise[s] from [and is] related to the defendant[s'] contacts with the forum state," as described above. *Intera Corp. v Henderson*, 428 F.3d 605, 615. Indeed, the Bovaird Defendants do not appear to question this prong of the test, only whether the contacts existed at all.

*c. Exercise of Jurisdiction Would Be Reasonable*

Because Plaintiffs have shown a prima facie case for the first two elements, there is an inference that the Court's exercise of personal jurisdiction over the Bovaird Defendants would be reasonable. *CompuServe, Inc.*, 89 F.3d at 1268. A balancing of the relevant factors only confirms that inference. Although there may be some burden on a defendant when litigating a case in another state's court, that burden has been eased by "modern transportation and communication," and in this case "appears to be no greater than the burden would be on [Plaintiffs] to litigate in" Defendants' home jurisdiction. *Nick Kostecki Excavating, Inc.*, 2024 U.S. Dist. LEXIS 107583, at *15 (quoting *Ardent Techs. Inc. v. Advent Servs. LLC*, No. 3:23-cv-137, 2023 U.S. Dist. LEXIS 153005, at *23 (S.D. Ohio Aug. 29, 2023); *Nationwide Mut. Ins. Co. v. Curry*, No. 2:96-CV-476, 1997 U.S. Dist. LEXIS 6196, at *17-19 (S.D. Ohio Jan. 7, 1997). Moreover, "this case clearly implicates [Plaintiffs'] business interests and [Tennessee] possesses an undeniable stake in protecting the business interests of its citizens." *Id.* (quoting *Ardent Techs. Inc.,* No. 3:23-cv-137,

2023 U.S. Dist. LEXIS 153005, at *23); *see also Inter-City Prods. Corp.*, 149 F.R.D. at 573 ("This is a contract action and Tennessee has an interest in seeing that its residents obtain the benefit of their bargain."). Accordingly, all three prongs of the specific jurisdiction test are satisfied and personal jurisdiction over Suncoast and Bovaird for the breach of contract claims is established.

2. This Court has personal jurisdiction over the Bovaird Defendants for Plaintiffs' Defamation and Slander (Count Four), Intentional Interference with Business Relationships (Count V), Civil Conspiracy (Count Six), and Injurious Falsehood (Count Eight) claims.

*a. Facts*

Plaintiffs' intentional tort claims spring from the same relationship between Plaintiffs and the Bovaird Defendants described above, particularly from breach of the agreements related to the Soulution products and PK_LA. Accordingly, those facts supporting Plaintiffs' breach of contract claim are also relevant to these claims and support personal jurisdiction as to Suncoast and Bovaird.

In addition, the Bovaird Defendants created more contacts with Tennessee as it relates to these claims. Despite Defendants' commitment to maintain confidentiality of the PK_LA agreement, Bovaird and Wiegand began to slander AXISS, thus directing intentional torts into Tennessee and harming a Tennessee business. Bovaird and Wiegand slandered AXISS despite knowing that AXISS's Soulution products had not harmed PK_LA's speakers. Am. Compl. ¶ 193-95 (showing the Soulution products were not at fault); 221 (slander begins); Duffey Decl., ¶¶ 7, 10, Ex. 1 (showing Soulution products not at fault).

Wiegand committed intentional torts on behalf of Clarisys. The Florida Secretary of State's website lists Wiegand as a manager of Clarisys together with Bovaird.[8] Pursuant to Florida Statutes

[8] See Exhibit 7 attached hereto, a true and correct copy of the publicly available information found on the Florida Secretary of State website.

Section 605.04074(2) the acts of a manager bind the company he manages. In August 2025, Wiegand, in his role as manager of Clarisys, slandered AXISS to an AXISS dealer in Colorado by telling the dealer that an amplifier had destroyed a customer's speakers and that AXISS had refused to give a refund. Am. Compl. ¶ 222. Wiegand could only have learned of the PK_LA situation from Bovaird, and it was in their interests to share that information with the dealer in an effort to harm the reputation of AXISS and the Soulution products so as to benefit Clarisys. *Id.* ¶¶ 224-228. Bovaird committed intentional torts to benefit Suncoast, Luxury, and Clarisys. He told the same dealer that a Soulution 717 power amplifier's circuit boards "had solder dripping off them," which caused a short in one of PK_LA's amps. *Id.* ¶ 229. Bovaird knew this statement was false because AAU had sent him photos of the circuit boards showing that there was no solder defect. *Id.* ¶ 231.

Wiegand repeated this slander in Utah later the same month, telling a customer interested in Soulution 717s, in the presence of an AXISS dealer, that they were defective and had blown up a customer's speakers. Am. Compl. ¶¶ 232-234. The customer chose not to buy any Soulution products. *Id.* ¶ 235. Later, Dave Weintraub, acting as a sales representative of Luxury and Clarisys, and working in Tennessee, placed a phone call from Tennessee to the same Utah AXISS dealer and told the dealer that he should stop selling Soulution products because the Soulution 717 was defective and blowing up speakers. *Id.* ¶¶ 237-46.

Bovaird also slandered and defamed AXISS, which he knew to be a Nashville-based company, to the audio industry more broadly. For example, in or around August 2025 Bovaird told Jay Caceres the same false story about the Soulution power amplifier. Am. Compl. ¶¶ 253, 256. Caceres, having heard the story, talked two customers out of buying Soulution products, thus causing a direct effect in Tennessee and on AAU's property in Tennessee on account of Bovaird's intentional tort. *Id.* ¶¶ 257-258. Bovaird has shared similar false accounts on Audioshark, a

members-only online forum for the discussion of high end Hi-Fi products *Id.* ¶¶ 259-261, and at the Florida Audio Expo, a for profit annual industry trade. *Id.* ¶¶ 262-265.

Further, the Bovaird Defendants and Defendant Gefteas conspired to expand the scope and effects of their intentional torts. On August 1, 2025, about two hours after the final resolution of the PK-LA transaction—when no one knew about the situation except AXISS, the Bovaird Defendants, and PK_LA—Gefteas posted to all of his followers that an expensive amp blew up and ruined expensive speakers, that the amp company had a "history of defective products," and that the distributor "tr[ied] to stick it to the owner and refuse to do the right thing." Am. Compl. ¶ 272; Duffey Decl. ¶¶ 18-20. Gefteas added further false and misleading statements in comments to his post, stating, for example, that the "blow up" was witnessed by another person and "there may be injuries as well," in addition to referring to the distributor – AXISS – as "greedy," "stupid," and "arrogant." Am. Compl. ¶¶ 273, 279. 282; Kelly Decl. ¶ 9. Although he did not use the names AXISS or Soulution, the sophisticated members of the audiophile community who subscribe to Gefteas's pages would have understood that he was referring to AXISS and Soulution from context. The Bovaird Defendants orchestrated the public release of this false information through Gefteas and Gefteas knew that his statements were false. *Id.* ¶¶ 289-290; Kelly Decl., ¶ 10.

In May 2026, Gefteas posted again about Soulution , stating that he was receiving messages from customers with failing Soulution amps and that messages "predate[] the recent issue where an owner went public about his brand new six-figure Soulution system failed after only an hour and supposedly took out his $250,000 speakers." Gefteas referencing his past posts with the same hashtags led readers to the trail of prior defamatory posts that, by now, Gefteas had to know were false. Am. Compl. ¶¶ 319-321; Kelly Decl. ¶ 10. He also defamed the distributor (AXISS) again in the comments, eventually naming Duffey and AXISS explicitly with additional false statements.

Am. Compl. ¶¶ 322-323. Gefteas added more defamatory comments just a few days later, Am. Compl. ¶ 330, Ex. 20, and posted again about his trumped up version of the PK_LA incident on June 24, 2026. Am. Compl. ¶ 337.

*b. Personal Jurisdiction Analysis*

The Bovaird Defendants' response to each of the intentional tort claims is that none of the alleged statements underlying the counts was made in Tennessee. Dkt. 31 at 19-23. They advance this argument by pointing out that certain statements were made in other states, like Colorado and Utah, *id.* at 19-20, and by claiming that Weintraub, who is based in and acted out of Tennessee, "was never an employee or sales representative of the Bovaird Defendants." *Id.* at 20. These facts, some of which Plaintiffs expressly refute via sworn testimony and declarations, do not allow the Bovaird Defendants to dodge personal jurisdiction in Tennessee.

As a threshold matter, the fact that certain tortious statements originated outside of Tennessee does not forestall personal jurisdiction for the claims relating in Tennessee. The Bovaird Defendants emphasize where the statements were made, but ignore the thing that binds the statements together—the goal of injuring a target business operating in Tennessee. "[E]ven a single act by defendant[s] directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal*, 270 F.3d at 331.

The statements made online by Gefteas were directed everywhere, including Tennessee, but specifically aimed at Plaintiffs and at causing harm and interrupting Plaintiffs' business in Tennessee. The oral statements by Bovaird and Wiegand targeted entities Defendants knew were in Tennessee, knew did business in Tennessee, and with whom Suncoast and Bovaird contracted in Tennessee. Tennessee's centrality to these claims is sufficient to satisfy the specific jurisdiction test. *See Johnson*, 85 F.4th at 433 (reversing district court's dismissal for lack of personal

jurisdiction where allegedly tortious tweets sent from outside of Tennessee (1) concerned activities of a Tennessee resident taken from Tennessee; (2) impugned the professionalism of an executive whose career was centered in Tennessee; (3) included information drawn from Tennessee; and (4) intended the "brunt of the harm" to befall a person in Tennessee).

Tennessee's centrality to all of this conduct is sufficient to convey personal jurisdiction over the Bovaird Defendants on each of these counts, but even if it were not, the conspiracy count conveys personal jurisdiction as to all Defendants so long as personal jurisdiction is proper as to one member of the conspiracy. *Strobl v. Croft*, No. 1:24-cv-140, 2025 U.S. Dist. LEXIS 30406, at *33-34 (E.D. Tenn. Feb. 20, 2025) (finding that the plaintiffs stated a conspiracy claim and that it had personal jurisdiction over the defendants based on the conspiracy's contacts with Tennessee); *City Auto Fin., LLC v. Little Rock Wholesale*, No. 2:11-cv-02220-SHL-tmp, 2014 U.S. Dist. LEXIS 187718, at *12-14 (W.D. Tenn. July 25, 2014) (similar); *PharmMD Solutions, LLC v. Kehoe*, No. 3:11-00255, 2011 U.S. Dist. LEXIS 45219, at *3-4 (M.D. Tenn. Apr. 26, 2011) (Haynes, J.) (finding personal jurisdiction for all the alleged conspirators based on forum contacts of single defendant); *Chenault v. Walker*, 36 S.W.3d 45, 54 (Tenn. 2001) (adopting the conspiracy theory of personal jurisdiction and holding that "if through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction") (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992) (Posner, J.)).

As noted above, the intentional torts alleged are directly tied to the contractual relationships Suncoast and Bovaird entered into with Plaintiffs. Accordingly, Plaintiffs have personal jurisdiction over all of the alleged co-conspirators through those Defendants. But even if they did not, Weintraub's actions, taken from Tennessee on behalf of Defendants Luxury and Clarisys,

further subject the co-conspirators to personal jurisdiction. To contest that, Wiegand denies that he owns or is employed by Clarisys. Wiegand also denies that Weintraub is his employee or representative and specifically states that he "never hired [Weintraub] . . . to speak for me." Wiegand Decl., ¶¶ 3, 6. But this testimony is directly rebutted by public filings and postings, Wiegand's own words, and Weintraub's own words.

First, as noted above, the Florida Secretary of State lists Wiegand as the manager of Clarisys, and publicly available publications from this year describe him as the founder and head of global distribution. *See* Laurie Brookings, "Luxury Home Audio, Made Visible in Florida Homes," Gulf Shore Life, Jan 10. 2026, available at https://gulfshorelife.com/home-design/luxury-home-audio-made-visible-florida-homes/. Perhaps most shockingly, on October 12, 2026, just ten days before he submitted his sworn testimony, Wiegand was interviewed on a YouTube interview posted by Clarisys Global that described him as the Founder and Owner of Clarisys. *See* Resnick Decl., ¶ 8, Ex. 1. Wiegand has also identified himself in writing to customers as "one of the founders of Clarisys Audio." *Id.*, ¶ 9, Ex. 2. Finally, directly contrary to Wiegand's testimony, Dave Weintraub told Ron Resnick that he (Weintraub) would speak for Wiegand regarding termination of Resnick's dealer relationship with Clarisys. *Id.*, ¶¶ 16-17, Ex. 3.

The same is true for Weintraub. First, Weintraub admits that he has done work for Luxury and Clarisys. Weintraub Decl., ¶ 6. Likewise Bovaird admits that Luxury and Clarisys retained Weintraub. Bovaird, Decl., ¶ 33. None of Bovaird, Weintraub, or Wiegand deny that Weintraub made phone calls to the Utah dealer on behalf of Luxury and Clarisys. Instead, they contend that Weintraub is an independent contractor, not an agent, and that he was not authorized to speak on behalf of Luxury or Clarisys. But Weintraub's actions and statements contradict that. Weintruab terminated Ron Resnick's Clarisys dealership, effectively establishing that he is Clarisys's agent.

*See* Resnick Decl., ¶¶ 13-14. In that same January 15, 2026 email when Weintraub terminated Resnick's dealership, he also told Resnick to direct all correspondence to him—not to Bovaird and Wiegand—because he, Weintraub, would "head up replies on this matter," thereby establishing that Weintraub was empowered to speak on behalf of Bovaird and Wiegand. *See* Resnick Decl., ¶¶ 16-17, Ex. 3. Weintraub then doubled down five days later when he identified himself as "Brand Manager for Clarisys Global" and again directed Resnick to write him and stated that he would answer questions on behalf of Clarisys. Resnick Decl., ¶¶ 18-19, Ex. 4. Finally, Weintraub told Steve Huntley that he is Sales Director for Luxury and Clarisys, and told Cliff Duffey that he is "with" Clarisys. Huntley Decl., ¶ 4; Duffey Decl., ¶ 29, Ex. 3. These facts, together, contradict Bovaird, Wiegand, and Weintraub's testimony that he is not an agent and not authorized to speak on behalf of Clarisys.

The Bovaird Defendants spend much of their Memorandum trying to minimize the true nature of the contacts between them and Tennessee. The Amended Complaint and the contradictory facts set forth in the attached declarations, read in the light most favorable to Plaintiffs, establish those minimum contacts and purposeful availment, that the causes of action at issue arose from the Bovaird Defendants' forum state actions, and that it is reasonable for this Court to exercise personal jurisdiction over all the Bovaird Defendants. Accordingly, the Bovaird Defendants' request for dismissal based on a lack of personal jurisdiction should be denied.

### B. Venue

Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events took place in this District and the property that was injured is located in this district. Alternatively, venue is proper under 1391(b)(3) because every defendant is subject to personal jurisdiction here.

First, the contracts were formed, paid, and performed in Nashville. For example, Suncoast solicited AAU in Tennessee for the contract to ship direct to PK_LA in exchange for Suncoast's

agreement to install, and AAU performed from Tennessee. Later Bovaird negotiated the refund agreement with Cliff Duffey in Nashville, and AAU ultimately agreed to the refund and paid it from this district. Tennessee is the center of the contract claims as all of the events giving rise to the contract claims touch Tennessee, thus venue is proper. *See, e.g.*, *Fat Boy's Pizza Franchise, LLC v. FBP Covington*, LLC, No. 26-1835, 2026 U.S. App. LEXIS 30452, at *7-8 (Oct. 5, 2026) (holding venue proper where contract was at least partially executed out of the forum state, the defendants knew that, and the defendant remitted payments to the forum state).

Second, the intentional torts were all directed at Tennessee, at a specific company in Tennessee and at property in Tennessee, and the torts had their effects here. While Bovaird and Wiegand are alleged to have slandered and defamed AXISS in Utah and Florida, among other places, the slander and defamation were all directed at this district with the intent of causing harm in this district. And the intentional torts did in fact cause harm in this district to AXISS and to AXISS's property—i.e. the Soulution products held in AXISS's warehouse in this district. Moreover, Dave Weintraub committed an intentional tort as the agent of Luxury and Clarisys in this district. Tennessee has, by far, the most substantial events or giving rise to those claims.

Third, all of the property that was damaged, and for which Plaintiffs seek compensation in the injurious falsehood claim, is located in this district. Namely, the Soulution products in AXISS's warehouse, whose value was harmed via false statements, all made as part of a conspiracy, are located here. *See* 28 U.S.C. § 1391(b)(2)(stating venue is proper in a judicial district where "a substantial part of the property that is the subject of the action is situated").

Finally, the key facts in the case, including the core allegations that what Defendants conspired to say is false, all depends on facts related to AAU's testing in Tennessee and its actions from Tennessee. Simply stated, most of the relevant evidence in this case is located in this district.

Alternatively, as Plaintiffs have established personal jurisdiction over all the Defendants, venue is appropriate in Tennessee under Section 1391(b)(3). *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025)(referring to § 1391(b)(3) as the "fallback rule" and noting that "questions of venue and personal jurisdiction are identical" and that a "motion contesting fallback venue . . . is . . . substantial[ly] equivalent of a motion to dismiss for lack of personal jurisdiction.").

Via the Amended Complaint and the declarations submitted in response to this motion, Plaintiffs meet their burden to show that a substantial part of the events or omissions giving rise to the claims and all of the property at issue are located in this district. Venue is appropriate, and the motion to dismiss for lack of venue should be denied.

## IV. CONCLUSION

For all the foregoing reasons, the Bovaird Defendants' Motion to Dismiss should be denied.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Eric G. Osborne*

Eric G. Osborne, BPR No. 029719
Amy R. Mohan, BPR No. 031238
Sherrard Roe Voigt & Harbison, PLC
1600 West End Ave., Suite 1750
Nashville, TN 37203
Tel.: (615) 742-4200
eosborne@srvhlaw.com
amohan@srvhlaw.com

*Counsel for Plaintiff Veris Home Technology LLC by itself and as assignee of Spemot AG, AXISS Audio USA LLC, and AXISS Distribution Incorporated (together d/b/a AXISS Audio)*