IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VERIS HOME TECHNOLOGY LLC, et al. D/B/A AXISS AUDIO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:26-cv-00918 |
| | ) | District Judge Waverly D. Crenshaw, Jr. |
| MICHAEL BOVAIRD, MICHAEL GEFTEAS, FLORIAN WIEGAND, SUNCOAST AUDIO LLC, LUXURY HI-FI DISTRIBUTION LLC, and CLARISYS AUDIO GLOBAL DISTRIBUTION, LLC | ) | Magistrate Judge Luke A. Evans |
| | ) | |
| Defendants. | | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT GEFTEAS'S MOTION TO DISMISS**

---

This case is about Defendant Michael Gefteas's breach of contract and persistent false attacks against Plaintiffs as part of an alleged conspiracy with the Bovaird Defendants to destroy the reputation of a Tennessee company and harm the value of property in Tennessee. Gefteas solicited contracts with Plaintiffs, then breached an agreement with Plaintiffs. Unsatisfied, he then launched an online attack against Plaintiffs, sharing false information about a customer's experience with a product. Gefteas was informed that his post was false but he persisted, repeating for nearly a year false information that he knew to be untrue and severely damaging Plaintiffs.

The issues before this Court are whether this Court has personal jurisdiction over Gefteas, whether it is the proper venue, and whether Plaintiffs have stated a claim. The answer to these questions is yes. Gefteas solicited in Tennessee and then entered into multiple contracts in Tennessee. He breached a Tennessee contract, causing damages to a Tennessee business. These facts firmly establish personal jurisdiction in Tennessee. Gefteas also directed intentional torts into Tennessee that caused harm in Tennessee, which also establishes jurisdiction. He is also subject to jurisdiction because he acted as part of a conspiracy with the Bovaird Defendants, who took actions here. Venue is proper because a substantial part of the events occurred here, the property damaged is located here, and all defendants are subject to jurisdiction here. This Court has jurisdiction and venue, or alternatively it should permit jurisdictional discovery.

On the merits, Plaintiffs have adequately pled all of their claims. Gefteas denies ever contracting with AAU, but the exhibits to the Amended Complaint, the sworn testimony of TJ Goldsby, and an email signed by Gefteas evidencing the contract to not disparage AXISS, all rebut his testimony. Plaintiffs illustrate below how Gefteas defamed Plaintiffs. Once the defamation is established, the claims for injurious falsehood and a violation of the Tennessee Consumer Protection Act ("TCPA") follow. The conspiracy is also well-pled, as established below.

## ARGUMENT

### I. This Court Has Personal Jurisdiction Over Gefteas

A. Legal Standard

For personal jurisdiction in diversity, this Court looks to the law of the forum, Tennessee. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Tennessee's long-arm statute is "coterminous with the limits on personal jurisdiction imposed by the due process clause," so the Court need "address only whether exercising personal jurisdiction [] is consistent with federal due process requirements." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (internal quotation marks and citation omitted).[1]

This court has specific personal jurisdiction over Gefteas. Specific jurisdiction exists when a three-part test is satisfied: (1) "the defendant purposefully avail[ed] himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action [arose] from the defendant's activities there," and (3) "the acts of the defendant or consequence caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction . . . reasonable." *Bridgeport Music*, 327 F.3d at 477-78.

"'[T]he plaintiff need only make a 'prima facie' case that the court has personal jurisdiction,' . . . and 'the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.'" *Roundtree-Chism v. Dunn*, No. 1:16-cv-387-SKL, 2017 U.S. Dist. LEXIS 80920, at *5 (E.D. Tenn. May 26, 2017) (quoting *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)); *see also Ever-Seal, Inc. v. Duraseal, Inc.*, No. 3:22-cv-00365, 2022 U.S. Dist. LEXIS 151025, at

[1] Mintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Watkins v. Kajima Intern. Corp.*, No. 3:08–0426, 2010 U.S. Dist. LEXIS 91432, at *5 (M.D. Tenn. Sept. 1, 2010) (quotation omitted). "Jurisdiction is allowed as long as due process itself is not violated." *Inter-City Prods. Corp. v. Willey*, 149 F.R.D. 563, 571 (M.D. Tenn. 1993) (citation omitted).

*15 (M.D. Tenn. Aug. 23, 2022) ("uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor").[2]

First, purposeful availment is "akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state]." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (internal citation and quotation omitted). It is satisfied when the defendant's contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462,474–75 (1985)). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475. If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction. *See Id.* at 476.

Minimum contacts are required, but "even a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

> The factors . . . [for] minimum contacts are their quantity, quality and nature, the source and connection of the cause of action with those contacts, interest of the forum state and last, convenience. . . . [E]very factor is not required to be present. Instead,

[2] Plaintiffs submit six sworn declarations to rebut the testimony of Gefteas and his co-conspirators. These include the Declaration of T.J. Goldsby (Exhibit 1), the Declaration of Cliff Duffey (Exhibit 2), the Declaration of Steve Huntley (Exhibit 3), the Declaration of Ron Resnick (Exhibit 4), the Declaration of Lee Stromatt (Exhibit 5), and the Declaration of Pat Kelly (Exhibit 6).

> [Courts weigh] these factors . . . to [conclude] that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

*Hi Fi Corner, Inc. v. Inflight Cinema Intern., Inc.*, 505 F. Supp. 12, 14 (M.D. Tenn. 1980) (internal citation omitted). "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Inter-City Prods. Corp.*, 149 F.R.D. at 572. Purposeful availment does not require Gefteas's physical presence in Tennessee, *Burger King*, 471 U.S. at 476, that he initiated the business relationship, *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d at 382 (6th Cir. 1968), or that the contracts were legally formed in Tennessee. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 907 (6th Cir. 1988). These are only factors to be considered in determining minimum contacts. *Inter-City Prods. Corp.*, 149 F.R.D. at 572.

Second, whether the action arose in the forum state, is "subject to a lenient standard." *Nick Kostecki Excavating, Inc. v. Integrated Mach., Inc.*, No. 1:23 CV 2370, 2024 U.S. Dist. LEXIS 107583, at *12 (N.D. Ohio June 18, 2024)(quotation omitted). "An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005); *see also CompuServe, Inc.*, 89 F.3d at 1267 ("If a defendant's contacts with the forum state are related to the operative facts . . ., then an action will be deemed to have arisen from those contacts.").

Third, if the Court finds the first two elements of a prima facie case, "then an inference arises that this third factor"—that the exercise of jurisdiction would be reasonable—"is also present." *CompuServe, Inc.*, 89 F.3d at 1268. "A court must consider several factors in this context, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (internal quotation marks omitted).

B. Analysis

Plaintiffs' pleadings and supplemental declarations establish personal jurisdiction over Gefteas. Gefteas is a professional Hi-Fi product reviewer and social media influencer who operates online as "The Greek Audio Geek." Am. Compl. ¶ 103. He has significant knowledge of the audio industry, knows the brands AXISS distributes, and knows of the relationship AXISS has with Soulution. *Id.*, ¶ 105. Gefteas reviewed AXISS and its products. *Id.*, ¶¶ 102, 106.

Gefteas denies ***any*** contracts by swearing he did not perform any services for Plaintiffs, Supp. Gefteas Decl. ¶2. The facts pled rebut this, showing continuous contacts related to and ultimately a breach of contract, all repeatedly touching Tennessee. Gefteas initiated the relationship by reaching out to TJ Goldsby, an AAU employee in Tennessee, to contract with AAU to do a review of AGS products. Am. Compl. ¶ 106; Goldsby Decl., ¶¶30-32. He then solicited another contract when he contacted Goldsby again, told him that he liked the AGS products, and asked if AAU would allow him to keep them. *Id.* ¶ 107; Goldsby Decl., ¶ 33. AAU agreed to sell Gefteas the products for a 62% discount. *Id.* ¶ 110. The parties memorialized their agreement through a June 15, 2024 invoice order contract addressed to Gefteas from Veris at 624 Grassmere Park Suite 18, Nashville, TN 37211-1718. Am. Compl. ¶ 112, Ex. 3. The invoice terms noted this was a "special accommodation" for Gefteas's "great review of these products." *Id.* ¶ 113, Ex. 3. AXISS covered "the costs of shipment and any payment processing fees." *Id.* The invoice stated Gefteas was "to pay for just 50% of the total price now with . . . 50% due after 60 days." Am. Compl. ¶ 114, Ex. 3. Gefteas made the payments to Veris's Tennessee bank. *Id.*, ¶ 116.

The same month Gefteas began a new AXISS review. Am. Compl. ¶ 117. After publishing a favorable review in October 2024, he again contacted Goldsby in Tennessee and told him that "he did not think it was fair to him to not receive additional compensation . . . because Gefteas's

AGS review had led to . . . sales and he deserved to share more in that product's success." Am. Compl. ¶ 122. Throughout fall 2024, Gefteas called Goldsby asking for money, telling Goldsby that he would keep posting good reviews, and that Goldsby wanted him to stay on Plaintiffs' good side. Goldsby Decl. ¶ 35. Gefteas made those calls into Tennessee and knew Goldsby was in Tennessee. Goldsby Decl. ¶ 36 (Gefteas invited Goldsby to visit him in Texas). Gefteas proposed that AXISS refund the second AGS payment he made as compensation for a review. Am. Compl. ¶ 122. He followed that call up with an email to Goldsby in Tennessee soliciting another contract by proposing that AAU send Gefteas an additional $10,485.00 in product in exchange for additional social media postings promoting the products. *Id.* ¶ 123.

AXISS considered Gefteas's proposal but declined. Am. Compl. ¶ 132. Gefteas became angry and demanded that AXISS refund his second payment for the discounted AGS products. *Id.*, ¶¶ 132-133. Gefteas told Goldsby that if AXISS did not refund the payment, he would refuse to review Gauder Akustik speakers AAU had loaned him for review and would stop reviewing AXISS products. *Id.,* ¶ 134-135, Ex. 4. Gefteas implied to Goldsby that it would harm AXISS's reputation if their partnership ended on bad terms and AXISS did not pay him. *Id.*, ¶ 138; Goldsby Decl., ¶¶ 35-38. Goldsby entered into another contract with Gefteas, agreeing, in his capacity as an AAU employee, to pay Gefteas $1,479.15 in exchange for Gefteas's promise to continue to review AXISS products and not disparage AXISS. *Id.*, ¶¶ 139-141; Goldsby Decl., ¶¶ 39-50. Contrary to Gefteas's sworn testimony, the $1479.15 was for a contract with AAU to do positive reviews and not disparage AXISS. *Id.* Gefteas accepted and kept the payment. *Id.*, ¶ 47.

These facts are more than sufficient to establish jurisdiction in Tennessee for the breach of contract claim. Gefteas not only contracted with a Tennessee company and accepted shipment of products from Tennessee, but he reached into Tennessee to solicit compensation for his reviews

and a contract to not disparage AXISS. Gefteas availed himself "of the privilege of acting in the forum state or causing a consequence in the forum state." *Bridgeport Music*, 327 F.3d at 477.

Gefteas's contacts with Tennessee were not just a function of Plaintiffs' presence there. Plaintiffs did not force Gefteas to solicit compensation for his reviews and non-disparagement. Gefteas initiated the relationship, took those actions, and chose to direct them to Tennessee. Gefteas knew he was dealing with a Tennessee company, knew that its personnel were there, and knew that it was invoicing from Tennessee, thereby "create[ing] a 'substantial connection' with the forum State," such that he "'should reasonably anticipate being haled into court there.'" *CompuServe*, 89 F.3d at 1263 (quoting *Burger King*, 471 U.S. at 474–75). These were far more than the "single act" needed for personal jurisdiction. *Neal*, 270 F.3d at 331. Moreover, these are transactions involving specialized equipment, not products available anywhere. *See, e.g.*, *Crouch Ry. Consulting, LLC v. LS Energy Fabrication, LLC*, 610 S.W.3d 460, 481 (Tenn. 2020) (the contract at issue involved "specialized, custom services that entailed significant development activities in Tennessee"). Together, these facts establish Gefteas's purposeful availment of Tennessee on the contract claim as Gefteas has even more contacts than the Tennessee Supreme Court found sufficient in *Crouch Ry. Consulting, LLC*, 610 S.W. 3d at 477-80.(finding personal jurisdiction based on a contract where a Texas company contracted with a Tennessee company knowing that company operated from Tennessee and would perform services in Tennessee, communicated via telephone and email into Tennessee, and sent a payment into Tennessee).

Gefteas then conspired with the Bovaird Defendants to expand the reach of their misrepresentations. As detailed in the Amended Complaint, Gefteas repeatedly published false and misleading statements about AXISS and Soulution on social media, claiming AXISS was engaged in unethical business practices, that the PK_LA speaker blew up and that there may be injuries.

These additional actions directed at Tennessee establish personal jurisdiction for Plaintiffs' intentional tort and conspiracy claims. Gefteas's primary response is that he did not make any of the alleged statements in Tennessee but on the Internet (most likely from Texas), and that they were directed across the country. Dkt. 33 at 4-9. But the fact that tortious statements originated outside of Tennessee does not bar personal jurisdiction for claims relating to such statements in Tennessee. All of the statements were about Plaintiffs and their Tennessee business, and Gefteas's assertion that he "did not intentionally target a Tennessee audience," Dkt. 33 at 6, is belied by his knowledge of Plaintiffs' presence in Tennessee. "[E]ven a single act by defendant[s] directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal*, 270 F.3d at 331.

> Physical presence is not the touchstone of personal jurisdiction. "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state [and national] lines, thus obviating the need for physical presence within a State when business is conducted." *Burger King*, 471 U.S. at 476. Accordingly, we hold that when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the "heart" of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state.

*Id.* at 333.

The statements made by Gefteas online were directed everywhere, including Tennessee. Tennessee being at the heart of all of these claims is sufficient to convey specific jurisdiction. *See Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023). In *Johnson*, a "California-based celebrity and social activist, sent a series of tweets to her two million Twitter followers asserting that [a Tennessee resident] had engaged in homophobic conduct." *Id.* at 431. The Tennessee resident sued alleging, *inter alia*, tortious interference with his employment, and the district court dismissed his case. *Id.* The Sixth Circuit reversed, reasoning that the allegedly tortious tweets sent from outside of Tennessee (1) concerned activities of a Tennessee resident taken from Tennessee; (2) impugned

the professionalism of an executive whose career was centered in Tennessee; (3) included information drawn from Tennessee; and (4) intended the "brunt of the harm" to befall a person in Tennessee. *Id.* at 433. The court held that Griffin posting her statement to a national audience "does not inoculate herself from personal jurisdiction in a targeted state." *Id.* at 435. In the same manner, Gefteas cannot render himself immune from responsibility for his defamation and slander of a Tennessee company by sharing his falsehoods with the whole country.

Furthermore, the conspiracy count conveys personal jurisdiction as to all Defendants so long as personal jurisdiction is proper as to one member of the conspiracy. *Strobl v. Croft*, No. 1:24-cv-140, 2025 U.S. Dist. LEXIS 30406, at *32-34 (E.D. Tenn. Feb. 20, 2025) (plaintiffs stated a conspiracy claim and had personal jurisdiction over defendants based on the conspiracy's contacts with Tennessee); *PharmMD Solutions, LLC v. Kehoe*, No. 3:11-00255, 2011 U.S. Dist. LEXIS 45219, at *3-4 (M.D. Tenn. Apr. 26, 2011) (personal jurisdiction for all alleged conspirators based on forum contacts of single defendant); *Chenault v. Walker*, 36 S.W.3d 45, 54 (Tenn. 2001) (adopting the conspiracy theory of personal jurisdiction and holding that "if through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction") (quotation omitted). Gefteas acted as part of a conspiracy with the Bovaird Defendants, including Clarisys whose Brand Manager, Dave Weintraub, acted in support of the conspiracy from within Tennessee. Am Compl., ¶¶237-44 (Weintraub engaged in the conspiracy from Tennessee); Resnick Decl., ¶¶12-20, Exs. 3-4 (showing that Weintraub is Clarisys's Brand Manager and agent). For all the reasons stated herein and in the contemporaneously filed response to the Bovaird

Defendants' Motion to Dismiss, Plaintiffs have established personal jurisdiction over at least one member of the conspiracy, and thus have personal jurisdiction over Gefteas.[3]

None of the cases cited by Gefteas contradict the exercise of jurisdiction in this case. *Kerry Steel, Inc. v. Paragon Indus.*, for example, involved a case where a defendant ordered products and negotiated via fax and telephone but did not "intend[] to establish continuing relationships and obligations." 106 F.3d 147, 151-52 (6th Cir. 1997) (quotation omitted). Here, Gefteas's contacts were more substantial, as he repeatedly reached into Tennessee to solicit compensation for his reviews and repeatedly proposed and was paid to continue the reviews and not disparage AXISS.

Plaintiffs also satisfy the second prong of the specific jurisdiction test, which is "subject to a 'lenient standard.'" *Nick Kostecki Excavating, Inc. v. Integrated Mach., Inc.*, No. 1:23 CV 2370, 2024 U.S. Dist. LEXIS 107583, at *12 (N.D. Ohio June 18, 2024). The contract and intentional tort claims against Gefteas "arise from [and are] related to the defendant's contacts with the forum state." *Intera Corp.*, 428 F.3d at 615. Gefteas does not question this prong.

Because Plaintiffs have shown a prima facie case for the first two prongs, there is an inference that the exercise of jurisdiction over Gefteas would be reasonable. A balancing of factors confirms that inference. Although there may be some burden in litigating a case in another state, that burden has been eased by "modern transportation and communication," and "appears to be no greater than the burden would be on [Plaintiffs] to litigate in" Gefteas's home state of Texas. *Nick Kostecki Excavating, Inc.*., No. 1:23 CV 2370, 2024 U.S. Dist. LEXIS 107583, at *12. Moreover, "this case clearly implicates [Plaintiffs'] business interests and [Tennessee] possesses an

[3] Gefteas also tries to dodge jurisdiction by contending his actions had no effects in Tennessee because he does not derive revenue there and it is not a "top market" for high end audio equipment. Supp. Gefteas Decl., ¶ 6. This is contradicted by Lee Stromatt, who states that there are many buyers of high-end and luxury audio equipment in Tennessee. Stromatt Decl., ¶¶ 8-9. Stromatt also states Gefteas's false posts cost AAU $86,000 and Stromatt's company $130,000 here. *Id.* ¶ 11.

undeniable stake in protecting the business interests of its citizens." *Id.* at *15; *see also Inter-City Prods.*, 149 F.R.D. at 573 ("This is a contract action and Tennessee has an interest in seeing that its residents obtain the benefit of their bargain.").

**II. Venue is proper in this Court.**

Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events took place in this District and the property injured is located in this district. First, the contract was formed, paid, and performed by AAU in Nashville. Gefteas repeatedly solicited AAU for the contract to continue reviews and not disparage AXISS. When Gefteas breached, the entity he disparaged was AXISS located in Tennessee. Tennessee is the center of the contract claim.

Second, Gefteas's intentional torts were all directed at Tennessee, at a specific company in Tennessee and at property in Tennessee, and the torts had their effects here. The defamation, injurious falsehood, intentional interference with business relationships, and violation of the TCPA were all directed at this district with the intent of causing harm in this district. And the intentional torts did in fact cause harm in this District to AXISS and to AXISS's property. Moreover, Gefteas is part of the conspiracy, and one of the intentional torts was committed from this district by Weintraub. Tennessee has the most substantial events giving rise to these claims.

Third, all of the property that was damaged, for which Plaintiffs seek compensation in the injurious falsehood claim, is located here—i.e. the Soulution products in AXISS's warehouse, whose value was harmed via false statements. 28 U.S.C. 1391(b)(2) (venue is proper in a judicial district where "a substantial part of the property that is the subject of the action is situated").

Finally, the key facts, such as the falsity of Defendants' statements, depends on evidence related to AAU and its actions in Tennessee—i.e. the relevant evidence is located here. For all of these reasons, venue is appropriate under 28 U.S.C. § 1391(b)(2).

Alternatively, as Plaintiffs have established personal jurisdiction over all the Defendants, venue is appropriate in Tennessee under Section 1391(b)(3). *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025)(referring to § 1391(b)(3) as the "fallback rule" and noting that "questions of venue and personal jurisdiction are identical" and that a "motion contesting fallback venue . . . is . . . substantial[ly] equivalent of a motion to dismiss for lack of personal jurisdiction.").

## III. Plaintiffs Have Adequately Pled Each of Their Substantive Claims

### A. Breach of Contract

Gefteas argues that Plaintiffs did not plead a contract claim. Indeed, Gefteas denies ***any*** contract. Supp. Gefteas Decl. ¶2. But the facts detailed above show the parties' agreements, documented through the cited invoices,[4] and Gefteas's ultimate breach of contract.

There are ample grounds to find that Plaintiffs have pled a breach of contract. Plaintiffs plead that AAU contracted with Gefteas for positive reviews and to not disparage AXISS, Am. Compl. ¶¶ 133-46 and Ex. 4; *see also id.* ¶¶ 106-16 and Ex. 3 (pleading the existence of and then providing the contract showing payment by AAU to Gefteas of a 62% discount in exchange for a review). Gefteas affirmatively reached out to AAU to solicit contracts, and AAU performed the contracts by shipping products, discounting products, receiving payments from Gefteas, and sending payments to Gefteas. *Id*. Moreover, Gefteas does not deny that AAU paid him $1479.15 to not disparage AXISS. The exhibits to the Amended Complaint and Mr. Goldsby's declaration allege Gefteas contracted with both Veris and AAU. Goldsby's declaration further shows not only the existence of the non-disparagement contract but also written documents evidencing it. Goldsby

[4] *See, e.g.*, *Coria v. Sport Pontoons, LLC*, No. 1:22-CV-199-KAC-CHS, 2024 U.S. Dist. LEXIS 95379, at *7 (W.D. Tenn. Mar. 15, 2024) (acceptance of payment pursuant to terms of invoice rendered invoice a binding contract); *Thomas v. Ken Smith Auto Parts*, No. E2022-00591-COA-R3-CV, 2023 Tenn. App. LEXIS 110, at *31-33 (Tenn. Ct. App. Mar. 21, 2023) (affirming trial court enforcement of invoice terms pursuant to party agreement).

Decl., ¶¶ 29-50, Ex. 19. As detailed in the Amended Complaint and argued herein, Gefteas later breached this contract and directed numerous intentional torts into Tennessee.

Nor is there merit to Gefteas's statute of frauds argument. First, Plaintiffs pled that the contract to not disparage AXISS complied with the statute of frauds because it was made over the phone and in writing via email. *See* Am. Compl., ¶ 141. The statute of frauds can be raised on a motion to dismiss only if it "clearly and unequivocally appears on the face of the complaint," otherwise it is an affirmative defense Gefteas must prove. *See Anthony v. Tidwell*, 560 S.W. 2d 908, 909 (Tenn. 1977); *see also Kelly v. Int'l Cap. Res., Inc.,* 231 F.R.D. 502, 514–16 (M.D. Tenn. 2005) (declining to dismiss on statute of frauds where the defense turned on materials outside the pleadings). The affirmative defense is rebutted by the Amended Complaint, so the Motion should be denied. Second, in response to Gefteas's denial that he entered into a contract, Goldsby's declaration both testifies to a writing and shows a document signed by Gefteas confirming the contract by sending his wife's payment details. Goldsby Decl., ¶¶ 41-46, Ex. 19. Emails are sufficient to satisfy the statute of frauds. *See Waddle v. Elrod*, 367 S.W.3d 217, 228 (Tenn. 2012). Third, even if the signed writing is not sufficient, the partial performance exception applies. AAU performed and paid Gefteas the promised amount. Performance is an exception to the statute of frauds. *See, e.g.*, *Trew v. Ogle*, 767 S.W. 2d 662, 664 (Tenn. Ct. App. 1988) (partial performance is "[t]he most commonly recognized exception to the Statute of Frauds").

B. Defamation

**1) AAU's pre-October 1, 2026 defamation claims survive.**

Gefteas's first argument that certain defamation claims made prior to October 1, 2026, are time-barred because a "new" Plaintiff was added mischaracterizes the Amended Complaint. Veris filed this lawsuit on July 2, 2026. The original named Plaintiff was Veris Home Technology, LLC,

which was specifically identified as owning all of the interests of AAU and ADI and doing business as AXISS Audio. Veris then amended its complaint on October 1, 2026, to clarify the legal structure of the companies by adding AAU and ADI as named Plaintiffs together doing business as AXISS Audio. Veris is the parent company of Plaintiffs who together do business as and are known in the industry as AXISS Audio. *See* Amended Complaint at ¶ 1. The defamation claims in both the original and Amended Complaints are substantially identical and involve Gefteas's online published statements about AXISS Audio.

Federal Rule of Civil Procedure 15(c) and Tennessee Rule of Civil Procedure 15.03 allow relation-back for later-added plaintiffs when the claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Further, if the amendment changes a party or the naming of a party, such addition is allowed if the opposing party (1) has received such notice of the institution of the action that it will not be prejudiced in maintaining a merits defense, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. That is the case here.

In *Osborne Enters. v. City of Chattanooga*, 561 S.W.2d 160 (Tenn. Ct. App. 1977), the court allowed a parent corporation to add a subsidiary as a plaintiff after the statute of limitations had run because the original complaint contained the same facts and damages theories and there was identity of interest between the two. The court employed three factors used by federal courts: (1) whether the defendant received adequate notice of the claim; (2) whether relation back would unfairly prejudice the defendant; and (3) whether there is identity of interest between the original and new plaintiff. *Id.* at 164. Notice of operational facts was the critical element. *Id.*

Here, like in *Osborne*, the parent was named in the original complaint and the subsidiary, AAU, was doing business as the same entity. The defamation claims related to AAU are based on

the same facts. Applying the *Osborne* test, (1) Gefteas received adequate notice of the facts in the Complaint related to defamation, which are identical to those in the Amended Complaint; (2) he is not prejudiced because the claims and his defenses remain unchanged by the addition of AAU; and (3) the parties are not strangers (one is a subsidiary of the other) and Plaintiffs do business as and are known to Gefteas as AXISS Audio. The amendment relates back and is not time-barred.

**2) Truth is not a valid defense to the defamation claims against Gefteas.**

Ignoring the other blatant falsehoods in his online posts, Gefteas asserts truth as a defense to the statements that AXISS did not fully refund PK_LA. Tennessee recognizes defamation by innuendo or implication. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978). In *Nichols*, a newspaper was held liable for defamation for a story that truthfully stated that, upon finding her husband at the plaintiff's home, the wife shot the plaintiff. Nichols argued that the article implied that she was having an affair that led to the shooting because the article omitted that other individuals were present when the shooting occurred and that it occurred in the afternoon. The *Nichols* court examined the defamatory meaning of the entre article, not parsing it out word for word for truth, and found the article was indeed defamatory by implication. *Id.* at 420-421.

Gefteas claimed on numerous occasions that AXISS did not refund PK_LA. That statement is unequivocal. Yet, the Amended Complaint and Duffey declaration show AXISS never owed PK_LA a refund. Am. Compl., ¶¶ 215-216. Duffey Decl., ¶ 12; *see also* Kelly Decl., ¶ 6, 8. As Duffey notes, sharing news of a refund would be damaging to the business. Duffey Decl., ¶ 12.

Gefteas's statements that AXISS did not refund PK_LA make the assumption that AXISS had an obligation, contractual or otherwise, to refund PK_LA and that AXISS shirked that obligation in favor of greed. The nuance on where the refund (or non-refund) came from is crucial. Like in *Nichols*, the omission of certain facts and the implications those omissions constitute

defamation by implication. *Nichols*, 569 S.W.2d 412. Truth is not a defense when, as stated, it falsely implies that a refund was owed and that AXISS failed to fulfill its obligations.

**3) Gefteas's initial posts were riddled with identifying information making it clear to his specialized audience that the post was "of and concerning" AXISS.**

A defamatory statement need not name the plaintiff; it is enough that readers reasonably understand it to refer to the plaintiff. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964) ("of and concerning" requirement asks whether the statement refers to the plaintiff, not if it names the plaintiff.). Under the Restatement, a defamatory communication is made concerning the person whom its recipient correctly, or mistakenly but reasonably, understands it referred to. Restatement (Second) of Torts § 564 (1977). It is enough that the reference is such that those who hear or read it reasonably understand the plaintiff to be the person intended. *Id*. § 564 cmt. b.

Courts have refused to dismiss claims where the plaintiff was not named but the publication supplied enough detail for knowledgeable readers to identify the plaintiff by implication. *See, e.g., Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) (reversing partial dismissal where details plausibly allowed readers to identify the plaintiff as one of the unnamed individuals described). The *Elias* court found that extrinsic facts can be relied on to conclude a publication is referring to a company or person: "It is not necessary that the world should understand the libel; it is sufficient if those who know the plaintiff can make out that she is the person meant." *Id.* (quotation omitted). If omitting a name were enough, a speaker could make accusations with impunity just by describing the target in terms the intended audience would recognize.

Gefteas's cited authorities do not hold otherwise. *Steele v. Ritz*, addresses the "group libel rule," where statements that are used broadly concerning the members of a group, absent circumstances pointing to a particular member, are not a sufficient basis for one member to have a cause of action. No. W2008-02125-COA-R3-CV, 2009 Tenn. App. LEXIS 843, at *4 (Ct. App.

Dec. 16, 2009). *Steele* further holds a plaintiff cannot sue over a statement made "of and concerning" a third party—the defamation must either be "of and concerning" the plaintiff or refer to the plaintiff *by reasonable implication*. *Id*. (emphasis added). Similarly, a statement expressing "a general opinion about a topic" is not of and concerning a particular plaintiff. *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 486 (6th Cir. 2023). These cases do not address, much less foreclose, liability for statements directed at an identifiable entity that is described rather than named.

The posts here were not about a third party and or general commentary on an industry topic. The statements accused "the distributor" in a specific transaction of specific misconduct. Gefteas argues that he did not identify AXISS because the Amended Complaint does not allege that "AXISS is the only American distributor of non-British, European-manufactured luxury audio equipment." Dkt. 33 at 15. But that argument isolates one clue and ignores the rest. Gefteas described a specific incident: a new, six-figure amplifier purchased by a U.S. customer that failed and damaged $250,000 speakers. Am. Compl., ¶¶ 272, 275, 282. He then posted a photograph of the "failed amp," which knowledgeable audiophiles would recognize as a Soulution 717. *Id.* ¶ 275. Once a reader recognized the product, the distributor was obvious. In this market, distributors hold exclusive territorial rights. The audience knows "who carries exclusivity for certain brands," and AXISS is the exclusive North American distributor of Soulution. *Id*. ¶¶ 2, 58, 104. The posts referred to the U.S. distributor of the amplifier in the photograph. Only AXISS fits that description.

Further, Gefteas cannot rely on his audience's specialized knowledge for one argument then ignore it when it suits him. The Motion recognizes that Gefteas' audience is "experienced and specialized." In Section III.C.7, Gefteas asks the Court to read "blew up" as "commonplace audiophile vernacular" and the understanding of his "experienced and specialized audiophile audience." Dkt. 33 at 18–19. AXISS disputes that reading, but the premise is correct: the meaning

of a publication, including whom it refers to, depends on how its actual audience would reasonably understand it. Gefteas cannot rely on his audience's knowledge to soften his words, then ask the Court to disregard that same knowledge in deciding whom his tortious words were targeting.

Finally, the Motion notes that, in August 2025, a commenter "speculated about the parties' identities," and Gefteas thanked him for not identifying them. Dkt. 33 at 15, n.3. That exchange shows that readers were connecting the posts to specific market participants in real time, which is reflected in AXISS's sudden and immediate damages. Stromatt Dec., ¶ 11 (in November 2025 an AXISS customer demanded a refund after he said he read online about AXISS providing a refund to a customer); Duffey Decl., ¶ 27 (Soulution sales suddenly dropped after Gefteas's posts began).

Whether readers identified AXISS, as AXISS alleges, is a factual question and one Plaintiffs have appropriately pled. *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007)(a Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim); *see also* Restatement (Second) of Torts §§ 614, 617 (what recipients understood is a question of fact). Here, the posts are at least reasonably capable of referring to AXISS and the Motion should be denied.

**4) Gefteas' statements about the Soulution speakers blowing up and injuring a victim are defamatory toward AXISS.**

AXISS is not litigating a defamation claim on behalf of Soulution as that assignment is not allowed under Tennessee law. But Gefteas's statements regarding the Soulution speaker are still defamatory to AXISS. Moreover, the published statements Gefteas complains of refer to both the distributor and manufacturer. *See, e.g,.* Am. Compl., ¶¶ 268, 272.

A plaintiff must prove the defaming party communicated a false or defamatory statement of and concerning the plaintiff. *See Pate v. Service Merch. Co*., 959 S.W.2d 569, 573 (Tenn. Ct. App. 1997). The "of and concerning" requirement is easily met as Gefteas names a "distributer"

(understood as AXISS) or names AXISS itself. Gefteas tries to parse the language of his defamatory statements in a vacuum and suggests that stating speakers blew up and caused injuries (all of which is false) is only harmful to the manufacturer, Soulution, and not AXISS, but AXISS is the exclusive distributor of Soulution products in North America, so damage to that brand damages AXISS's sales. Further, associating equipment blowing up and injuries in any way with a distributor is harmful, and Gefteas never squarely puts the blame on Soulution. He repeatedly makes false statements about AXISS related to the "blow up" by stating that the distributer refused to do the right thing and made stupid and unethical business decisions. Gefteas cannot extract the statements about the speakers themselves from the entire false narrative he created.

**5) Gefteas's argument about the term "blown up" is an unreasonable reading.**

In assessing whether Plaintiffs plead a claim under Rule 12(b)(6), the Court does not review evidence related to "commonplace audiophile vernacular" or make a determination on the merits. Even if a reasonable person or audiophile with specialized knowledge might understand that saying a speaker is "blown" could mean that the speaker stopped working, Gefteas did not use the term "blew" or "blown." He used the term "blows up" and later stated that there were "physical injuries" and referred to a "victim." Am. Compl. ¶¶ 272. 282. He did this repeatedly after he was told his statements were false. Am. Compl. ¶¶ 290-294, 298-299, Duffey Decl. ¶ 25-26, Kelly Decl. ¶ 10. Gefteas chose to use the term "blows up" and falsely add language about injuries. A reasonable person understands "blows up" with injuries to mean something explodes or is destroyed.

**6) The AirTight Posts are reasonably capable of a defamatory meaning.**

Gefteas parses out his AirTight posts piece by piece. His praise of AirTight's new distributor, he says, is subjective opinion. But defamatory meaning is judged from the publication as a whole, in context, as a reasonable reader would understand it. *See Stones River Motors, Inc.*

*v. Mid-South Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983); *Nichols*, 569 S.W.2d at 420 (publication can be actionable by creating a false impression).

Read together, Gefteas's posts conveyed a message: AirTight left AXISS because AXISS lacked care, knowledge, and respect for its customers, and AirTight was "raising the bar" by moving to a better distributor. Gefteas made that message explicit when he wrote that AirTight's move "suggests that there were legitimate issues with AXISS," Am. Compl., ¶ 311, and when he incorporated the PK_LA allegations. *Id.*, ¶ 309. An opinion is not automatically protected—implication matters. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18–21 (1990). "[O]pinion may be actionable if the . . . opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying [it]." *Revis v. McClean*, 31 S.W.3d 250 (Tenn. Ct. App. 2000).

The altered letter is central to that message. AirTight's actual letter thanked AXISS for its friendship and accomplishments, was gracious about the partnership, and undercut any suggestion that AXISS had failed. Am. Compl., ¶¶ 307–08. Gefteas removed language and then presented the letter as evidence that AirTight was "raising the bar." *Id.*, ¶ 308. Selectively editing a source to remove the parts that contradict the speaker's message, and then presenting it without disclosing the edits, creates a false impression and a defamatory meaning. *Nichols*, 569 S.W.2d at 412.

Gefteas also argues that no "person of ordinary intelligence" would have taken his "stylized, illegible image" for an accurate reproduction, given its typographical errors, pixelation, and "glowing art deco background." Dkt. 33 at 19–20. But there was nothing to indicate the letter was not authentic or some type of parody. Am. Compl., ¶ 310. Further, in the comments, when Resnick called out the letter as false, Gefteas did not say that it was a stylized rendering or a joke, or refer readers to the original. *Id.* ¶ 311. He doubled down and stated that AirTight was "raising the bar" and leaving for a distributer with more care, knowledge, and respect for its customers.

Finally, Gefteas contends that the posts did not expose AXISS to "public hatred, contempt," "ridicule," or "disgrace," and at most "annoy[ed]" Plaintiffs. Dkt. 33 at 20. For a business, defamation includes statements that injure its reputation in its trade or business. *See* Restatement (Second) of Torts §§ 559, 561 (1977). AXISS is a distributor whose business is its relationships with manufacturers, dealers, and customers. Am. Compl,, ¶¶ 45–49. A statement that a supplier of 30 years left AXISS because it lacked care, knowledge, and respect for the craft, and that the departure showed "legitimate issues with AXISS," goes to the core of AXISS's fitness to conduct that business and its reputation. The AirTight post had a defamatory meaning.

**7) Gefteas's Statements Assert or Imply Provably False Facts, Not Protected Opinion.**

Gefteas again parses out certain words to argue he is stating opinion, but the misleading nature of the posts, the omissions of key facts, and the inclusion of false facts convey a defamatory meaning. *See Nichols*, 569 S.W.2d at 412. Nor is there a blanket exemption for "opinion. " *Milkovich*, 497 U.S. at 18 (there is no "wholesale defamation exemption for anything that might be labeled 'opinion'"). A statement framed as opinion is actionable if it implies an assertion of objective fact that is provably false. *Id*. at 18–21. The *Milkovich* Court explained that saying "In my opinion Jones is a liar" can cause as much damage as saying "Jones is a liar," because it implies a knowledge of facts that lead to that conclusion, and those facts may be false. *Id*. at 18–19. The cases Gefteas cites stand for the same proposition, whether a statement can "reasonably be interpreted as stating actual facts." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013); *Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005); *see also* Restatement (Second) of Torts § 566 (opinion actionable if it implies undisclosed defamatory facts as its basis).

Gefteas's list of "opinions" omits the statements on which the defamation claim actually rests. *See* Am. Compl., ¶ 395. Each of the following is are facts capable of being proven false:

- The Soulution amplifier “blew up,” “damaged the Rockports,” and failed “within a day” or “after only an hour” (Am. Compl., ¶¶ 272, 282, 321, 323, 330), which AXISS’s testing disproved (*id.* ¶¶ 193, 288);
- There were “multiple witnesses and possible physical injuries” (*id.* ¶¶ 282–283), when there were none (id. ¶ 288);
- Duffey “CHOSE to NOT REFUND” the customer, and that AXISS never made him “financially right” (*id.* ¶¶ 322–323), when AXISS refunded Suncoast and the customer’s refund was Suncoast’s responsibility (*id.* ¶¶ 214–216, 287, 332);
- “The owner had to threaten to sue at the dinner table” to get “SOME” of his money back (*id.* ¶ 323), when the customer never threatened to sue AXISS and said he wanted to avoid a lawsuit (*id.* ¶ 212); and
- Duffey made an “admission . . . at dinner regarding the known quality of parts used in Soulution” (*id.* ¶ 323).

These are not “loose, figurative or hyperbolic” statements. *Hibdon*, 195 S.W.3d at 63. They describe who said what at a specific dinner, what a company decided to do with a specific customer’s money, and what happened to specific equipment. That Gefteas used capital letters and exclamatory phrasing does not turn factual accusations into opinion or rhetorical hyperbole.

These words cannot be viewed in isolation. Gefteas wrote that he knew “the full circumstances,” that there were “multiple witnesses,” that his information came from “people in the know,” and that readers should “[a]sk Cliff about the admission he made at dinner.” Am. Compl., ¶¶ 283, 322–23. He said that “[i]f I didn’t personally know the players . . ., I would not believe what I’ve heard.” *Id.* ¶ 279. That is the *Milkovich* situation: an “opinion” not immune from liability because it implies the speaker has knowledge of facts supporting it. 497 U.S. at 18–19.

The statement that “an honest reputable distributor would simply apologize and return 100% of the purchase price to the victim,” Am. Compl., ¶ 330, illustrates the point. After months saying AXISS had refused to refund a customer whose new amplifier destroyed his speakers, it tells the reader that AXISS is not honest or reputable because it cheated that customer. It is actionable because the premises it depends on – that the product failed and caused damage, that

the distributor withheld a refund, and that the customer was a "victim" – are false. *Id.* ¶¶ 193, 288, 332. A statement of opinion based on false facts is not protected. *Milkovich*, 497 U.S. at 18–19.

Furthermore, whether a reasonable reader would understand particular statements as factual assertions rather than hyperbole, in the context of Gefteas' narrative and his specialized audience, cannot be resolved against AXISS on the pleadings. Gefteas' wholesale request to dismiss every remaining statement as opinion should be denied.

**9) The Amended Complaint Plausibly Alleges Injury to AXISS's Own Reputation**.

Finally, Gefteas argues that AXISS has not plausibly alleged "impairment of reputation and standing in the community." Dkt. 33 at 22. Actual injury in defamation includes impairment of reputation and community standing. *Gertz v. Robert Welch*, 418 U.S. 323, 350 (1974). But at the pleadings stage, AXISS need only allege facts making injury plausible; it need not prove injury. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556 (2007).

The Amended Complaint alleges specific consequences that reflect injury to AXISS's standing among the dealers, manufacturers, and customers in its business community. Dealers dropped the brand. Prospective dealers did not want to "associate or affiliate themselves with a distributor with a poor reputation." Am. Compl., ¶ 304. Representatives of other brands called AXISS about Gefteas's statements and "expressed hesitation in doing business with AXISS because of the reputational harm." *Id.* ¶ 305. AXISS missed out on multiple dealer relationships. *Id.* ¶ 376. Other influencers repeated the statements and at least one talked buyers out of purchases. *Id.* ¶¶ 331, 333–334. These are allegations of reputational injury to AXISS, not just to Soulution.

Gefteas argues that AAU's harms "derive from injury to Soulution's reputation" and relies on a case holding that courts are reluctant to impute a lack of integrity to a corporation "merely from a criticism of its product." Dkt. 33 at 22 (quoting *Dairy Stores, Inc. v. Sentinel Publ'g Co.*,

104 N.J. 125, 134 (1986)). That principle is inapplicable here. Gefteas did not limit himself to criticizing a product; he attacked AXISS's integrity. He said AXISS tried to "stick it to" a victimized customer, "chose to make the customer lose a substantial sum of money," was not an "honest reputable distributor," and lost a supplier because of "legitimate issues." Am. Compl., ¶¶ 272, 279, 311, 330. Those statements concern AXISS's integrity, not Soulution's product.

**V. Plaintiffs' intentional interference with business relationship claim survives.**

Plaintiffs plead all of the elements of intentional interference with a business relationship, showing that through improper motive and means, Defendants intended to interfere with their relationships in the industry. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Gefteas claims Plaintiffs cannot establish improper motive or means based on the defamation claim because it is implausible, but the improper motive and means element is based not only on defamation, but also on injurious falsehood, conspiracy, and a violation of the TCPA. All of these claims are plausible. Moreover, even if this element was based solely on defamation, that claim is plausible as explained above. The intentional interference claim should survive.

**VI. Plaintiffs have a plausible claim for Injurious Falsehood.**

As a threshold issue, Tennessee recognizes injurious falsehood/libel of title as an actionable tort. *Wagner v. Fleming*, 139 S.W.3d 295, 301-302 (Tenn. 2004) ("We hold that such a cause of action does exist in this jurisdiction."); *Ross v. Orion Fin. Grp., Inc.*, 2019 Tenn. App. LEXIS 113, *25-26 (2019). Gefteas reliance on *Pictsweet Co. v. R.D. Offutt Farms Co.*, No. 3:19-cv-00722, 2021 U.S. Dist. LEXIS 167779, *48-50 (2021), to the contrary is misplaced. That case deals with trade libel and does not make any definitive statement that Tennessee does not recognize the tort.

Gefteas otherwise focuses on the plausible showing of falsity requirement. As delineated as to defamation above, Gefteas repeatedly published verifiably false statements about AXISS and

its personal property, speakers, and equipment. Gefteas's defenses of truth and opinion fail. Further, the claim of injurious falsehood is assignable and therefore Spemot's claim is also plausible and actionable. *Denley Rentals, LLC v. Etheridge*, No. W2000-00189-COA-R3-CV, 2001 Tenn. App. LEXIS 494, *10-11 (2001) (a tort action involving injury to reputation is not assignable, but injury to property is). The Motion to Dismiss this claim should be denied.

**VII. Plaintiffs' claim for a violation of the TCPA is plausible and should not be dismissed.**

Gefteas made repeated false and misleading statements about Spemot and AXISS by disparaging the goods, services, and business of Plaintiffs in violation of the TCPA.[5] These statements are detailed in the Amended Complaint and are subject to the same analysis as defamation. The statements about speakers blowing up and causing physical injuries and AXISS failing to refund an aggrieved customer are verifiably false and receive none of the protections Gefteas asserts, such as rhetorical hyperbole or opinion. Moreover, at the pleadings stage, Plaintiffs have demonstrated that his statements have harmed AXISS's business and the sale of Soulution speakers. The heightened level of detail on damages is not required, as Gefteas suggests.

**VIII. Plaintiffs' Conspiracy claim should not be dismissed.**

Gefteas's only argument as to conspiracy is, because the underlying torts should be dismissed, conspiracy should also. None of Plaintiff's claims should be dismissed. All are plausible and properly pled. Thus, conspiracy survives as well.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion should be denied.

---

[5] Gefteas claims that *Elec. Ins. Co. v. Nationwide Mut. Ins. Co*,, 384 F. Supp. 2d 1190, 1194 (W.D. Tenn. 2005), states that a TCPA claim may not be assigned. Gefteas ignores that the court found the particular claim in that case, a bad faith insurance claim, unassignable because it was a functionally equivalent cause to the other four bad faith claims, so allowing assignability would recognize an exception that subsumes the rule. *Id.* Here, the TCPA violation based on the disparagement of goods is assignable. *Denley Rentals*, 2001 Tenn. App. LEXIS 494, at *10-11.

Dated: November 13, 2026

Respectfully submitted,

/s/ *Eric G. Osborne*
Eric G. Osborne, BPR No. 029719
Amy R. Mohan, BPR No. 031238
Sherrard Roe Voigt & Harbison, PLC
1600 West End Ave., Suite 1750
Nashville, TN 37203
Tel.: (615) 742-4200
eosborne@srvhlaw.com
amohan@srvhlaw.com

*Counsel for Plaintiff Veris Home Technology LLC by itself and as assignee of Spemot AG, AXISS Audio USA LLC, and AXISS Distribution Incorporated (together d/b/a AXISS Audio)*